COMPOSITE EXHIBIT "1"

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting <u>data</u> pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

---

I.     **CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>ELEVENTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>  COUNTY, FLORIDA

Case No.:<u>_____</u>
Judge: <u>_____</u>

<u>Silva Harapeti</u>
 Plaintiff
       vs.
<u>CBS Television Stations, Inc.</u>
Defendant

---

II.     **AMOUNT OF CLAIM**
   Please indicate the estimated amount of the claim rounded to the nearest dollar $<u>150,000</u>

III.     **TYPE OF CASE**    (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence – other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability – commercial
    ☐ Premises liability – residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions
☐ Professional malpractice
    ☐ Malpractice – business
    ☐ Malpractice – medical

    ☐ Malpractice – other professional
☒ Other
    ☐ Antitrust/Trade Regulation
    ☐ Business Transaction
    ☐ Circuit Civil - Not Applicable
    ☐ Constitutional challenge-statute or ordinance
    ☐ Constitutional challenge-proposed amendment
    ☐ Corporate Trusts
    ☒ Discrimination-employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

☐ County Civil
    ☐ Small Claims up to $8,000
    ☐ Civil
    ☐ Replevins
    ☐ Evictions
    ☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.     REMEDIES SOUGHT** (check all that apply):
☒  Monetary;
☒  Non-monetary declaratory or injunctive relief;
☒  Punitive

**V.     NUMBER OF CAUSES OF ACTION:**
(Specify)

1

**VI.     IS THIS CASE A CLASS ACTION LAWSUIT?**
☒ Yes
☐ No

**VII.     HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☒ No
☐ Yes – If "yes" list all related cases by name, case number and court:

**VIII.     IS JURY TRIAL DEMANDED IN COMPLAINT?**
☒ Yes
☐ No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature:   s/ Daniel J Bujan
Attorney or party
FL Bar No.:   1017943
(Bar number, if attorney)
Daniel J Bujan
(Type or print name)
Date:   05/26/2020

IN THE CIRCUIT COURT OF THE
11ᵀᴴ JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY FLORIDA

SILVA HARAPETI, on behalf of
herself and all others similarly
situated,

       Plaintiff,

v.

       CASE NO.

CBS TELEVISION STATIONS, INC.,
a Foreign Profit Corporation,

       Defendant.

_____/

## **COMPLAINT**

### (OPT-IN PURSUANT TO 29 U.S.C. § 216(B))

Plaintiff, SILVA HARAPETI (hereinafter "Plaintiff"), on behalf of herself and other similarly situated individuals, by and through the undersigned counsel, hereby sues Defendant, CBS TELEVISION STATIONS, INC., (hereinafter "Defendant"), and in support avers as follows:

### **GENERAL ALLEGATIONS**

1.  This is an action by the Plaintiff and other similarly-situated individuals for damages; for Defendant's violation of the Equal Pay Act 1936, 29 U.S.C. § 206, *et seq*. ("EPA"); for Defendant's unlawful discrimination and retaliation predicated on Plaintiff's sex (gender) and age in violation of Title VII of the Civil Rights Act of 1964 as amended ("Title VII") and the Age Discrimination in Employment Act ("ADEA").

2.  This court has jurisdiction over Plaintiff's ADEA, EPA, and Title VII claims.

3.  Plaintiff was at all times relevant to this action a resident of Miami Dade County, Florida, within the jurisdiction of this Honorable Court.

4.  Plaintiff is over the age of eighteen years old and otherwise *suris juris*.

5.     Defendant is a foreign profit corporation conducting business in Miami-Dade County, Florida, where Plaintiff worked for Defendant.

6.     Defendant is an "employer" pursuant to the ADEA 29 U.S.C. §§ 630(b) since it employs twenty (20) or more employees for the applicable statutory period.

7.     At all times material hereto, Plaintiff was an "employee" within the meaning of Title VII and the ADEA, in that she was subjected to negative, disparate treatment and retaliation by her employer based on her age, and sex (gender) and/or her complaints of discrimination.

8.     Venue is proper in Miami-Dade County, Florida, because all of the actions that form the basis of this complaint occurred within Miami-Dade County, Florida.

9.     On January 9, 2019 Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") (EEOC Charge No.:511-2019-02980). Plaintiff additionally filed an Amended Charge of Discrimination on January 30th, 2020 which was dually filed with the Florida Commission on Human Relations.

10.    On or about February 25th, 2020, Plaintiff received a Notice of Right to Sue and instituted suit timely.

11.    Declaratory, injunctive, legal and equitable relief sought pursuant to the laws set forth above together with attorneys' fees, costs and damages.

12.    All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

13.    Defendant directly or indirectly acted in the interest of an employer towards Plaintiff and other similarly situated employees at all material times, including without limitation

directly or indirectly controlling the terms of employment of Plaintiff and other similarly situated employees.

## **FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

14. Plaintiff is a female over the age of (40) and falls within protected classes under Title VII and the ADEA.

15. This Court has jurisdiction over Plaintiff's sex-based (gender) and age-based discrimination claims pursuant to Title VII and the ADEA.

16. Plaintiff began working for Defendant on or about February 21, 2011 as a freelance reporter, and worked for Defendant on and off, with the same title, until on or about March 18, 2018.

17. Throughout her time working for Defendant as a freelance reporter, Plaintiff was paid on a per-diem (per day) basis.

18. Plaintiff was hired as a freelance reporter in 2011, 2012, and 2015. Each time Plaintiff was hired, Defendant assured her that she would be considered for a full-time reporter position when an opening became available.

19. With this in mind, Plaintiff continued working as a freelance reporter with the hopes that she would be hired full-time, with a contract, salary, and benefits when an opening became available.

20. However, throughout her seven years working for Defendant, various opportunities for full-time positions became available, yet Plaintiff was never offered a position.

21. This is due to Defendant's systematic practice of giving full-time employment contracts, top news story assignments, and increased salaries to both males and younger female employees.

## FACTUAL ALLEGATIONS COMMON TO COUNTS I & IV

22. Plaintiff's ADEA claims arise out of the investigation of the Charge, the Defendant's Position Statement and Plaintiff's Amended Charge of Discrimination.

23. Throughout Plaintiff's time working for Defendant, she was continually passed over for full-time reporter positions.

24. Despite Defendant's assurances that she would be considered for the position when an opening became available, when a position did become available, it was continually given to younger female employees with less experience than Plaintiff.

25. On or about April 2011, after working for Defendant for several months, a full-time reporter position became available. Plaintiff inquired about the position on multiple occasions, yet the position was given to a younger, less experienced female, Kara Kostanich.

26. Following this, on or about June 2011, another full-time position became available and Plaintiff again inquired about the position on multiple occasions.  Defendant, yet again, chose a younger, less experienced female, Maggie Newland.

27. The following year, on or about April 2012, another full-time position became available and Plaintiff again inquired about the position on multiple occasions. Once again, Defendant hired a younger, less experienced female, Summer Knowles.

28. That same year, another full-time position became available and Plaintiff again inquired about the position on multiple occasions. Defendant chose a younger, less experienced female, Lauren Pastrana.

29.   Three years later, on or about 2015, after a month before being told by Vice President of News, Liz Roldan ("Ms. Roldan"), and Executive Producer, Cari Hernandez ("Ms. Hernandez") that no full-time positions were available, Defendant hired Oralia Ortega. Ms. Ortega is a younger, less experienced female and was hired full-time with a contract and benefits.

30.   On or about November 2016, Defendant hired Tiani Jones ("Ms. Jones") as a freelance reporter. Ms. Jones, a younger female, was paid significantly more than Plaintiff was being paid as a freelance reporter.

31.   To make matters worse, when Defendant moved Plaintiff to Ms. Jones position, the prime-time evening shift, Ms. Roldan denied Plaintiff's request to have her pay increased to what Ms. Jones was making. Ms. Roldan stated, "that money isin't available to you."

32.   On or about July 2017, a month after Plaintiff was told that there was no budget for an increase in her pay, Defendant hired Rielle Creighton ("Ms. Creighton") as a freelance reporter. Ms. Creighton, a younger female, was paid significantly more than Plaintiff was, despite having the same exact position.

33.   The following year, on or about January 2018, Defendant hired Amber Diaz ("Ms. Diaz") as a freelance reporter. Ms. Diaz, a younger female, was paid $33,000.00 more than Plaintiff.

34.   The above facts show a pattern in which Defendant discriminated against Plaintiff based on her age by continually choosing younger females, with far less experience, for full-time positions.

35.   Further, even when Defendant hired younger female reporters as freelancers, it paid these younger females considerably more than Plaintiff.

## FACTUAL ALLEGATIONS COMMON TO COUNTS II, III, & IV

36. Defendant tolerated and cultivated a work environment that discriminated against female freelance employees.

37. Plaintiff, and other female freelance employees, were subjected to unlawful disparate treatment, in that female freelance employees got paid at a lower rate than their male counterparts for equal work.

38. Throughout Plaintiff's employment, Defendant has consistently hired men at considerably higher rates than women, such that the salary structure has resulted in a substantial disparity between male and female employees. Specifically, a disparity exists between female freelance employees and their equal male counterparts.

39. Male freelance employees in Plaintiff's team performed the same and/or similar duties as Plaintiff, including sourcing and gathering information on local and national news coverage, posting on social media regarding the stories they covered, answering emails and phone calls, and frequently working in the field reporting stories assigned to them.

40. Male freelance workers performed the same and/or similar work under the same and/or similar working conditions as female freelance reporters, had the same and/or similar responsibilities, and used the same and/or similar system and equivalent equipment to perform their duties.

41. Throughout Plaintiff's employment, Defendant paid male freelance employees at a higher rate than Plaintiff; the increased pay that Plaintiff's male counterparts received was not based on superior skills, effort, responsibility, or any other legitimate factor.

42. Plaintiff was compensated at a lower pay rate than her equal male counterparts who performed the same and/or similar duties under substantially similar conditions.

43.   Specifically, Plaintiff was paid at a lower rate than her team members, who were similarly situated,   including but not limited to, Hank Tester ("Mr. Tester"), David Sutta ("Mr. Sutta"), Ted Scouten "Mr. Scouten"), and Cary Codd ("Mr. Codd").

44.   Additionally, male employees were given more resources and greater choice of story selection, along with other income opportunities.

45.   Plaintiff was denied any other income opportunities by Defendant, despite being classified as a freelance reporter, which in theory would allow her to maintain her own personal business while working for Defendant.

46.   When Plaintiff was asked to work in the Special Projects Unit, normally a full-time position, she was told she would still be classified as a freelancer, because the full-time on-air position was not available. The position offered to her was significantly lower than the positions of her male and younger female peers.

47.   However, as a freelancer, this would have allowed Plaintiff to continue to run her personal marketing, education, and production business which was helping her financially due to her per-diem pay status with Defendant.

48.   Another male employee who worked in the Special Projects Unit, Mr. Sutta, who had a full-time position with Defendant, was allowed to run his own personal photography company, while simultaneously working for Defendant.

49.   On or about February 2016, Plaintiff took time off to manage an emergency matter for one of her education clients. After following company procedures and protocol, upon her return Plaintiff was told by Ms. Hernandez and Ms. Roldan that she in fact could not have her own personal business and work for Defendant as a freelancer simultaneously.

50.   On or about Feb 2016, Plaintiff, Ms. Hernandez, and Nick Bourne ("Mr. Bourne") Assistant Vice President of News, had a meeting in which Ms. Hernandez threatened to fire Plaintiff, and stated that the company was "questioning her loyalty."

51.   Plaintiff pointed out that she was a freelancer and was entitled to have her own side business and also pointed out that male employees were never questioned regarding their own side businesses.

52.   Through Defendant's intimidation and threats of termination, Plaintiff was forced to scale back her business, significantly reducing the number of her clients.

53.   At no point however was Mr. Sutta, Plaintiff's male colleague who worked in the same division, questioned or harassed regarding his own personal photography business.

54.   After the meeting, Mr. Bourne escalated this issue to Human Resources, as he felt that what Ms. Hernandez and Ms. Roldan were doing was against company policy. Yet, despite escalating the issue, no corrective action was ever taken by Defendant.

55.   Another example of the disparate treatment Plaintiff was subjected to was Defendant paying another male per-diem employee, Mr. Tester, at a higher rate than Plaintiff, despite both performing substantially similar work that required the same skill, effort, and responsibility.

56.   During Hurricane Irma, Plaintiff was working on Miami Beach covering the storm with another male per-diem employee, Mr. Mends. Plaintiff later found out through Mr. Mends that his pay during that time was structured in a way that he received both overtime and double-time.

57.     Plaintiff and Mr. Mends worked the same shifts, the same hours, and delivered the same news. Yet Plaintiff was paid significantly less because she was a female freelance employee.

58.     This Court has jurisdiction over Plaintiff's EPA claims pursuant to 29 U.S.C. §206 *et seq.*

59.     Counts for EPA violations may be brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by the EPA similarly situated plaintiffs who opt-in to this action because the claims of the Plaintiffs are similar to the claims of the EPA opt-in Class.

60.     Plaintiffs and the EPA opt-in Class (a) are similarly situated in that (b) they were subjected to Defendant's common practice of sex-based (gender) discrimination in failing to compensate female freelance employees on par with their male counterparts.

### FACTUAL ALLEGATIONS COMMON TO COUNTS I-IV

61.     On multiple occasions, Plaintiff complained to Defendant that she was being treated unfairly compared to her other male and younger female colleagues.

62.     In a meeting with Ms. Hernandez and Ms. Roldan where they were interrogating her about her personal company, a company both were previously aware about, Plaintiff asked why she was being scrutinized for having a personal side business as a freelancer when a full-time male employee, such as David Sutta, had been running his business for years.

63.     These complaints led to Ms. Roldan threatening to fire Plaintiff and ultimately Plaintiff having to scale back her business.

64.     Plaintiff also voiced her complaints to management about them continually placing employees, specifically reporters, in dangerous situations without any care for their safety

nor did they care to listen to employees who had experienced verbal and physical assaults while working.

65.    On numerous occasions while working in the field, Plaintiff was assaulted, both verbally and physically, by individuals that were around the area she was placed to cover.

66.    Specifically, on September 9, 2017 while covering Hurricane Irma, Plaintiff was harassed and groped by an individual. Plaintiff reported the harassment to Ms. Roldan, which responded by telling Plaintiff not to put any drunks on television.

67.    Following this incident, on or about November 11th, 2017, Plaintiff was sent to cover the UM v. Notre Dame game at the Hard Rock Stadium where thousands of fans had been drinking and tailgating for hours. Plaintiff was verbally, physically, and sexually assaulted by a fan just minutes before her 11 p.m. report. Plaintiff's Assistant Manager, Abby Lewing ("Ms. Lewing") had insisted that Plaintiff and her videographer "report live" despite Plaintiff's repeated protests about the dangerous conditions they were being placed in.

68.    Ms. Lewing responded to Plaintiff's concerns by saying "are you refusing to do your job?" This left Plaintiff in a position where she feared she would lose her job, and ultimately Plaintiff's fears became reality.

69.    Just one month later, on or about December 30th, 2017, Ms. Lewing sent Plaintiff to cover another football game at the Orange Bowl. Plaintiff was scheduled to work in the same area of the parking lot where she had previously been assaulted and complained to Assistant Manager, Ms. Lewing that she did not feel safe working there due to the lack of security and the prior incident which had occurred in the same location.

70.   Then on January 4, 2018, Plaintiff reported to VP of News, Ms. Roldan, the two incidents where she had been assaulted and Ms. Roldan responded by saying, "this is not a whining session." She added, "The fact is that people are shitty people and we have to deal with it. We all create our own perception and reality around what happens to us."

71.   Each time Plaintiff voiced her complaints, she was told that these things just happen to her, insinuating that Plaintiff somehow invites this kind of behavior.

72.   Defendant failed to take any corrective action to Plaintiff's complaints about harassment and discrimination instead condoning and fostering an environment where sexual assault and abusive behavior is not only acceptable but is the norm.  Defendant did not take any corrective action and instead chose to retaliate against Plaintiff by continually passing her over for full-time positions, forcing her to significantly scale back her business, giving her lesser pay than her peers, and assigning her the least desired stories.

73.   These three separate incidents and Defendants responses to each of them, show Defendant's complacency with sexual harassment being a normal part of a reporter's job and also show that speaking up against harassment in the workplace only gets you blacklisted and threatened.

74.   An example of this was right after Plaintiff had addressed concerns of being assaulted at work, she was placed on a story that had nothing to do with what all the other employees were working on, the devastating Parkland High School mass shooting.

75.   Defendants went so far as to having a meeting with Plaintiff on or about May 2017 just to tell her not to report issues she was having at work to Human Resources, the General Manager, or to any of her superiors.

76.   The following month, on or about June 2017, Plaintiff had inquired about a full-time position and was told by Ms. Roldan that there were none. Plaintiff then told Ms. Roldan that she was applying for a full-time special projects position in Los Angeles with KNBC. Ms. Roldan happened to know the manager there, Matt Goldberg ("Mr. Goldberg"), and was scheduled to have lunch with him that month.

77.   After Plaintiff applied for the position at KNBC, and emailed Mr. Goldberg to setup a call, Plaintiff never heard back from Mr. Goldberg, nor did he respond to any of her follow up emails. Upon information and belief, Plaintiff was told that Ms. Roldan said Plaintiff was not going to be qualified for the position for which she was applying for.

78.   This was just one of the ways that Ms. Roldan and Ms. Hernandez intimidated Plaintiff and retaliated against her for voicing complaints to management.

79.   In fact, when Plaintiff attempted to address issues of discrimination and disparate treatment, Ms. Hernandez told Plaintiff "not to rock the boat" because Ms. Roldan had "given her an opportunity to be on the air."

80.   These are exactly the reasons why Plaintiff didn't make a formal complaint until she was forced to resign. Any time Plaintiff tried to speak out, she was met with opposition, threats, and intimidation.

81.   Defendant's actions and/or failures to act, began to impact Plaintiff's mental and physical health. She no longer could work in a toxic, misogynistic environment, in which no one addressed her concerns for her safety.

82.   As time went on, Defendant's continued to intimidate and retaliate against Plaintiff for voicing her complaints.

83.   Ultimately, after years of being passed over for full-time positions to younger female employees, having male counterparts given preferential treatment and higher pay, and enduring verbal and physical assaults while on the job with no corrective actions taken, Plaintiff put in her two weeks' notice and quit on or about March 16, 2018.

## COUNT I
### *Age Discrimination in Violation of the ADEA*

84.  Plaintiff re-adopts each and every general and factual allegation as stated in paragraphs 1-35 and 61-83 above as if set out in full herein.

85.  Plaintiff is a member of a protected class under the ADEA, to wit Plaintiff is over forty (40) years of age.

86.  By the conduct described above, Defendant has engaged in discrimination against Plaintiff because of Plaintiff's age and subjected the Plaintiff to age-based animosity.

87.  Such discrimination was based upon the Plaintiff's age in that Plaintiff would not have been the object of discrimination but for the fact that Plaintiff is over the age of forty (40).

88.  Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendant and its supervisory personnel were aware that discrimination on the basis of Plaintiff's age was unlawful but acted in reckless disregard of the law.

89.  At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

90.  Defendant retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

91.  As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has

been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

92. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under federal law.

93. The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

94. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

A. Adjudge and decree that Defendant has violated the ADEA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

C. Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

D. Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

E.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## **COUNT II**
### *Sex (Gender)Discrimination in Violation of the Title VII*

95.  Plaintiff re-adopts each and every general and factual allegation as stated in paragraphs 1 through 83 above as if set out in full herein.

96.  Plaintiff is a female individual and is a member of a protected class under Title VII.

97.  By the conduct describe above, Defendant has engaged in discrimination against Plaintiff because of Plaintiff's sex/gender and subjected the Plaintiff to sex-based animosity.

98.   Such discrimination was based upon the Plaintiff's sex/gender in that Plaintiff would not have been the object of discrimination but for the fact that Plaintiff is a female.

99.  Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendant and its supervisory personnel were aware that discrimination on the basis of sex/gender was unlawful but acted in reckless disregard of the law.

100.  At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

101.  Defendant retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

102.  As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and

damage.

103. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under federal law.

104. The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

105. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant:

A. Adjudge and decree that Defendant has violated Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

C. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

D. Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by

Defendant, or in lieu of reinstatement, award front pay;

E.  Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

F.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

G.  Award any other compensation allowed by law including punitive damages, attorney's fees and further demands a trial by jury on all issues so triable.

## COUNT III
### Discrimination in Compensation
### Equal Pay Act of 1963, 29 U.S.C. §206 et seq.

106.  Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-21 and 36-83 of this complaint as if set out in full herein.

107.  This action is brought by Plaintiff and other similarly situated individuals to recover back pay damages for Defendant's violation, as well as an additional amount as liquidated damages equal to the amount of back pay awarded, costs, and reasonable attorney's fees under the provisions of the EPA.

108.  Plaintiff belongs to a protected class; she is a female.

109.  Plaintiff job function as a freelance per-diem employee were and are the of equal skill, effort, and responsibility as the job functions of Defendant's male freelance per-diem employees and they were performed under the same or similar conditions.

110.  During all relevant periods, Plaintiff received wages lower that most if not all, of Defendant's male freelance employees' wages while performing the same or substantially more work than her male coworkers.

111.    Plaintiff was qualified for and entitled to wages equal to or higher than her male coworkers' wages performing the equal and/or same or at times substantially more work than her male counterparts.

112.    Defendant violated the EPA in not paying Plaintiff and other similarly situated females on par with their male counterparts; Plaintiff is entitled to damages and equitable relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

A.    Adjudge and decree that Defendant has violated the EPA and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights.

B.    Award Plaintiff actual damages in the amount shown to be due, with interest; and

C.    Award Plaintiff an equal amount in double damages/ liquidated damages; and

D.    Award Plaintiff the cost of this action, together with reasonable attorney's fees; and

E.    Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT IV
### Retaliation in Violation of Title VII

113.    Plaintiff re-adopts each and every general and factual allegation as stated in paragraphs 1-83 of this complaint as if set out in full herein.

114.    Plaintiff is a member of a protected class under Title VII, to wit she complained of discriminatory treatment.

115.    By the conduct describe above, Defendant retaliated against Plaintiff for exercising rights protected under the Title VII.

116.    Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendant and its supervisory personnel were aware that discrimination

18

on the basis of Plaintiff's national origin was unlawful but acted in reckless disregard of the law.

117.    As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

118.    The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under federal law.

119.    The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

120.    Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant:

A.    Adjudge and decree that Defendant has violated Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B.    Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

19

C.  Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

D.  Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

E.  Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

F.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

Dated: May 26th, 2020

Respectfully submitted,

*/s/ Daniel J. Bujan*
Peter M. Hoogerwoerd, Esq.
Fla. Bar No.: 0188239
pmh@rgpattorneys.com
Daniel J. Bujan, Esq.
Fla. Bar No.: 1017943
dbujan@rgpattorneys.com
**Remer & Georges-Pierre, PLLC**
44 West Flagler Street, Suite 2200
Miami, FL 33130
(305) 416-5000- Telephone
(305) 416-5005- Facsimile

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY FLORIDA

SILVA HARAPETI, on behalf of
herself and all others similarly
situated,

CASE NO. 2020-011163-CA-01

     Plaintiff,

v.

CBS TELEVISION STATIONS, INC.,
a Foreign Profit Corporation,

     Defendant.

_____/

## SUMMONS IN A CIVIL CASE

**TO: CBS TELEVISION STATIONS, INC.** through its registered agent:

     CORPORATION SERVICE COMPANY
     1201 HAYS STREET
     TALLAHASSEE, FL 32301-2525

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY

     PETER M. HOOGERWOERD, ESQ.
     REMER & GEORGES-PIERRE, PLLC.
     44 WEST FLAGLER STREET
     SUITE 2200
     MIAMI, FL 33130

an answer to the complaint which is herewith served upon you, within **20 days** after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_____
CLERK                     DATE

_____
(BY) DEPUTY CLERK

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY FLORIDA

SILVA HARAPETI, on behalf of
herself and all others similarly
situated,

CASE NO. 2020-011163-CA-01

      Plaintiff,

v.

CBS TELEVISION STATIONS, INC.,
a Foreign Profit Corporation,

      Defendant.

_____/

## SUMMONS IN A CIVIL CASE

**TO: CBS TELEVISION STATIONS, INC.** through its registered agent:

      CORPORATION SERVICE COMPANY
      1201 HAYS STREET
      TALLAHASSEE, FL 32301-2525

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY

      PETER M. HOOGERWOERD, ESQ.
      REMER & GEORGES-PIERRE, PLLC.
      44 WEST FLAGLER STREET
      SUITE 2200
      MIAMI, FL 33130

an answer to the complaint which is herewith served upon you, within **20 days** after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

5/28/2020

_____
CLERK                             DATE

30797

_____
(BY) DEPUTY CLERK

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY FLORIDA

SILVA HARAPETI,

       Plaintiff,

v.

       CASE NO. 2020-011163-CA-01

CBS TELEVISION STATIONS, INC.,
a Foreign Profit Corporation,

       Defendant.

_____/

## AMENDED COMPLAINT

Plaintiff, SILVA HARAPETI (hereinafter "Plaintiff"), by and through the undersigned counsel, hereby sues Defendant, CBS TELEVISION STATIONS, INC., (hereinafter "Defendant"), and in support avers as follows:

## GENERAL ALLEGATIONS

1.    This is an action by the Plaintiff for damages due to Defendant's violation of the Equal Pay Act 1936, 29 U.S.C. § 206, *et seq*. ("EPA"); for Defendant's unlawful discrimination and retaliation predicated on Plaintiff's sex (gender) and age in violation of Title VII of the Civil Rights Act of 1964 as amended ("Title VII") and the Age Discrimination in Employment Act ("ADEA").

2.    This court has jurisdiction over Plaintiff's ADEA, EPA, and Title VII claims.

3.    Plaintiff was at all times relevant to this action a resident of Miami Dade County, Florida, within the jurisdiction of this Honorable Court.

4.    Plaintiff is over the age of eighteen years old and otherwise *suris juris*.

5.    Defendant is a foreign profit corporation conducting business in Miami-Dade County, Florida, where Plaintiff worked for Defendant.

6.     Defendant is an "employer" pursuant to the ADEA 29 U.S.C. §§ 630(b) since it employs twenty (20) or more employees for the applicable statutory period.

7.     At all times material hereto, Plaintiff was an "employee" within the meaning of Title VII and the ADEA, in that she was subjected to negative, disparate treatment and retaliation by her employer based on her age, and sex (gender) and/or her complaints of discrimination.

8.     Venue is proper in Miami-Dade County, Florida, because all of the actions that form the basis of this complaint occurred within Miami-Dade County, Florida.

9.     On January 9, 2019 Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") (EEOC Charge No.:511-2019-02980). which was dually filed with the Florida Commission on Human Relations.

10.    On or about February 25th, 2020, Plaintiff received a Notice of Right to Sue and instituted suit timely.

11.    Declaratory, injunctive, legal and equitable relief sought pursuant to the laws set forth above together with attorneys' fees, costs and damages.

12.    All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

13.    Defendant directly or indirectly acted in the interest of an employer towards Plaintiff and other similarly situated employees at all material times, including without limitation directly or indirectly controlling the terms of employment of Plaintiff and other similarly situated employees.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

14.   Plaintiff is a female over the age of (40) and falls within protected classes under Title VII and the ADEA.

15.   This Court has jurisdiction over Plaintiff's sex-based (gender) and age-based discrimination claims pursuant to Title VII and the ADEA.

16.   Plaintiff began working for Defendant on or about February 21, 2011 as a freelance reporter, and worked for Defendant on and off, with the same title, until on or about March 18, 2018.

17.   Throughout her time working for Defendant as a freelance reporter, Plaintiff was paid on a per-diem (per day) basis.

18.   Plaintiff was hired as a freelance reporter in 2011, 2012, and 2015. Each time Plaintiff was hired, Defendant assured her that she would be considered for a full-time reporter position when an opening became available.

19.   With this in mind, Plaintiff continued working as a freelance reporter with the hopes that she would be hired full-time, with a contract, salary, and benefits when an opening became available.

20.   However, throughout her seven years working for Defendant, various opportunities for full-time positions became available, yet Plaintiff was never offered a position.

21.   This is due to Defendant's systematic practice of giving full-time employment contracts, top news story assignments, and increased salaries to both males and younger female employees.

## FACTUAL ALLEGATIONS COMMON TO COUNTS I & IV

22.   Plaintiff's ADEA claims arise out of the investigation of the Charge and the Defendant's Position Statement.

3

23. Throughout Plaintiff's time working for Defendant, she was continually passed over for full-time reporter positions.

24. Despite Defendant's assurances that she would be considered for the position when an opening became available, when a position did become available, it was continually given to younger female employees with less experience than Plaintiff.

25. On or about April 2011, after working for Defendant for several months, a full-time reporter position became available. Plaintiff inquired about the position on multiple occasions, yet the position was given to a younger, less experienced female, Kara Kostanich.

26. Following this, on or about June 2011, another full-time position became available and Plaintiff again inquired about the position on multiple occasions. Defendant, yet again, chose a younger, less experienced female, Maggie Newland.

27. The following year, on or about April 2012, another full-time position became available and Plaintiff again inquired about the position on multiple occasions. Once again, Defendant hired a younger, less experienced female, Summer Knowles.

28. That same year, another full-time position became available and Plaintiff again inquired about the position on multiple occasions. Defendant chose a younger, less experienced female, Lauren Pastrana.

29. Three years later, on or about 2015, after a month before being told by Vice President of News, Liz Roldan ("Ms. Roldan"), and Executive Producer, Cari Hernandez ("Ms. Hernandez") that no full-time positions were available, Defendant hired Oralia Ortega. Ms. Ortega is a younger, less experienced female and was hired full-time with a contract and benefits.

30.     On or about November 2016, Defendant hired Tiani Jones ("Ms. Jones") as a freelance reporter. Ms. Jones, a younger female, was paid significantly more than Plaintiff was being paid as a freelance reporter.

31.     To make matters worse, when Defendant moved Plaintiff to Ms. Jones position, the prime-time evening shift, Ms. Roldan denied Plaintiff's request to have her pay increased to what Ms. Jones was making. Ms. Roldan stated, "that money isn't available to you."

32.     On or about July 2017, a month after Plaintiff was told that there was no budget for an increase in her pay, Defendant hired Rielle Creighton ("Ms. Creighton") as a freelance reporter. Ms. Creighton, a younger female, was paid significantly more than Plaintiff was, despite having the same exact position.

33.     The following year, on or about January 2018, Defendant hired Amber Diaz ("Ms. Diaz") as a freelance reporter. Ms. Diaz, a younger female, was paid $33,000.00 more than Plaintiff.

34.     The above facts show a pattern in which Defendant discriminated against Plaintiff based on her age by continually choosing younger females, with far less experience, for full-time positions.

35.     Further, even when Defendant hired younger female reporters as freelancers, it paid these younger females considerably more than Plaintiff.

**FACTUAL ALLEGATIONS COMMON TO COUNTS II, III, & IV**

36.     Defendant tolerated and cultivated a work environment that discriminated against female freelance employees.

37.    Plaintiff, and other female freelance employees, were subjected to unlawful disparate treatment, in that female freelance employees got paid at a lower rate than their male counterparts for equal work.

38.    Throughout Plaintiff's employment, Defendant has consistently hired men at considerably higher rates than women, such that the salary structure has resulted in a substantial disparity between male and female employees. Specifically, a disparity exists between female freelance employees and their equal male counterparts.

39.    Male freelance employees in Plaintiff's team performed the same and/or similar duties as Plaintiff, including sourcing and gathering information on local and national news coverage, posting on social media regarding the stories they covered, answering emails and phone calls, and frequently working in the field reporting stories assigned to them.

40.    Male freelance workers performed the same and/or similar work under the same and/or similar working conditions as female freelance reporters, had the same and/or similar responsibilities, and used the same and/or similar system and equivalent equipment to perform their duties.

41.    Throughout Plaintiff's employment, Defendant paid male freelance employees at a higher rate than Plaintiff; the increased pay that Plaintiff's male counterparts received was not based on superior skills, effort, responsibility, or any other legitimate factor.

42.    Plaintiff was compensated at a lower pay rate than her equal male counterparts who performed the same and/or similar duties under substantially similar conditions.

43.    Specifically, Plaintiff was paid at a lower rate than her team members, who were similarly situated, including but not limited to, Hank Tester ("Mr. Tester"), David Sutta ("Mr. Sutta"), Ted Scouten "Mr. Scouten"), and Cary Codd ("Mr. Codd").

44. Additionally, male employees were given more resources and greater choice of story selection, along with other income opportunities.

45. Plaintiff was denied any other income opportunities by Defendant, despite being classified as a freelance reporter, which in theory would allow her to maintain her own personal business while working for Defendant.

46. When Plaintiff was asked to work in the Special Projects Unit, normally a full-time position, she was told she would still be classified as a freelancer, because the full-time on-air position was not available. The position offered to her was significantly lower than the positions of her male and younger female peers.

47. However, as a freelancer, this would have allowed Plaintiff to continue to run her personal marketing, education, and production business which was helping her financially due to her per-diem pay status with Defendant.

48. Another male employee who worked in the Special Projects Unit, Mr. Sutta, who had a full-time position with Defendant, was allowed to run his own personal photography company, while simultaneously working for Defendant.

49. On or about February 2016, Plaintiff took time off to manage an emergency matter for one of her education clients. After following company procedures and protocol, upon her return Plaintiff was told by Ms. Hernandez and Ms. Roldan that she in fact could not have her own personal business and work for Defendant as a freelancer simultaneously.

50. On or about Feb 2016, Plaintiff, Ms. Hernandez, and Nick Bourne ("Mr. Bourne") Assistant Vice President of News, had a meeting in which Ms. Hernandez threatened to fire Plaintiff, and stated that the company was "questioning her loyalty."

51. Plaintiff pointed out that she was a freelancer and was entitled to have her own side business and also pointed out that male employees were never questioned regarding their own side businesses.

52. Through Defendant's intimidation and threats of termination, Plaintiff was forced to scale back her business, significantly reducing the number of her clients.

53. At no point however was Mr. Sutta, Plaintiff's male colleague who worked in the same division, questioned or harassed regarding his own personal photography business.

54. After the meeting, Mr. Bourne escalated this issue to Human Resources, as he felt that what Ms. Hernandez and Ms. Roldan were doing was against company policy. Yet, despite escalating the issue, no corrective action was ever taken by Defendant.

55. Another example of the disparate treatment Plaintiff was subjected to was Defendant paying another male per-diem employee, Mr. Tester, at a higher rate than Plaintiff, despite both performing substantially similar work that required the same skill, effort, and responsibility.

56. During Hurricane Irma, Plaintiff was working on Miami Beach covering the storm with another male per-diem employee, Mr. Mends. Plaintiff later found out through Mr. Mends that his pay during that time was structured in a way that he received both overtime and double-time.

57. Plaintiff and Mr. Mends worked the same shifts, the same hours, and delivered the same news. Yet Plaintiff was paid significantly less because she was a female freelance employee.

58. This Court has jurisdiction over Plaintiff's EPA claims pursuant to 29 U.S.C. §206 *et seq.*

59.     Counts for EPA violations may be brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by the EPA similarly situated plaintiffs who opt-in to this action because the claims of the Plaintiffs are similar to the claims of the EPA opt-in Class.

60.     Plaintiffs and the EPA opt-in Class (a) are similarly situated in that (b) they were subjected to Defendant's common practice of sex-based (gender) discrimination in failing to compensate female freelance employees on par with their male counterparts.

### FACTUAL ALLEGATIONS COMMON TO COUNTS I-IV

61.     On multiple occasions, Plaintiff complained to Defendant that she was being treated unfairly compared to her other male and younger female colleagues.

62.     In a meeting with Ms. Hernandez and Ms. Roldan where they were interrogating her about her personal company, a company both were previously aware about, Plaintiff asked why she was being scrutinized for having a personal side business as a freelancer when a full-time male employee, such as David Sutta, had been running his business for years.

63.     These complaints led to Ms. Roldan threatening to fire Plaintiff and ultimately Plaintiff having to scale back her business.

64.     Plaintiff also voiced her complaints to management about them continually placing employees, specifically reporters, in dangerous situations without any care for their safety nor did they care to listen to employees who had experienced verbal and physical assaults while working.

65.     On numerous occasions while working in the field, Plaintiff was assaulted, both verbally and physically, by individuals that were around the area she was placed to cover.

66.     Specifically, on September 9, 2017 while covering Hurricane Irma, Plaintiff was harassed and groped by an individual. Plaintiff reported the harassment to Ms. Roldan, which responded by telling Plaintiff to not put any drunks on television.

67.     Following this incident, on or about November 11th, 2017, Plaintiff was sent to cover the UM v. Notre Dame game at the Hard Rock Stadium where thousands of fans had been drinking and tailgating for hours. Plaintiff was verbally, physically, and sexually assaulted by a fan just minutes before her 11 p.m. report. Plaintiff's Assistant Manager, Abby Lewing ("Ms. Lewing") had insisted that Plaintiff and her videographer "report live" despite Plaintiff's repeated protests about the dangerous conditions they were being placed in.

68.     Ms. Lewing responded to Plaintiff's concerns by saying "are you refusing to do your job?" This left Plaintiff in a position where she feared she would lose her job, and ultimately Plaintiff's fears became reality.

69.     Just one month later, on or about December 30th, 2017, Ms. Lewing sent Plaintiff to cover another football game at the Orange Bowl. Plaintiff was scheduled to work in the same area of the parking lot where she had previously been assaulted and complained to Assistant Manager, Ms. Lewing that she did not feel safe working there due to the lack of security and the prior incident which had occurred in the same location.

70.     Then on January 4, 2018, Plaintiff reported to VP of News, Ms. Roldan, the two incidents where she had been assaulted and Ms. Roldan responded by saying, "this is not a whining session." She added, "The fact is that people are shitty people and we have to deal with it. We all create our own perception and reality around what happens to us."

71.     Each time Plaintiff voiced her complaints, she was told that these things just happen to her, insinuating that Plaintiff somehow invites this kind of behavior.

72.   Defendant failed to take any corrective action to Plaintiff's complaints about harassment and discrimination instead condoning and fostering an environment where sexual assault and abusive behavior is not only acceptable but is the norm.  Defendant did not take any corrective action and instead chose to retaliate against Plaintiff by continually passing her over for full-time positions, forcing her to significantly scale back her business, giving her lesser pay than her peers, and assigning her the least desired stories.

73.   These three separate incidents and Defendants responses to each of them, show Defendant's complacency with sexual harassment being a normal part of a reporter's job and also show that speaking up against harassment in the workplace only gets you blacklisted and threatened.

74.   An example of this was right after Plaintiff had addressed concerns of being assaulted at work, she was placed on a story that had nothing to do with what all the other employees were working on, the devastating Parkland High School mass shooting.

75.   Defendants went so far as to having a meeting with Plaintiff on or about May 2017 just to tell her not to report issues she was having at work to Human Resources, the General Manager, or to any of her superiors.

76.   The following month, on or about June 2017, Plaintiff had inquired about a full-time position and was told by Ms. Roldan that there were none. Plaintiff then told Ms. Roldan that she was applying for a full-time special projects position in Los Angeles with KNBC. Ms. Roldan happened to know the manager there, Matt Goldberg ("Mr. Goldberg"), and was scheduled to have lunch with him that month.

77.   After Plaintiff applied for the position at KNBC, and emailed Mr. Goldberg to setup a call, Plaintiff never heard back from Mr. Goldberg, nor did he respond to any of her follow up

11

emails. Upon information and belief, Plaintiff was told that Ms. Roldan said Plaintiff was not going to be qualified for the position for which she was applying for.

78. This was just one of the ways that Ms. Roldan and Ms. Hernandez intimidated Plaintiff and retaliated against her for voicing complaints to management.

79. In fact, when Plaintiff attempted to address issues of discrimination and disparate treatment, Ms. Hernandez told Plaintiff "not to rock the boat" because Ms. Roldan had "given her an opportunity to be on the air."

80. These are exactly the reasons why Plaintiff didn't make a formal complaint until she was forced to resign. Any time Plaintiff tried to speak out, she was met with opposition, threats, and intimidation.

81. Defendant's actions and/or failures to act, began to impact Plaintiff's mental and physical health. She no longer could work in a toxic, misogynistic environment, in which no one addressed her concerns for her safety.

82. As time went on, Defendant's continued to intimidate and retaliate against Plaintiff for voicing her complaints.

83. Ultimately, after years of being passed over for full-time positions to younger female employees, having male counterparts given preferential treatment and higher pay, and enduring verbal and physical assaults while on the job with no corrective actions taken, Plaintiff put in her two weeks' notice and quit on or about March 16, 2018.

## COUNT I
### *Age Discrimination in Violation of the ADEA*

84. Plaintiff re-adopts each and every general and factual allegation as stated in paragraphs 1-35 and 61-83 above as if set out in full herein.

85. Plaintiff is a member of a protected class under the ADEA, to wit Plaintiff is over forty (40) years of age.

86. By the conduct described above, Defendant has engaged in discrimination against Plaintiff because of Plaintiff's age and subjected the Plaintiff to age-based animosity.

87. Such discrimination was based upon the Plaintiff's age in that Plaintiff would not have been the object of discrimination but for the fact that Plaintiff is over the age of forty (40).

88. Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendant and its supervisory personnel were aware that discrimination on the basis of Plaintiff's age was unlawful but acted in reckless disregard of the law.

89. At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

90. Defendant retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

91. As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

92. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under federal law.

93. The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal

law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

94. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

    A. Adjudge and decree that Defendant has violated the ADEA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

    B. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

    C. Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

    D. Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

<u>**COUNT II**</u>
*Sex (Gender)Discrimination in Violation of the Title VII*

95. Plaintiff re-adopts each and every general and factual allegation as stated in paragraphs 1 through 83 above as if set out in full herein.

96. Plaintiff is a female individual and is a member of a protected class under Title VII.

97. By the conduct describe above, Defendant has engaged in discrimination against Plaintiff because of Plaintiff's sex/gender and subjected the Plaintiff to sex-based animosity.

98. Such discrimination was based upon the Plaintiff's sex/gender in that Plaintiff would not

have been the object of discrimination but for the fact that Plaintiff is a female.

99.   Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendant and its supervisory personnel were aware that discrimination on the basis of sex/gender was unlawful but acted in reckless disregard of the law.

100.  At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

101.  Defendant retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

102.  As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

103.  The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under federal law.

104.  The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

105.  Plaintiff has suffered and will continue to suffer both irreparable injury and compensable

damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant:

A.  Adjudge and decree that Defendant has violated Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B.  Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

C.  Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

D.  Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

E.  Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

F.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

G.  Award any other compensation allowed by law including punitive damages, attorney's fees and further demands a trial by jury on all issues so triable.

## COUNT III
### *Discrimination in Compensation*
### *Equal Pay Act of 1963, 29 U.S.C. §206 et seq.*

106.  Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-21 and 36-83 of this complaint as if set out in full herein.

107.   This action is brought by Plaintiff and other similarly situated individuals to recover back pay damages for Defendant's violation, as well as an additional amount as liquidated damages equal to the amount of back pay awarded, costs, and reasonable attorney's fees under the provisions of the EPA.

108.   Plaintiff belongs to a protected class; she is a female.

109.   Plaintiff job function as a freelance per-diem employee were and are the of equal skill, effort, and responsibility as the job functions of Defendant's male freelance per-diem employees and they were performed under the same or similar conditions.

110.   During all relevant periods, Plaintiff received wages lower that most if not all, of Defendant's male freelance employees' wages while performing the same or substantially more work than her male coworkers.

111.   Plaintiff was qualified for and entitled to wages equal to or higher than her male coworkers' wages performing the equal and/or same or at times substantially more work than her male counterparts.

112.   Defendant violated the EPA in not paying Plaintiff and other similarly situated females on par with their male counterparts; Plaintiff is entitled to damages and equitable relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

A.   Adjudge and decree that Defendant has violated the EPA and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights.

B.   Award Plaintiff actual damages in the amount shown to be due, with interest; and

C.   Award Plaintiff an equal amount in double damages/ liquidated damages; and

D.   Award Plaintiff the cost of this action, together with reasonable attorney's fees; and

17

E. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT IV
### *Retaliation in Violation of Title VII*

113.   Plaintiff re-adopts each and every general and factual allegation as stated in paragraphs 1-83 of this complaint as if set out in full herein.

114.   Plaintiff is a member of a protected class under Title VII, to wit she complained of discriminatory treatment.

115.   By the conduct describe above, Defendant retaliated against Plaintiff for exercising rights protected under the Title VII.

116.   Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendant and its supervisory personnel were aware that discrimination on the basis of Plaintiff's national origin was unlawful but acted in reckless disregard of the law.

117.   As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

118.   The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under federal law.

119.   The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant

18

to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

120. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant:

A. Adjudge and decree that Defendant has violated Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

C. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

D. Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

E. Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

F. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## <u>JURY DEMAND</u>

Plaintiff demands trial by jury of all issues triable as of right by jury.

Dated: June 19, 2020.

Respectfully submitted,

*/s/ Daniel J. Bujan*
Peter M. Hoogerwoerd, Esq.
Fla. Bar No.: 0188239
pmh@rgpattorneys.com
Daniel J. Bujan, Esq.
Fla. Bar No.: 1017943
dbujan@rgpattorneys.com
**Remer & Georges-Pierre, PLLC**
44 West Flagler Street, Suite 2200
Miami, FL 33130
(305) 416-5000- Telephone
(305) 416-5005- Facsimile

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY FLORIDA

CASE NO. 2020-011163-CA-01

SILVA HARAPETI,
and other similarly situated individuals,

       Plaintiff(s),

vs.

CBS TELEVISION STATIONS, INC.,
a Foreign Profit Corporation,

       Defendant.

_____/

## SUMMONS ON AMENDED COMPLAINT IN A CIVIL CASE

**TO: CBS TELEVISION STATIONS, INC.** through its Registered Agent:

        CORPORATION SERVICE COMPANY
        1201 HAYS STREET
        TALLAHASSEE, FL 32301-2525

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFFS'S ATTORNEY

        PETER MICHAEL HOOGERWOERD, ESQ.
        REMER & GEORGES-PIERRE, PLLC.
        44 WEST FLAGLER STREET
        SUITE 2200
        MIAMI, FL 33130

an answer to the complaint which is herewith served upon you, within **20 days** after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_____

CLERK                          DATE

_____

(BY) DEPUTY CLERK

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY FLORIDA

CASE NO. 2020-011163-CA-01

SILVA HARAPETI,
and other similarly situated individuals,

      Plaintiff(s),

vs.

CBS TELEVISION STATIONS, INC.,
a Foreign Profit Corporation,

      Defendant.

_____/

## SUMMONS ON AMENDED COMPLAINT IN A CIVIL CASE

**TO: CBS TELEVISION STATIONS, INC.** through its Registered Agent:

      CORPORATION SERVICE COMPANY
      1201 HAYS STREET
      TALLAHASSEE, FL 32301-2525

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFFS'S ATTORNEY

      PETER MICHAEL HOOGERWOERD, ESQ.
      REMER & GEORGES-PIERRE, PLLC.
      44 WEST FLAGLER STREET
      SUITE 2200
      MIAMI, FL 33130

an answer to the complaint which is herewith served upon you, within **20 days** after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_____

CLERK                         DATE    7/1/2020

    308760

_____

(BY) DEPUTY CLERK