UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:20-CV-22995-KMW

SILVA HARAPETI,

     Plaintiff,

v.

CBS TELEVISION STATIONS, INC.,
a Foreign Profit Corporation, et al.

     Defendant.

_____/

## THIRD AMENDED COMPLAINT

Plaintiff, SILVA HARAPETI (hereinafter "Plaintiff"), by and through the undersigned counsel, hereby sues Defendant, CBS TELEVISION STATIONS, INC., CBS BROADCASTING, INC. and CBS CORPORATION (hereinafter "Defendants"), and in support avers as follows:

## GENERAL ALLEGATIONS

1. This is an action by the Plaintiff for damages due to Defendant's violation of the Equal Pay Act 1936, 29 U.S.C. § 206, *et seq*. ("EPA"); for Defendant's unlawful discrimination and retaliation predicated on Plaintiff's sex (gender) and age in violation of Title VII of the Civil Rights Act of 1964 as amended ("Title VII") the Age Discrimination in Employment Act ("ADEA") the Florida Civil Rights Act of 1992, Florida Statutes, Chapter 760, *et seq*. ("FCRA") and for intentional and negligent infliction of emotional distress.

2. This court has jurisdiction over Plaintiff's ADEA, EPA, Title VII and FCRA and infliction of emotional distress claims.

3. Plaintiff was at all times relevant to this action a resident of Miami Dade County, Florida, within the jurisdiction of this Honorable Court.

4. Plaintiff is over the age of eighteen years old and otherwise *suris juris*.

1

5.     Defendants CBS Broadcasting, Inc., CBS Television Stations, Inc. and CBS Corporation all conducted business in Miami-Dade County, Florida, where Plaintiff worked for Defendants, all of whom jointly employed Plaintiff.

6.     Defendants CBS Television Stations, Inc. an "employer" pursuant to the ADEA 29 U.S.C. §§ 630(b) since it employs twenty (20) or more employees for the applicable statutory period.

7.     At all times material hereto, Plaintiff was an "employee" within the meaning of Title VII and the ADEA, in that she was subjected to negative, disparate treatment and retaliation by her employer based on her age, and sex (gender) and/or her complaints of discrimination.

8.     Defendant, CBS Television Stations, Inc., is a "person" and/or an "employer" pursuant to Florida Civil Rights Act of 1992, *Fla. Stat. Section 760.01, et seq.* since it employs fifteen or more employees for the applicable statutory period; and it is subject to the employment discrimination provisions of the applicable statute, the FCRA.

9.     At all times material hereto, Plaintiff was an "employee" within the meaning of Florida Civil Rights Act of 1992, Fla *Stat. Section 760, et seq.* and it is subject to the employment discrimination provisions of the applicable statutes.

10.    Venue is proper in Miami-Dade County, Florida, because all of the actions that form the basis of this complaint occurred within Miami-Dade County, Florida.

11.    On January 9, 2019 Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") (EEOC Charge No.:511-2019-02980). which was dually filed with the Florida Commission on Human Relations.

12.     At the time of the filing of Plaintiff's Charge of Discrimination, the Equal Employment Opportunity Commission was subject to the lapse in appropriations that occurred from December 22, 2018 to January 26, 2019, which required the EEOC to shut down most operations and services.  Because the government shutdown was beyond the Plaintiff's control, the EEOC tolled the filing deadline for Plaintiff's Charge as it did for all Charges of Discrimination during the government shutdown.  For any documentation or responses due to the EEOC between December 22, 2018 and January 28, 2019, the EEOC extended the submission deadline to February 12, 2019. This extension applied to both Respondents and Charging Parties.  Ultimately, instead of dismissing the Charge of Discrimination as untimely, the EEOC equitably tolled the filing deadline by accepting Plaintiff's Charge of Discrimination and assigning her Charge to an investigator for processing.

13.     The Florida Commission on Human Relations did not issue a finding on Plaintiff's charge within 180 days of the filing of said charge.

14.     On or about February 25th, 2020, the EEOC issued a Notice of Determination from the EEOC which was not mailed until February 26, 2020 and Plaintiff timely instituted suit by filing this action.

15.     Declaratory, injunctive, legal and equitable relief sought pursuant to the laws set forth above together with attorneys' fees, costs and damages.

16.     All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

17.     Defendant directly or indirectly acted in the interest of an employer towards Plaintiff and other similarly situated employees at all material times, including without limitation

directly or indirectly controlling the terms of employment of Plaintiff and other similarly situated employees.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

18.   Plaintiff began working for Defendant on or about February 21, 2011 as a freelance reporter, and worked for Defendant on and off, with the same title, until on or about March 18, 2018.

19.   Throughout her time working for Defendant as a freelance reporter, Plaintiff was paid on a per-diem (per day) basis.

20.   Plaintiff was hired as a freelance reporter in 2011, 2012, and 2015. Each time Plaintiff was hired, Defendant assured her that she would be considered for a full-time reporter position when an opening became available.

21.   With this in mind, Plaintiff continued working as a freelance reporter with the hopes that she would be hired full-time, with a contract, salary, and benefits when an opening became available.

22.   However, throughout her seven years working for Defendant, various opportunities for full-time positions became available, yet Plaintiff was never offered a position.

23.   This is due to Defendant's systematic practice of giving full-time employment contracts, top news story assignments, and increased salaries to both males and younger female employees.

24.   Plaintiff's claims arise out of the investigation of her Charge of Discrimination and the Defendant's Position Statement.

25.   The storied history of Defendant's discrimination against Plaintiff provides a convincing mosaic of a pattern of Defendant's discrimination and hostility by denying Plaintiff opportunities for advancement and subjecting Plaintiff to a hostile work environment by

forcing Plaintiff to work on dangerous assignments where she was assaulted and physically impacted by onlookers for her field assignments as a per diem on air news reporter.

26. On multiple occasions, Plaintiff complained to Defendant that she was being treated unfairly compared to her other male and younger female colleagues.

27. Throughout Plaintiff's time working for Defendant, she was continually passed over for full-time reporter positions.

28. Despite Defendant's assurances that she would be considered for the position when an opening became available, when a position did become available, it was continually given to younger female employees with less experience than Plaintiff.

29. Ms. Harapeti's history of her employment with Defendant begins on or about April 2011. After working for Defendant for several months, a full-time reporter position became available. Plaintiff inquired about the position on multiple occasions, yet the position was given to a younger, less experienced female, Kara Kostanich.

30. Following this, on or about June 2011, another full-time position became available and Plaintiff again inquired about the position on multiple occasions.  Defendant, yet again, chose a younger, less experienced female, Maggie Newland.

31. The following year, in April 2012, another full-time position became available and Plaintiff again inquired about the position on multiple occasions. Once again, Defendant hired a younger, less experienced female, Summer Knowles.

32. That same year, another full-time position became available and Plaintiff again inquired about the position on multiple occasions. Defendant chose a younger, less experienced female, Lauren Pastrana.

33. Three years later, in 2015, after a month before being told by Vice President of News, Liz Roldan ("Ms. Roldan"), and Executive Producer, Cari Hernandez ("Ms. Hernandez") that no full-time positions were available, Defendant hired Oralia Ortega. Ms. Ortega is a younger, less experienced female and was hired full-time with a contract and benefits.

34. Additionally, male employees were given more resources and greater choice of story selection, along with other income opportunities.

35. Plaintiff was continuously denied any other income opportunities by Defendant, despite being classified as a freelance reporter, which in theory would allow her to maintain her own personal business while working for Defendant.

36. When Plaintiff was asked to work in the Special Projects Unit, normally a full-time position, she was told she would still be classified as a freelancer, because the full-time on-air position was not available. The position offered to her was significantly lower than the positions of her male and younger female peers.

37. However, as a freelancer, this would have allowed Plaintiff to continue to run her personal marketing, education, and production business which was helping her financially due to her per-diem pay status with Defendant.

38. Another male employee who worked in the Special Projects Unit, Mr. Sutta, who had a full-time position with Defendant, was allowed to run his own personal photography company, while simultaneously working for Defendant.

39. In February of 2016, Plaintiff took time off to manage an emergency matter for one of her education clients. After following company procedures and protocol, upon her return Plaintiff was told by Ms. Hernandez and Ms. Roldan that she in fact could not have her own personal business and work for Defendant as a freelancer simultaneously.

40.     Thereafter, Plaintiff, Ms. Hernandez, and Nick Bourne ("Mr. Bourne") Assistant Vice President of News, had a meeting in which Ms. Hernandez threatened to fire Plaintiff, and stated that the company was "questioning her loyalty."

41.     Plaintiff pointed out that she was a freelancer and was entitled to have her own side business and also pointed out that male employees were never questioned regarding their own side businesses.

42.     Through Defendant's intimidation and threats of termination, Plaintiff was forced to scale back her business, significantly reducing the number of her clients.

43.     At no point however was Mr. Sutta, Plaintiff's male colleague who worked in the same division, questioned or harassed regarding his own personal photography business.

44.     After the meeting, Mr. Bourne escalated this issue to Human Resources, as he felt that what Ms. Hernandez and Ms. Roldan were doing was against company policy. Yet, despite escalating the issue, no corrective action was ever taken by Defendant.

45.     In  November of 2016, Defendant hired Tiani Jones ("Ms. Jones") as a freelance reporter. Ms. Jones, a younger female, was paid significantly more than Plaintiff was being paid as a freelance reporter.

46.     To make matters worse, when Defendant moved Plaintiff to Ms. Jones position, the prime-time evening shift, Ms. Roldan denied Plaintiff's request to have her pay increased to what Ms. Jones was making. Ms. Roldan stated, "that money isn't available to you."

47.     Defendants went so far as to having a meeting with Plaintiff on or about May 2017 just to tell her not to report issues she was having at work to Human Resources, the General Manager, or to any of her superiors.

48.  The following month, on or about June 2017, Plaintiff had inquired about a full-time position and was told by Ms. Roldan that there were none. Plaintiff then told Ms. Roldan that she was applying for a full-time special projects position in Los Angeles with KNBC. Ms. Roldan happened to know the manager there, Matt Goldberg ("Mr. Goldberg"), and was scheduled to have lunch with him that month.

49.  After Plaintiff applied for the position at KNBC, and emailed Mr. Goldberg to setup a call, Plaintiff never heard back from Mr. Goldberg, nor did he respond to any of her follow up emails. Upon information and belief, Plaintiff was told that Ms. Roldan said Plaintiff was not going to be qualified for the position for which she was applying.

50.  This was just one example of the many ways that Ms. Roldan and Ms. Hernandez continually intimidated Plaintiff and retaliated against her for voicing complaints to management, despite Plaintiff being a so-called "per-diem" employee.

51.  In fact, when Plaintiff attempted to address issues of discrimination and disparate treatment, Ms. Hernandez told Plaintiff "not to rock the boat" because Ms. Roldan had "given her an opportunity to be on the air."

52.  In July of 2017, a month after Plaintiff was told that there was no budget for an increase in her pay, Defendant hired Rielle Creighton ("Ms. Creighton") as a freelance reporter. Ms. Creighton, a younger female, was paid significantly more than Plaintiff was, despite having the same exact position.

53.  The following year, on or about January 2018, Defendant hired Amber Diaz ("Ms. Diaz") as a freelance reporter. Ms. Diaz, a younger female, was paid $33,000.00 more than Plaintiff.

54. The above facts show a pattern in which Defendant discriminated against Plaintiff based on her age by continually choosing younger females, with far less experience, for full-time positions.

55. Further, even when Defendant hired younger female reporters as freelancers, it paid these younger females considerably more than Plaintiff.

56. Defendant tolerated and cultivated a work environment that discriminated against female freelance employees.

57. Plaintiff, and other female freelance employees, were subjected to unlawful disparate treatment, in that female freelance employees got paid at a lower rate than their male counterparts for equal work.

58. Throughout Plaintiff's employment, Defendant has consistently hired men at considerably higher rates than women, such that the salary structure has resulted in a substantial disparity between male and female employees. Specifically, a disparity exists between female freelance employees and their equal male counterparts.

59. Male freelance employees in Plaintiff's team performed the same and/or similar duties as Plaintiff, including sourcing and gathering information on local and national news coverage, posting on social media regarding the stories they covered, answering emails and phone calls, and frequently working in the field reporting stories assigned to them.

60. Male freelance workers performed the same and/or similar work under the same and/or similar working conditions as female freelance reporters, had the same and/or similar responsibilities, and used the same and/or similar system and equivalent equipment to perform their duties.

61. Throughout Plaintiff's employment, Defendant paid male freelance employees at a higher rate than Plaintiff; the increased pay that Plaintiff's male counterparts received was not based on superior skills, effort, responsibility, or any other legitimate factor.

62. Plaintiff was compensated at a lower pay rate than her equal male counterparts who performed the same and/or similar duties under substantially similar conditions.

63. Specifically, Plaintiff was paid at a lower rate than her team members, who were similarly situated, including but not limited to, Hank Tester ("Mr. Tester"), David Sutta ("Mr. Sutta"), Ted Scouten "Mr. Scouten"), and Cary Codd ("Mr. Codd").

64. Another example of the disparate treatment Plaintiff was subjected to was Defendant paying another male per-diem employee, Mr. Tester, at a higher rate than Plaintiff, despite both performing substantially similar work that required the same skill, effort, and responsibility.

65. During Hurricane Irma, Plaintiff was working on Miami Beach covering the storm with another male per-diem employee, Mr. Mends. Plaintiff later found out through Mr. Mends that his pay during that time was structured in a way that he received both overtime and double-time.

66. Plaintiff and Mr. Mends worked the same shifts, the same hours, and delivered the same news. Yet Plaintiff was paid significantly less because she was a female freelance employee.

67. Plaintiff also voiced her complaints to management about them continually placing employees, specifically reporters, in dangerous situations without any care for their safety nor did they care to listen to employees who had experienced verbal and physical assaults which physically impacted reporters while working.

68.   On numerous occasions while working in the field, Plaintiff was assaulted, both verbally and physically, by individuals whom would physically impact her in the area she was placed to cover.

69.   Specifically, on September 9, 2017 while covering Hurricane Irma, Plaintiff was harassed and groped by an individual. Plaintiff reported the harassment to Ms. Roldan, which responded by telling Plaintiff to "not put any drunks on television."

70.   Following this incident, on or about November 11, 2017, Plaintiff was sent to cover the University of Miami v. Notre Dame game at the Hard Rock Stadium where thousands of fans had been drinking and tailgating for hours. Plaintiff was verbally, physically, and sexually assaulted by a fan just minutes before her 11:00 p.m. report. Plaintiff's Assistant Manager, Abby Lewing ("Ms. Lewing") had insisted that Plaintiff and her videographer "report live" despite Plaintiff's repeated protests about the dangerous conditions in which they were being placed.

71.   Ms. Lewing responded to Plaintiff's concerns by saying "are you refusing to do your job?" This left Plaintiff in a position where she feared she would lose her job, and ultimately Plaintiff's fears became reality.

72.   Just one month later, on or about December 30th, 2017, Ms. Lewing sent Plaintiff to cover another football game at the Orange Bowl. Plaintiff was scheduled to work in the same area of the parking lot where she had previously been assaulted and physically impacted. Plaintiff complained to Assistant Manager, Ms. Lewing that she did not feel safe working there due to the lack of security and the prior incident which had occurred in the same location.

73.     In January of 2018, Plaintiff reported to Vice President of News, Ms. Roldan, the two incidents where she had been assaulted and Ms. Roldan callously responded, "this is not a whining session." She added, "The fact is that people are shitty people and we have to deal with it. We all create our own perception and reality around what happens to us."

74.     Subsequent to this meeting, each time Plaintiff voiced her complaints, she was told that these things "just happen to her," insinuating that Plaintiff somehow invites this kind of flagrant behavior.

75.     Defendant failed to take any corrective action to Plaintiff's complaints about harassment and discrimination instead condoning and fostering an environment where sexual assault and abusive behavior was not only acceptable, but it was the norm.

76.     Defendant did not take any corrective action and instead chose to retaliate against Plaintiff by *continually* passing her over for full-time positions, forcing her to significantly scale back her business, giving her lesser pay than her peers, and assigning her the least desired stories.

77.     These three separate incidents and Defendants responses to each of them, show Defendant's negligent and reckless complacency with sexual harassment being a normal part of a reporter's job and also show that speaking up against harassment in the workplace only causes one to be "blacklisted" and to be threatened.

78.     An example of this was right after Plaintiff had addressed concerns of being assaulted at work, she was placed on a story that had nothing to do with what all the other employees were working on, the devastating Parkland High School mass shooting.

79.     Any time Plaintiff tried to speak out, she was met with opposition, threats, and intimidation.

80.     Defendant's actions and/or failures to act, began to impact Plaintiff's mental and physical health. She no longer could work in a toxic, misogynistic environment, in which no one addressed her concerns for her safety.

81.      As time went on, Defendant's continued to intimidate and retaliate against Plaintiff for voicing her complaints by failing to promote Plaintiff, subjecting her to a hostile work environment through the end of her career with the Defendant.

82.     Ultimately, after years of continuously being subjected to a hostile work environment  and continuously being passed over for full-time positions to younger female employees, having male counterparts continuously given preferential treatment and higher pay, and continuously enduring verbal and physical assaults while on the job with not a single corrective action taken, and after Plaintiff continuously complained about all of this, on or about March 16, 2018, Defendant constructively discharged Plaintiff.

<u>**COUNT I**</u>
*Age Discrimination in Violation of the ADEA*

83.     Plaintiff re-adopts each and every general and factual allegation as stated in paragraphs 1 through 82 above as if set out in full herein.

84.     Plaintiff is a member of a protected class under the ADEA, to wit Plaintiff is over forty (40) years of age.

85.     By the conduct described above, Defendant has engaged in discrimination against Plaintiff because of Plaintiff's age and subjected the Plaintiff to age-based animosity.

86.     Such discrimination was based upon the Plaintiff's age in that Plaintiff would not have been the object of discrimination but for the fact that Plaintiff is over the age of forty (40).

87.     Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendant and its supervisory personnel were aware that discrimination

13

on the basis of Plaintiff's age was unlawful but acted in reckless disregard of the law.

88.    At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

89.    Defendant retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

90.    As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

91.    The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under federal law.

92.    The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

93.    Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

A. Adjudge and decree that Defendant has violated the ADEA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

C. Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

D. Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT II
### *Sex Discrimination in Violation of the Title VII*

95.  Plaintiff re-adopts each and every general and factual allegation as stated in paragraphs 1 through 82  above as if set out in full herein.

96.  Plaintiff is a female individual and is a member of a protected class under Title VII.

97.  By the conduct describe above, Defendant has engaged in discrimination against Plaintiff because of Plaintiff's sex/gender and subjected the Plaintiff to sex-based animosity.

98.   Such discrimination was based upon the Plaintiff's sex/gender in that Plaintiff would not have been the object of discrimination but for the fact that Plaintiff is a female.

99.  Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendant and its supervisory personnel were aware that discrimination on the basis of sex/gender was unlawful but acted in reckless disregard of the law.

100.  At all times material hereto, the employees exhibiting discriminatory conduct towards

15

Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

101. Defendant retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

102. As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

103. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under federal law.

104. The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

105. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant:

A. Adjudge and decree that Defendant has violated Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

C. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

D. Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

E. Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

F. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

G. Award any other compensation allowed by law including punitive damages, attorney's fees and further demands a trial by jury on all issues so triable.

### <u>COUNT III</u>
***Discrimination in Compensation against CBS Television Stations, Inc.***
***Equal Pay Act of 1963, 29 U.S.C. §206 et seq.***

106. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 82 of this complaint as if set out in full herein.

107. This action is brought by Plaintiff and other similarly situated individuals to recover back pay damages for Defendant's violation, as well as an additional amount as liquidated damages equal to the amount of back pay awarded, costs, and reasonable attorney's fees under the provisions of the EPA.

108. Plaintiff belongs to a protected class; she is a female.

109. This Court has jurisdiction over Plaintiff's EPA claims pursuant to 29 U.S.C. §206 *et seq.*

17

110.    Counts for EPA violations may be brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by the EPA similarly situated plaintiffs who opt-in to this action because the claims of the Plaintiffs are similar to the claims of the EPA opt-in Class.

111.    Plaintiffs and the EPA opt-in Class (a) are similarly situated in that (b) they were subjected to Defendant's common practice of sex-based discrimination in failing to compensate female freelance employees on par with their male counterparts.

112.    Plaintiff job function as a freelance per-diem employee were and are the of equal skill, effort, and responsibility as the job functions of Defendant's male freelance per-diem employees and they were performed under the same or similar conditions.

113.    During all relevant periods, Plaintiff received wages lower that most if not all, of Defendant's male freelance employees' wages while performing the same or substantially more work than her male coworkers.

114.    Plaintiff was qualified for and entitled to wages equal to or higher than her male coworkers' wages performing the equal and/or same or at times substantially more work than her male counterparts.

115.    Defendant violated the EPA in not paying Plaintiff and other similarly situated females on par with their male counterparts; Plaintiff is entitled to damages and equitable relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

A. Adjudge and decree that Defendant has violated the EPA and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights.

B. Award Plaintiff actual damages in the amount shown to be due, with interest; and

C.   Award Plaintiff an equal amount in double damages/ liquidated damages; and

D.   Award Plaintiff the cost of this action, together with reasonable attorney's fees; and

E.   Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## <u>COUNT IV</u>
*Discrimination in Compensation against CBS Broadcasting Inc.*
*Equal Pay Act of 1963, 29 U.S.C. §206 et seq.*

110.   Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 82 of this complaint as if set out in full herein.

111.   This action is brought by Plaintiff and other similarly situated individuals to recover back pay damages for Defendant's violation, as well as an additional amount as liquidated damages equal to the amount of back pay awarded, costs, and reasonable attorney's fees under the provisions of the EPA.

112.   Plaintiff belongs to a protected class; she is a female.

113.   This Court has jurisdiction over Plaintiff's EPA claims pursuant to 29 U.S.C. §206 *et seq.*

116.   Counts for EPA violations may be brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by the EPA similarly situated plaintiffs who opt-in to this action because the claims of the Plaintiffs are similar to the claims of the EPA opt-in Class.

117.   Plaintiffs and the EPA opt-in Class (a) are similarly situated in that (b) they were subjected to Defendant's common practice of sex-based discrimination in failing to compensate female freelance employees on par with their male counterparts.

118.    Plaintiff job function as a freelance per-diem employee were and are the of equal skill, effort, and responsibility as the job functions of Defendant's male freelance per-diem employees and they were performed under the same or similar conditions.

119.    During all relevant periods, Plaintiff received wages lower that most if not all, of Defendant's male freelance employees' wages while performing the same or substantially more work than her male coworkers.

120.    Plaintiff was qualified for and entitled to wages equal to or higher than her male coworkers' wages performing the equal and/or same or at times substantially more work than her male counterparts.

121.    Defendant violated the EPA in not paying Plaintiff and other similarly situated females on par with their male counterparts; Plaintiff is entitled to damages and equitable relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

A.  Adjudge and decree that Defendant has violated the EPA and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights.

B.  Award Plaintiff actual damages in the amount shown to be due, with interest; and

C.  Award Plaintiff an equal amount in double damages/ liquidated damages; and

D.  Award Plaintiff the cost of this action, together with reasonable attorney's fees; and

E.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

<u>**COUNT V**</u>
***Discrimination in Compensation against CBS Corporation***
***Equal Pay Act of 1963, 29 U.S.C. §206 et seq.***

114.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 82 of this complaint as if set out in full herein.

115.    This action is brought by Plaintiff and other similarly situated individuals to recover back pay damages for Defendant's violation, as well as an additional amount as liquidated damages equal to the amount of back pay awarded, costs, and reasonable attorney's fees under the provisions of the EPA.

116.    Plaintiff belongs to a protected class; she is a female.

117.    This Court has jurisdiction over Plaintiff's EPA claims pursuant to 29 U.S.C. §206 *et seq.*

122.    Counts for EPA violations may be brought and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by the EPA similarly situated plaintiffs who opt-in to this action because the claims of the Plaintiffs are similar to the claims of the EPA opt-in Class.

123.    Plaintiffs and the EPA opt-in Class (a) are similarly situated in that (b) they were subjected to Defendant's common practice of sex-based discrimination in failing to compensate female freelance employees on par with their male counterparts.

124.    Plaintiff job function as a freelance per-diem employee were and are the of equal skill, effort, and responsibility as the job functions of Defendant's male freelance per-diem employees and they were performed under the same or similar conditions.

125.    During all relevant periods, Plaintiff received wages lower that most if not all, of Defendant's male freelance employees' wages while performing the same or substantially more work than her male coworkers.

126.   Plaintiff was qualified for and entitled to wages equal to or higher than her male coworkers' wages performing the equal and/or same or at times substantially more work than her male counterparts.

127.   Defendant violated the EPA in not paying Plaintiff and other similarly situated females on par with their male counterparts; Plaintiff is entitled to damages and equitable relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

A.   Adjudge and decree that Defendant has violated the EPA and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights.

B.   Award Plaintiff actual damages in the amount shown to be due, with interest; and

C.   Award Plaintiff an equal amount in double damages/ liquidated damages; and

D.   Award Plaintiff the cost of this action, together with reasonable attorney's fees; and

E.   Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## <u>COUNT VI</u>
### *Retaliation in Violation of Title VII*

128.   Plaintiff re-adopts each and every general and factual allegation as stated in 1 through 82 of this complaint as if set out in full herein.

129.   Plaintiff is a member of a protected class under Title VII, to wit she complained of discriminatory treatment.

130.   By the conduct describe above, Defendant retaliated against Plaintiff for exercising rights protected under the Title VII.

131.   Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendant and its supervisory personnel were aware that discrimination

on the basis of Plaintiff's sex or age was unlawful but acted in reckless disregard of the law.

132.   As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

133.   The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under federal law.

134.   The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

135.   Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant:

    A.   Adjudge and decree that Defendant has violated Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

    B.   Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

C.  Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

D.  Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

E.  Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

F.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT VII
### *Age Discrimination in Violation of the FCRA*

136.  Plaintiff re-adopts each and every general and factual allegation as stated in paragraphs 1 through 82 above as if set out in full herein.

137.  Plaintiff is a member of a protected class under the FCRA, to wit Plaintiff if over forty (40) years of age.

138.  By the conduct describe above, Defendant has engaged in discrimination against Plaintiff because of Plaintiff's age and subjected the Plaintiff to age-based animosity.

139.  Such discrimination was based upon the Plaintiff's age in that Plaintiff would not have been the object of discrimination but for the fact that Plaintiff is over the age of forty (40).

140.  Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendant and its supervisory personnel were aware that discrimination on the basis of Plaintiff's age was unlawful but acted in reckless disregard of the law.

141.  At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment

with the Defendant.

142.   Defendant retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

143.   As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

144.   Defendant's bases for the adverse conduct against Plaintiff, if any, are pretextual and illegitimate, asserted only to cloak the discriminatory nature of their conduct.

145.   The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under state and federal law.

146.   The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

147.   Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

   **WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant:

   A. Adjudge and decree that Defendant has violated the FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

   B. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits'

adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

C. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

D. Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

E. Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

F. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

<u>**COUNT VIII**</u>
*Sex Discrimination in Violation of the FCRA*

148. Plaintiff re-adopts each and every general and factual allegation as stated in paragraphs 1 through 82  above as if set out in full herein.

149. Plaintiff is a female individual and is a member of a protected class under the FCRA.

150. By the conduct describe above, Defendant has engaged in discrimination against Plaintiff because of Plaintiff's sex/gender and subjected the Plaintiff to sex-based animosity.

151. Such discrimination was based upon the Plaintiff's sex/gender in that Plaintiff would not have been the object of discrimination but for the fact that Plaintiff is a female.

152. Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendant and its supervisory personnel were aware that discrimination on the basis of sex/gender was unlawful but acted in reckless disregard of the law.

153. At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's

employment with the Defendant.

154.    Defendant retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

155.    As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

156.    The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under federal law.

157.    The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

158.    Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant:

A.    Adjudge and decree that Defendant has violated the FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B.    Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits'

adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

C.  Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

D.  Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

E.  Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

F.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT IX
### *Retaliation in Violation of the FCRA*

159.  Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 82 of this complaint as if set out in full herein.

160.  Plaintiff is a member of a protected class under the FCRA.

161.  By the conduct describe above, Defendant retaliated against Plaintiff for exercising rights protected under the FCRA.

162.  Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendant and its supervisory personnel were aware that discrimination on the basis of Plaintiff's sex or age was unlawful but acted in reckless disregard of the law.

163.  As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

164. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under federal law.

165. The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights, thus entitling Plaintiff to damages in the form of compensatory and punitive damages pursuant to federal law, to punish the Defendant for its actions and to deter it, and others, from such action in the future.

166. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiffs respectfully prays for the following relief against Defendant:

A. Adjudge and decree that Defendant has violated the FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

C. Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

D. Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

E.  Award Plaintiff the costs of this action, together with a reasonable attorneys' fees; and

F.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

**COUNT X**
***Intentional Infliction of Emotional Distress***

167.  Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 82 of this complaint as if set out in full herein.

168.  During the time frame enumerated, Defendant deliberately and recklessly inflicted mental suffering on Plaintiff by and through intentional verbal and physical harassment and humiliation by forcing Plaintiff to report in unsafe areas where it was reasonably foreseeable that Plaintiff would be physically assaulted.

169.  Defendant adopted a cavalier "suck it up, buttercup" attitude in the face of Plaintiff's complaints about unsafe working conditions and insinuated Plaintiff was inviting physical attacks from onlookers.

170.  Defendant's conduct is so outrageous in character, and so extreme in degree, that it is considered atrocious and utterly intolerable in a civilized society.

171.  Defendant's conduct caused Plaintiff severe emotional distress.

172.  As a direct and proximate result of Defendant's conduct described above, Plaintiff suffered mental anguish, loss of capacity for the enjoyment of life, medical care and treatment, loss of earnings, loss of ability to earn money, and/or the aggravation of a previously existing condition.  The losses are either permanent or continuing, and Plaintiff will suffer the losses in the future.

**WHEREFORE**, the Plaintiff demands judgment for damages against Defendant and such other relief as this Court deems appropriate and just.

<u>**COUNT XI**</u>
***Negligent Infliction of Emotional Distress***

173.   Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 82 of this complaint as if set out in full herein.

174.   At all relevant times, Defendant owed Plaintiff a duty to act with reasonable care, and/or the injury to the Plaintiff was reasonably foreseeable.

175.   At all relevant times, Defendant had the power, ability, authority and duty to stop the conduct described herein and to intervene to prevent or prohibit such conduct.

176.   At all relevant times, defendant knew or reasonably should have known, that the conduct described herein would and did proximately result in Plaintiff's physical and emotional distress.

177.   Despite said knowledge, power, and duty, Defendant negligently failed to stop the conduct described herein or to prevent or to prohibit such conduct or otherwise to protect Plaintiff, thereby breaching its duty to her. To the extent that said negligent conduct was perpetrated by third parties not under Defendant's control, the Defendant confirmed and ratified said conduct with the knowledge that Plaintiff's emotional and physical distress would thereby increase and with wanton and reckless disregard for the deleterious consequences to Plaintiff.

178.   As a direct and legal result of Defendant's wrongful act, Plaintiff has endured emotional distress, increased anxiety in public places and depression associated with her condition.

179.   As a direct and legal result of Defendant's wrongful acts, Plaintiff has suffered and will continue to suffer significant physical injury, pain, and suffering, and extreme and severe mental anguish and emotional distress.

180.    Defendant's conduct constitutes the negligent infliction of emotional distress and is actionable under the laws of the State of Florida.

**WHEREFORE**, the Plaintiff demands judgment for damages against Defendant and such other relief as this Court deems appropriate and just.

<u>**JURY DEMAND**</u>

Plaintiff demands trial by jury of all issues triable as of right by jury. Dated: October 20, 2020

Respectfully submitted,

<u>*/s/ Peter M. Hoogerwoerd*</u>
Peter M. Hoogerwoerd, Esq.
Fla. Bar No.: 0188239
pmh@rgpattorneys.com

32

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on October 20, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>/s/ Peter M. Hoogerwoerd</u>
Peter M Hoogerwoerd, Esq.
Florida Bar No.: 0188239
pmh@rgpattorneys.com
**REMER & GEORGES-PIERRE, PLLC**
44 West Flagler Street, Suite 2200
Miami, FL 33130
Telephone: (305) 416-5000
Facsimile: (305) 416-5005