**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO: 1:20-CV-22995-KMW**

SILVA HARAPETI,

     Plaintiff,

vs.

CBS TELEVISION STATIONS INC.
A Foreign Profit Corporation,

     Defendant.

_____

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED**
**COMPLAINT (ECF NO. 40) AND SUPPORTING MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................ 1

II.   RELEVANT FACTS ................................................................... 4

III.  LEGAL STANDARD ................................................................. 6

IV.   ARGUMENT ............................................................................ 7

A.    Plaintiff Fails To State An EPA Collective Action Claim.................... 7

B.    Plaintiff's Title VII and ADEA Disparate Treatment and Retaliation
      Claims Are Time-Barred and Should Be Dismissed. ........................... 10

      1.  Plaintiff's Title VII and ADEA Disparate Treatment and Retaliation
          Claims are Untimely Because She Received Notice of Right to Sue
          over 90 Days before Filing Her Original Complaint. ..................... 10

      2.  Plaintiff's Title VII and ADEA Disparate Treatment and Retaliation
          Claims are Also Untimely Because She Failed to Comply with the
          300-Day Deadline to File Her Charge of Discrimination. .............. 11

C.    Plaintiff's FCRA Disparate Treatment and Retaliation Claims Fail. ......... 15

D.    Plaintiff Cannot Establish A Timely Hostile Work Environment Claim
      Under Title VII Or The FCRA.................................................. 16

E.    Plaintiff Fails To Allege Facts Sufficient To Support Her Intentional
      Infliction Of Emotional Distress Claim. ..................................... 17

F.    Plaintiff Fails to Allege a Joint Employer Relationship. .................... 19

G.    The Claims Should Be Dismissed With Prejudice. ........................... 20

V.    CONCLUSION ........................................................................ 20

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant CBS Television Stations Inc. ("CBS TV"), along with CBS Broadcasting, Inc. and CBS Corporation (collectively, the "New Defendants," and together with CBS TV, "Defendants") respectfully move to dismiss all claims in Plaintiff Silva Harapeti's ("Plaintiff") Third Amended Complaint (ECF No. 40) (hereinafter, the "Third Amended Complaint" or "TAC"), with the exception of Plaintiff's individual claim under the Equal Pay Act 1936, 29 U.S.C. §§ 206, *et seq.* (the "EPA") (Count III) and Plaintiff's state law claim for negligent infliction of emotional distress.[1]

## I.    INTRODUCTION

In the fourth iteration of her operative pleading, Plaintiff makes no effort to remedy the defects identified in CBS TV's (now moot) Motion to Dismiss the Second Amended Complaint.[2] Indeed, Plaintiff's Third Amended Complaint is substantively identical to her Second Amended Complaint, and only seeks to add two entities as defendants:  CBS Broadcasting, Inc. and CBS Corporation (collectively, the "New Defendants").  *See* Motion to Amend (ECF No. 37) at 1. Beyond this addition, there are little to no substantive modifications—the Third Amended Complaint alleges conclusorily that all Defendants "jointly employed Plaintiff," and copies and pastes the deficient Count III from Plaintiff's Second Amended Complaint against CBS TV into two new Counts against the New Defendants.  *Compare* Second Amended Complaint (ECF No.

---

[1] Although CBS Corporation and CBS Broadcasting, Inc. respond to the Third Amended Complaint through this Motion, neither is a proper party to this lawsuit and, in fact, one no longer exists.  CBS Corporation ceased to exist in December of 2019, when it merged with Viacom to create ViacomCBS, Inc.  This information is a matter of public record.  CBS Broadcasting, Inc., on the other hand, owns and operates only a handful of CBS-affiliated TV stations, none of which employed Plaintiff.  *See Harapeti v. CBS Television Stations Inc.*, No. 20-cv-20961 (S.D. Fla.), Declaration of Joel Goldberg (ECF No. 48-1) ¶¶ 5–6.

[2] CBS TV filed a Motion to Dismiss Plaintiff's Second Amended Complaint on September 1, 2020. *See* (ECF No. 25).  Plaintiff responded (ECF No. 29) and on October 6, 2020, CBS TV filed its reply (ECF No. 35), making the motion ripe for the Court's adjudication.  Thereafter, on October 16, 2020, Plaintiff moved for leave to amend solely to add two new Defendants.  *See* Motion to Amend (ECF No. 37) at 1 ("Plaintiff seeks to amend her third amended complaint to add the Defendants named in the declarations filed by Defendant in opposition to Plaintiff's Correct Motion for Conditional Certification of a Collective Action . . . in the companion FLSA case, number 1:20-CV-20961-KMW . . . .").  The Court granted leave to amend, thereby mooting CBS TV's Motion to Dismiss.  *See* Paperless Order Granting Motion (ECF No. 39); Paperless Order Denying as Moot Motion to Dismiss (ECF No. 42).

16) ¶¶ 106–115 *and* TAC ¶¶ 106–115 (Count III against CBS TV) *with* ¶¶ 110–121 (Count IV against CBS Broadcasting Inc.) *and* ¶¶ 114–127 (Count V against CBS Corporation).

To the point, in her now fourth attempt at pleading plausible claims for relief, Plaintiff continues to stand by her woefully deficient allegations and persists in the manipulation of her factual allegations in an attempt to avoid the timeliness defenses CBS TV originally asserted two Motions to Dismiss ago. *See* (ECF No. 8). Like all of its predecessors, Plaintiff's Third Amended Complaint, fails to set forth facts sufficient to establish claims for relief against Defendants.

Specifically, Plaintiff asserts nine causes of action against CBS TV: two individual claims for alleged sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") (Count II) and the Florida Civil Rights Act of 1992 ("FRCA") (Count VIII); a claim for gender discrimination in compensation under the EPA (Count III); two claims for age discrimination under the Age Discrimination in Employment Act (the "ADEA") (Count I) and the FCRA (Count VII); retaliation under Title VII (Count VI) and the FCRA (Count IX); intentional infliction of emotional distress claim ("IIED") (Count X); and  negligent infliction of emotional distress claim ("NIED") (Count XI). Plaintiff purports to bring Count III on behalf of herself and an unspecified group of female CBS TV employees. *See* TAC ¶ 107. With the Third Amended Complaint, Plaintiff parrots her individual and collective EPA claim under Count III as Counts IV and V directed to CBS Broadcasting and CBS Corporation, respectively.[3]  *See id.* ¶ 111 (Count IV), ¶ 115 (Count V).[4]

Plaintiff's purported collective actions under the EPA should be dismissed because she does not allege *any* facts to plausibly support this claim. Tellingly, even though CBS TV moved on these grounds in its first Motion to Dismiss and its second Motion to Dismiss, Plaintiff does not (because she cannot) add any new factual allegation to cure the deficiencies with respect to her collective action claim (now claims). Indeed, just like the Amended Complaint and the Second Amended Complaint, the Third Amended Complaint contains no more than a handful of conclusory allegations asserting that CBS TV violated the EPA by failing to pay "similarly situated

---

[3] Throughout this Motion, where Defendants reference claims generally, Defendants intend to refer to only those claims that are subject to this Motion.

[4] The Third Amended Complaint's paragraph enumeration is confusing. For instance, Plaintiff skips over ¶¶ 114–115 in Count III, but includes those paragraph numbers in Count V after ¶ 121. Similarly, in Count V, Plaintiff skips over ¶¶ 118–121—those paragraph numbers can instead be found in the preceding Count IV.

females on par with their male counterparts." Plaintiff does not identify who the similarly situated females are, who their male counterparts are, what job responsibilities they hold, where they work, or their respective pay rates and pay structures. The only factual allegations relating to female employees expose that Plaintiff received "significantly" less than those employees. These bare bones allegations are then repeated in Counts IV and V. But Plaintiff's bare-boned recitation of the collective action standard without supporting facts falls far below the well-established pleading standards in the Eleventh Circuit. Accordingly, Plaintiff's EPA collective action claims—Counts III, IV, and V—should be dismissed.

Plaintiff's remaining claims fare no better. Plaintiff claims that she was a freelance reporter working for CBS TV "on and off" between 2011 and March 2018. She alleges that CBS TV favored males and younger, female employees, that she was harassed by third parties while reporting on news and sporting events, and that she was retaliated against for complaining about her work environment in violation of Title VII, the ADEA, and the FCRA. None of these claims can proceed because they are all untimely. Specifically, Plaintiff filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 9, 2019, more than 300 days (or 365 days for purposes of the FCRA) after the last date of any allegedly unlawful conduct. Despite having reviewed this timeliness argument several times in CBS TV's prior motions to dismiss, Plaintiff does not add any new timely, factual allegations in her Third Amended Complaint. Rather, Plaintiff responds to the timeliness argument by: (1) altering her thrice-pled allegation regarding when she received notice from the EEOC; (2) deleting references to the previously pled fact that she gave two weeks' notice—and thus triggered the limitations period for filing a charge with the EEOC—outside the limitations period; and (3) misrepresenting the EEOC's position and protocol during a lapse in appropriations, which is clearly set forth on the EEOC's website.[5] Even at this stage of the case, Plaintiff's attempt to alter/remove allegations previously pled and misrepresent a government agency's website should not be given credence. Accordingly, her Title VII, ADEA, and FCRA claims are time-barred and fail as a matter of law.

Plaintiff also does not allege a plausible claim for IIED. Because the Eleventh Circuit "strongly disfavors" IIED claims in the employment context, such claims are reserved for

---

[5] CBS TV's Request for Judicial Notice of the EEOC website that Plaintiff purports to represent in her Third Amended Complaint is located at (ECF No. 24).

situations where there is "relentless" physical and verbal abuse.  Plaintiff's allegations do not meet this rigorous standard, and therefore, her IIED claim also fails and should be dismissed.

Finally, Counts IV and V should be dismissed for the independent reason that Plaintiff has failed to allege a joint employment relationship.  Plaintiff alleges *no facts* to support a reasonable inference that either CBS Broadcasting Inc. (Count IV) or CBS Corporation (Count V) exerted control over Plaintiff's employment or otherwise jointly employed Plaintiff.  Instead, the only allegations relating to a joint employer relationship is Plaintiff's single, conclusory contention that Defendants "jointly employed Plaintiff."  *See* TAC ¶ 5.  Plaintiff does not even identify the New Defendants in the Third Amended Complaint other than naming them in the pleading's preamble. *See* TAC, General Allegations, ¶¶ 1–17.

In short, Plaintiff has now had three opportunities to amend her complaint, yet she still fails to provide factual allegations to support her claims for relief.  For this reason, as discussed in greater detail below, CBS respectfully requests that the Court grant its Motion to Dismiss and dismiss with prejudice Counts I, II, IV, V, VI, VII, VIII, IX, and X in their entirety, as well as the claim for a collective action in Count III, allow this case to proceed only on Plaintiff's individual claims under the EPA (Count III) and for negligent infliction of emotional distress (Count XI).

## II.    RELEVANT FACTS[6]

Plaintiff filed a Charge of Discrimination with the EEOC on January 9, 2019.  TAC ¶ 11. Plaintiff filed suit against CBS TV on May 26, 2020 and subsequently amended her complaint on June 19, 2020.  *See* Notice (ECF No. 1) ¶¶ 1–2.  CBS timely removed the action to this Court on July 21, 2020.  *See id.*   CBS filed its first Motion to Dismiss on August 4, 2020.  (ECF No. 8). On the day that her Opposition was due, and without conferring with CBS or seeking leave from the Court, Plaintiff filed her Second Amended Complaint (ECF No. 16) on August 18, 2020.  CBS TV filed its second Motion to Dismiss (ECF No. 25), which was fully briefed as of October 6, 2020. On October 16th, Plaintiff moved to amend.  *See* (ECF No. 37).  On October 20th, the Court granted Plaintiff's request and Plaintiff filed the Third Amended Complaint.  *See* (ECF Nos. 39, 40).  This Motion, which reiterates all of the arguments from CBS TV's second Motion to Dismiss (ECF No. 25), followed shortly thereafter on October 21, 2020.

---

[6] For purposes of this Motion only, Defendants accept Plaintiff's factual allegations as true.

Like the Second Amended Complaint, Plaintiff continues to allege that: (1) she was discriminated against on the basis of her age in violation of the ADEA and the FCRA (Counts I and VII); (2) she was discriminated against on the basis of her sex in violation of Title VII and the FCRA (Counts II and VIII); (3) she and "other similarly situated females" were not paid "on par with their male counterparts" in violation of the EPA (Counts III, IV, and V); (4) she was subjected to unlawful retaliation in violation of Title VII and the FCRA (Counts VI and IX); and (5) she suffered intentional and negligent infliction of emotional distress (Counts X and XI).

In support of her individual Title VII, ADEA, and FCRA claims, Plaintiff contends that the following allegedly discriminatory and retaliatory conduct occurred between April 2011 and January 2018:

- April 2011, June 2011, April 2012, later in 2012, and 2015: Plaintiff was denied a promotion in favor of a "younger, less experienced female," TAC ¶¶ 29–33.

- February 2016: Plaintiff was told that she could not have her own personal business while working for Defendant as a freelancer, while CBS permitted a male employee to maintain a personal business, *id.* ¶¶ 39–43.

- November 2016: CBS hired a younger, female freelance reporter who was "paid significantly more than Plaintiff was being paid as a freelance reporter," and CBS refused Plaintiff's request to have her pay match the rate of the younger freelance reporter, *id.* ¶ 45–46.

- May 2017: CBS told Plaintiff not to report work issues to her supervisors, *id.* ¶ 47.

- June 2017: Plaintiff inquired about a full-time position and was told that there was none, which was one way she alleges she was "retaliated against [] for voicing complaints," *id.* ¶¶ 48–50.

- July 2017: CBS hired a younger, female freelance reporter who "was paid significantly more than Plaintiff was, despite having the same exact position," *id.* ¶ 52.

- In or around September 2017: Plaintiff learned that she was paid less than a male employee who worked "the same shifts, the same hours, and delivered the same news," *id.* ¶¶ 65–66.

- September 9, 2017: Plaintiff was "harassed and groped by [a third party] individual," while covering Hurricane Irma, *id.* ¶ 69.

- November 11, 2017: while reporting on a sporting event, Plaintiff was "verbally, physically, and sexually assaulted by a fan," *id.* ¶ 70.
- December 30, 2017: Plaintiff complained that she did not feel safe working at an assigned location, *id.* ¶ 72.
- January 2018: Plaintiff allegedly reported incidents of assault to CBS, *id.* ¶ 73.
- January 2018: CBS hired a younger, female reporter who was paid "$33,000 more than Plaintiff," *id.* ¶ 53.

In support of her EPA claim, Plaintiff avers detailed factual allegations, relating *only* to her individual claim for relief, including that she "was paid at a lower rate than her [colleagues], who were similarly situated, including but not limited to, Hank Tester ("Mr. Tester"), David Sutta ("Mr. Sutta"), Ted Scouten ("Mr. Scouten"), and Cary Codd ("Mr. Codd")." *Id.* ¶ 63; *see also id.* ¶¶ 35–38 (Plaintiff was denied "other income opportunities" that Mr. Sutta enjoyed); *id.* ¶ 64 (Plaintiff was paid less than "another male per-diem employee, Mr. Tester"); *id.* ¶¶ 65–66 (Plaintiff was paid less than "another male per-diem employee, Mr. Mends").

In contrast, the allegations relating to her collective action EPA claim are conclusory and do no more than parrot the elements of the claim:

- "Male freelance workers performed the same and/or similar work under the same and/or similar working conditions as female freelance reporters, had the same and/or similar responsibilities, and used the same and/or similar system and equivalent equipment to perform their duties." *Id.* ¶ 60.
-  Plaintiff and the "EPA opt-in Class (a) are similarly situated in that (b) they were subjected to Defendant's common practice of sex-based (gender) discrimination in failing to compensate female freelance employees on par with their male counterparts." *Id.* ¶ 11.

### III.    LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to make a "short and plain statement of the claim showing that [he or she] is entitled to relief" in order to provide a defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007) (citation omitted). Noncompliance with this requirement subjects a pleading to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which should be granted where a plaintiff is unable to delineate "enough facts to state a claim to relief

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Twombly* at 570). The Supreme Court has held that a complaint that only makes "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" and that "do[es] not permit the court to infer more than the mere possibility of misconduct" is insufficient to overcome a motion to dismiss. *Id.* at 679. Since *Twombly* and *Iqbal*, courts in the Eleventh Circuit have held that on a motion to dismiss, the court is "not required to accept a plaintiff's legal conclusions" and should ignore "unwarranted deductions of facts." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing *Ashcroft*, 556 U.S. at 663). This holds true for putative collective action claims brought on behalf of allegedly similarly situated employees. *See, e.g.*, *Jimenez v. Fla. Supplement, LLC*, 2016 U.S. Dist. LEXIS 123968 (S.D. Fla. Sept. 13, 2016) (granting motion to dismiss FLSA claim); *St. Croix v. Genentech, Inc.*, 2012 US. Dist. LEXIS 86742, at *6 (M.D. Fla. June 22, 2012) (same); *Pickering v. Lorillard Tobacco Co.*, 2011 U.S. Dist. LEXIS 3647, at *4-5 (M.D. Ala. Jan. 13, 2011) (same).

## IV.   ARGUMENT

### A.   Plaintiff Fails to State an EPA Collective Action Claim.

Plaintiff purports to bring her EPA claim as a collective action covering a presumably large group of undefined women. And though she has twice amended her complaint, her attempt to expand this case beyond her individual claims should fail because Plaintiff has not pled any facts to support a broad, nationwide collective action.

The EPA provides:

> No employer having employees subject to any provisions of this section shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which [it] pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

29 U.S.C. § 206(d)(1). "An action [under the EPA] may be maintained . . . by any one or more employees for and in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). In other words, the EPA allows a plaintiff to bring a collective action claim on behalf of similarly situated female employees who were allegedly discriminated against in their pay. "[T]he Eleventh Circuit has directed that the employees should be 'similarly situated' with respect to their job requirements and with regard

to their pay provisions." *St. Croix*, 2012 US. Dist. LEXIS 86742, at *6 (citing *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1259 (11th Cir. 2008)).

As CBS TV argued in its first and second Motions to Dismiss, courts routinely dismiss § 216(b) collective action claims where a plaintiff fails to allege facts demonstrating she and other employees are similarly situated.  For example, in *St. Croix*, the court granted defendant's motion to dismiss where plaintiff provided only her job title—"which is not the same as a job description"—and where the complaint "provide[d] no description of the job duties (or even the job titles) of the alleged similarly situated employees.  Nor are there any allegations concerning the similarly situated employees' pay provisions."  2012 U.S. Dist. LEXIS 86742, at *6–7.  Likewise, in *Jimenez*, the court granted the defendant's motion to dismiss a FLSA collective action claim:

> Plaintiff alleges only that "there are other similarly situated current and former employees in the packaging department working, or previously working, for Defendant" and that these employees "in the packaging department performed similarly [sic] duties for Defendant and were subject to similar policies as to compensation." [] These allegations are conclusory and, therefore, insufficient to state a claim for a collective action under the FLSA.

*Jimenez*, 2016 U.S. Dist. LEXIS 123968, at *10–11; *see also Kemp v. Target Corp.*, 2013 U.S. Dist. LEXIS 133303, at *9–10 (N.D. Al. 2013) (dismissing EPA claim based on "formulaic," conclusory allegations, including that putative class members were "'similarly situated female employees who work as Team Leads' and 'all other female Team Leaders' who perform work requiring 'equal skill, effort, and responsibility' 'under similar working conditions' as male employees").

Despite having four bites at the apple to state a legally cognizable collective action claim, Plaintiff's allegations fall woefully short of this Circuit's notice pleading requirement.  Simply put, the Third Amended Complaint does not include any facts supporting the existence of a collective action.  Tellingly, nowhere in the Third Amended Complaint does Plaintiff even define the collective group of "similarly situated" employees: the Third Amended Complaint does not state the job titles of the "similarly situated females," let alone their job requirements, as required by the Eleventh Circuit.  Instead, the Third Amended Complaint leaves unanswered fundamental questions regarding the allegedly similarly situated employees: What are their job titles and job requirements?  What level of skill, effort, and responsibility was required to perform their work?

8

What are their pay provisions or compensation structures? Much like the allegations in *Jimenez* and *Kemp* that warranted dismissal, the only allegations here are conclusory and are "not entitled to the assumption of truth" under the *Iqbal* standard. *See Iqbal*, 556 U.S. at 679; TAC ¶ 60 (alleging that similarly situated employees work "in the same and/or similar working conditions, had the same and/or similar responsibilities, and used the same and/or similar system[s]"). Plaintiff's EPA collective claims in Counts III, IV, and V should be dismissed for this reason.

Notably, the only factual allegations in the Third Amended Complaint in support of Plaintiff's EPA claims are individual in nature, and stand in stark contrast to the utter lack of such allegations regarding the unidentified "similarly situated females" on whose behalf Plaintiff purports to bring a collective action. The Third Amended Complaint identifies Plaintiff's own alleged comparators and describes their respective pay rates. *See, e.g.*, TAC ¶ 63 ("Specifically, Plaintiff was paid at a lower rate than her [colleagues], who were similarly situated, including but not limited to, Hank Tester ("Mr. Tester"), David Sutta ("Mr. Sutta"), Ted Scouten ("Mr. Scouten"), and Cary Codd ("Mr. Codd")."). These allegations underscore what this case is actually about: Plaintiff's individual claim that she was paid less than her colleagues.

The Third Amended Complaint actually includes allegations that demonstrate why the EPA collective action could not be maintained. Plaintiff asserts repeatedly that other female employees—including female freelance reporters—were compensated at higher rates than her. *See* TAC ¶ 52 (female freelance reporter paid "significantly more than Plaintiff was, *despite having the same exact position*") (emphasis added); *id.* ¶ 53 (younger female freelance reporter paid $33,000 more than Plaintiff); *id.* ¶¶ 29–33 (alleging specific examples of "younger, less experienced female[s]" receiving higher pay and/or full-time positions over Plaintiff). The fact that Plaintiff acknowledges that other female reporters made more than her only highlights that Plaintiff's allegations comparing her own pay rate to that of male employees are not representative of the claims of other female employees. If anything, Plaintiff's allegations about higher paid female employees establish that she is *not* similarly situated to those individuals even though she purports to include them in her collective action.

Accordingly, Plaintiff's EPA collective action claims under Counts III, IV, and V fail and should be dismissed with prejudice.

**B.      Plaintiff's Title VII and ADEA Disparate Treatment and Retaliation Claims Are Time-Barred and Should Be Dismissed.**

To bring an action under Title VII and the ADEA in Florida, "a complainant must file a charge with the Florida Commission on Human Relations (FCHR) and the Equal Employment Opportunity Commission (EEOC) within 300 days of the alleged discrimination." *Dozier v. Coe*, 699 So. 2d 722, 723 (Fla. 1st DCA 1997) (citing 29 U.S.C. § 626(d)(2)). "[T]he timely filing of an EEOC complaint is a precondition to a Title VII action." *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1011 (11th Cir. 1982). "In a 'deferral state' such as Florida, an administrative charge is considered to be timely filed when it is brought within 300 days of the alleged unlawful employment practice." *Earls v. Keystone Auto. Indus.,* 2010 U.S. Dist. LEXIS 32531 *4-5 (S.D. Fla. Mar. 31, 2010) (quoting *Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262-63 (11th Cir. 2001). When an individual does not timely file an administrative charge, dismissal is appropriate. *See Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004); *Sheffield v. UPS*, 403 F. App'x 452, 454 (11th Cir. 2010). After receiving a Notice of Right to Sue from the EEOC, a plaintiff has 90 days to commence a civil action. *See Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1847 (2019).

1.      Plaintiff's Title VII and ADEA Disparate Treatment and Retaliation Claims are Untimely Because She Received Notice of Right to Sue over 90 Days before Filing Her Original Complaint.

With respect to the 90-day deadline, Plaintiff's Third Amended Complaint is a conspicuous attempt at amending to avoid this limitations period. In Plaintiff's Second Amended Complaint, Plaintiff unambiguously alleged that "[o]n or about February 25, 2020, [she] received a Notice of Determination from the EEOC." SAC ¶ 14. This allegation was presented, nearly word-for-word, in her original Complaint and her Amended Complaint. *See* Complaint (ECF No. 1-1) at 5 ¶ 10 ("On or about February 25, 2020, Plaintiff received a Notice of Right to Sue . . . ."); Amended Complaint (ECF No. 1-1) at 27 ¶ 10 ("On or about February 25, 2020, Plaintiff received a Notice of Right to Sue . . . ."). In the Third Amended Complaint, however, Plaintiff contradicts her three prior allegations in order to avoid the 90-day deadline, alleging for the first time that she did not receive the Notice of Determination on February 25th, but instead the EEOC "issued" the Notice on that date and it "was not mailed until February 26, 2020." *See* TAC ¶ 14.

Although an amended pleading supersedes the former pleading, courts in this District have nonetheless looked to prior pleadings where the amendment is a "transparent attempt . . . to avoid

10

a dispositive defense." *Fernandez v. Sch. Bd. of Miami-Dade Cty.*, 201 F. Supp. 3d 1353, 1361 n.1 (S.D. Fla. 2016) (accepting allegations as previously pled where plaintiff "manipulated the allegations in their pleadings to avoid a dispositive defense," twice alleging facts forming the basis for the dispositive defenses, but conspicuously removing them in a subsequent amendment); *see also Afr. Growth Corp. v. Republic of Angl.,* 2020 U.S. Dist. LEXIS 146986, at *44 n.13 (S.D. Fla. Aug. 13, 2020) ("While reconcilable 'small variations' between the complaints are acceptable, a plaintiff may not blatantly change the facts to respond to a defendant's motion to dismiss and while doing so contradict the facts set forth in the prior pleading." (citations omitted)).

This Court should do the same here.  Plaintiff has thrice repeated the same allegation, which has been identified in two prior motions to dismiss, and her updated allegation serves only to avoid the fact that Plaintiff filed her Complaint on May 26, 2020, 91 days after February 25, 2020. Accordingly, her Title VII and ADEA claims should be dismissed as they are untimely.  *See Scott v. Piedmont Columbus Reg'l Hosp.*, 806 F. App'x 954, 955 (11th Cir. 2020) ("If the EEOC issues a right-to-sue letter, the employee must bring suit in federal court within 90 days of the receipt of that letter.*");* *Martin v. Kmart Corp.*, 1995 U.S. Dist. LEXIS 3971, at *3 (M.D. Fla. Mar. 27, 1995) (granting motion to dismiss ADEA claim because "[u]nder Title VII, the requirement that a claimant file a civil action within ninety (90) days after receipt of a right to sue notice is akin to a statute of limitations").

2.   Plaintiff's Title VII and ADEA Disparate Treatment and Retaliation Claims are Also Untimely Because She Failed to Comply with the 300-Day Deadline to File Her Charge of Discrimination.

Moreover, Plaintiff's Title VII and ADEA claims are time-barred for the independent reason that Plaintiff failed to comply with the 300-day deadline to file her charge of discrimination with the EEOC.  Plaintiff filed her charge of discrimination with the EEOC on January 9, 2019, TAC ¶ 11, more than 300 days (or 365 days for purposes of the FCRA) after the last date of any allegedly unlawful conduct.

In determining when an allegedly unlawful employment practice occurred, courts consider the nature of the employment practice.  "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened,'" such that "each discrete discriminatory act starts a new clock for filing charges alleging that act." *AMTRAK v. Morgan*, 536 U.S. 101, 110, 113 (2002).  Discrete acts are acts that are easy to identify and include, but are not limited to, a failure to promote or denial of transfer.  *Id.* at 114.  Therefore, when determining when a discrete act occurred, and when the

limitations period began to run, the focus is on the discriminatory act, not on the future consequences of the discrimination.  *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1979).

As set forth above in Section II, *supra*, Plaintiff's failure to promote, discrimination, and retaliation claims rely on factual allegations that occurred between 2011 and January 2018.  Thus, even viewing the allegations in the light most favorable to Plaintiff, more than 300 days elapsed between the last date of the alleged discriminatory or retaliatory conduct and the date she filed her EEOC charge and her claim remains time-barred.  *See Bost*, 372 F.3d at 1238 (11th Cir. 2004) ("The ADEA requires that an individual exhaust available administrative remedies by filing a charge of unlawful discrimination with the EEOC before filing a lawsuit."); *Sheffield*, 403 F. App'x at 454 (11th Cir. 2010) ("It is firmly established that, in order to bring an action for age discrimination or retaliation under the ADEA, a plaintiff must first file a timely charge of discrimination with the EEOC or appropriate state or local agency").

Although CBS TV raised this exact argument in its first and second Motions to Dismiss, Plaintiff does not claim to have timely, factual claims regarding alleged conduct within the statute of limitations period.  Instead, she attempts to salvage her untimely Title VII and ADEA claims by misrepresenting EEOC protocol.  Specifically, Plaintiff alleges that the EEOC "tolled the filing deadline for Plaintiff's Charge as it did for all Charges" until February 12, 2019, due to a lapse in appropriations that occurred between December 22, 2018 to January 26, 2019.  *See* TAC ¶ 12.  This argument lacks merit for several reasons.  For one, Plaintiff filed her claim on January 9, 2019 (TAC ¶ 11)—in the middle of the alleged "lapse"—so Plaintiff's representation that the EEOC was not accepting new charges is vitiated by her own conduct.  Moreover, Plaintiff misstates the EEOC's posted protocol during the period in question.[7]  Contrary to Plaintiff's allegations, the EEOC web page makes clear that the shutdown did not affect deadlines set by law, such as the 300-day filing requirement.  The EEOC explicitly states, "Note: The EEOC accepted charges during this time to preserve individuals' rights under the law."  *See* Request for Judicial Notice

---

[7] Defendants concurrently request that the Court take judicial notice of the EEOC web page in which the EEOC discusses the impact of the lapse in appropriations referenced by Plaintiff, and a second web page where the EEOC states its contingency plans in the event of lapsed appropriations.  *See* Request for Judicial Notice (ECF No. 24), Exs. A, B.  Judicial notice of government agency websites is appropriate.  *See also Prince v. Fla., Dep't of Corr.*, 2017 U.S. Dist. LEXIS 222538, at *3 (M.D. Fla. June 27, 2017) ("The Court takes judicial notice of the intake questionnaire on the EEOC website") (citing *E.E.O.C. v. Summer Classics*, Inc., 41 F. Supp. 3d 1287, 1289 (N.D. Ala. 2011), *aff'd*, 471 F. App'x 868 (11th Cir. 2012)).

(ECF No. 24), Ex. A; *see also id.* (the 90-day period to file a lawsuit after receiving a notice to sue is "not affected by the lapse in appropriations . . . [because] [t]his deadline is set by law."). Moreover, the EEOC Shutdown Contingency Plan web page states, "We will accept charges that must be filed in order to preserve the rights of a claimant during a shutdown." *Id.*, Ex. B.

While Plaintiff alleges the filing deadline was tolled until February 12, 2019, that deadline related to EEOC filings for *open charges* only—the web page discusses that deadline under a bold heading titled "Open Charges of Discrimination." *Id.* Because Plaintiff misstates the EEOC's protocol, any contention that the protocol renders her claim timely should be rejected. *See* Fed. R. Evid. 201 (courts may judicially notice facts not subject to "reasonable dispute"). As such, there is no basis for equitable tolling based on Plaintiff's failure to file her charge. *See Abram v. Fulton Cnty. Gov't*, 598 F. App'x 672, 675 (11th Cir. 2015) ("Equitable tolling is not warranted where the plaintiff failed to exercise due diligence or where she failed to file her action in a timely fashion, despite knowing (or being in a position to know) that the limitations period was running.").[8]

The second argument CBS TV made in its prior Motions to Dismiss was that to the extent Plaintiff argues that she meets the 300-day deadline for her termination claim because she was constructively discharged and she worked a day or two into the limitations period, she is incorrect. Specifically, in her Complaint and Amended Complaint, Plaintiff alleged that she put in her two weeks' notice on or about March 2, 2018. *See* Compl. (ECF No. 1-1 at 4) ¶ 83; Amended Complaint ¶ 83 (same). In light of these express allegations, CBS TV argued that, under U.S. Supreme Court precedent, the limitations period began to run when Plaintiff put in her notice. *See* Motion to Dismiss (ECF No. 8) at 8 (citing *Green v. Brennan*, 136 S. Ct. 1769, 1782 (2016) ("If an employee gives 'two weeks' notice' . . . the limitations period begins to run on the day he tells his employer, not his last day at work."); *Flaherty v. Metromail Corp.*, 235 F.3d 133, 138 (2d Cir. 2000) ("We think that the date that [plaintiff's ADEA] claim accrued was the date when she gave

---

[8] *Even if* equitable tolling applied, all discrete acts that occurred prior to February 25, 2018—*i.e.*, 300 days before the beginning of the shutdown period—are still untimely. Therefore, with the exception of the date on which Plaintiff gave her two weeks' notice in early March, each discrete act discussed in this Section still occurred outside the limitations period.

definite notice of her intention to retire")[9]; *Green v. Serv. Mfg.*, 2017 U.S. Dist. LEXIS 123334 at *10, N. 4 (N.D. Ga. July 14, 2017) (granting motion to dismiss and explaining that limitations runs on the "date the plaintiff advises her employer of her resignation, not the date that her resignation becomes effective")).

In a startling and last ditch effort to avoid this argument that Plaintiff's claims are untimely, Plaintiff simply strikes from her Second Amended Complaint, and now Third Amended Complaint, the allegation that she gave two weeks' notice. Instead, she now summarily concludes that she was "constructively discharged" on March 16, 2018. *See* SAC ¶ 82; TAC ¶ 82. But Plaintiff cannot change allegations to defeat a motion to dismiss. While courts typically do not look beyond the face of the complaint on a motion to dismiss, courts in this Circuit have recognized that where, as here, a plaintiff blatantly changes factual allegations in the amended complaint in an attempt to avoid dismissal, the court may rely upon admissions made in an earlier complaint. *See, e.g.*, *Afr. Growth Corp.,* 2020 U.S. Dist. LEXIS 146986, at *44 n.13. The court's decision in *Fernandez, supra*, is again instructive. There, the court relied on the facts set forth in the original complaint and first amended complaints to analyze a motion to dismiss because, in the second amended complaint, the plaintiffs "manipulated the allegations in their pleadings to avoid a dispositive defense." *Fernandez*, 201 F. Supp. 3d at 1361 & n.1. As in *Fernandez*, Plaintiff attempts to avoid a dispositive timeliness defense by simply removing allegations from the Second Amended Complaint, including that she gave two weeks' notice. The Court should not countenance such gamesmanship and should consider the allegations as set forth in Plaintiff's earlier complaints: Plaintiff gave two weeks' notice before her last day of work, which was on or about March 16, 2018. Compl. (ECF No. 1-1) ¶ 83; Amended Complaint ¶ 83. Because that date was necessarily before March 15, 2018, Plaintiff did not timely file her EEOC charge.

Accordingly, all of the discrete acts in Plaintiff's Complaint occurred outside the limitations period and are, therefore, time-barred.

---

[9] While Defendants acknowledge that the *Flaherty* Court considered a district court's order on a motion for summary judgment rather than a motion to dismiss, the pronouncement cited nonetheless identifies the legal standard that courts apply to determine when a plaintiff's claim begins to accrue upon giving notice of resignation. Thus, the legal standard from *Flaherty* applies equally where allegations establish that Plaintiff gave notice of her resignation outside of the applicable limitations period.

### C.      Plaintiff's FCRA Disparate Treatment and Retaliation Claims Fail.

"As a prerequisite to bringing a civil action based upon an alleged violation of the FCRA, the claimant is required to file a complaint with the FCHR within 365 days of the alleged violation." *Woodham v. Blue Cross & Blue Shield of Fla., Inc.*, 829 So. 2d 891, 894 (Fla. 2002) (citing § 760.11(1), Fla. Stat). The timely filing of an administrative complaint with the FCHR is a condition precedent that must be pled when filing the civil action. *Maynard v. Taco Bell of Am., Inc.*, 117 So. 3d 1159, 1161 (Fla. 5th DCA 2013).

Here, Plaintiff does not—because she cannot—plead that she timely filed the administrative complaint under the FCRA. Plaintiff's FCRA claims are based on the same alleged conduct as her Title VII and ADEA claims, but the FCRA sets a 365-day limitations period. Because Plaintiff filed her charge on January 9, 2019, any act that occurred prior to January 9, 2018 is time barred. As discussed in Sections II and IV(C), *supra*, the discrete acts alleged in the Second Amended Complaint—failure to promote, discrimination, retaliation, and constructive discharge—all occurred prior to January 9, 2018. The remaining allegations are all conclusory and cannot support a claim for relief under the *Iqbal* standard. *See, e.g.*, TAC ¶ 61 ("Throughout Plaintiff's employment, Defendant paid male freelance employees at a higher rate than Plaintiff"); *id.* ¶ 81 ("Defendant[] continued to intimidate and retaliate against Plaintiff").

To the extent Plaintiff argues that her claim survives because she gave her two weeks' notice within the 365 days prior to the filing of her charge, she is again incorrect. "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009). Plaintiff's FCRA constructive discharge claim cannot be sustained as a matter of law because the entirety of her claim is based on two specific incidents of harassment, which occurred in September and November of 2017.[10] "[W]hile [Plaintiff's] termination occurred during the statutory period, [s]he [cannnot] use it as the lynchpin to pull in a time-barred act." *McCall v. Butler Health Sys./Butler Mem'l Hosp.*, 2013 U.S. Dist. LEXIS 170719, at *25 (W.D. Pa. Dec. 4, 2013) (quotations omitted) (granting motion to dismiss constructive discharge claim that was

---

[10] While Plaintiff alleges that there were "three separate incidents," TAC ¶ 77, the factual allegations set forth only two incidents: one in September 2017 and another in November 2017. *Id.* ¶¶ 69–70. Plaintiff's allegations leave no doubt that these "incidents and Defendants responses to each of them" establish the basis of her constructive discharge claim. *Id.* ¶ 77

based on time-barred discriminatory acts) (citing *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004)); *see also Matthews v. City of Gulfport*, 72 F. Supp. 2d 1328, 1338 (M.D. Fla. 1999) ("[W]here a plaintiff is unable to support a hostile work environment claim, she is also unable to support a claim of constructive discharge.").[11]  And, because Plaintiff's remaining allegations are conclusory, they cannot support a claim for relief under *Twombly*. *See, e.g.*, TAC ¶ 81 ("As time went on, Defendant's continued to intimidate and retaliate against Plaintiff for voicing her complaints."); *see also McCall*, 2013 U.S. Dist. LEXIS 170719 (disregarding "broad[] alleg[ations] that unlawful conduct continued up to the date of retirement [, since] Plaintiff alleges no specific facts" supporting a timely claim) (citing *Twombly*, 550 U.S. at 561–62).  Therefore, Plaintiff's constructive discharge claim is also untimely.

For these reasons, just as Plaintiff's claims under Title VII and the ADEA should be dismissed, so too should Plaintiff's identical claims under the FCRA.

### D.     Plaintiff Cannot Establish A Timely Hostile Work Environment Claim Under Title VII Or The FCRA.

To the extent Plaintiff alleges a hostile work environment claim, that claim, like her other individual claims, also should be dismissed.  A hostile work environment claim is comprised of a series of related, separate acts that "collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 113.  Because all related acts constitute a single employment practice, a hostile work environment claim can include non-timely acts "*provided that an act that contributed to the claim occurs within the filing period*." *Id.* at 117 (emphasis added).  If none of the separate acts occurred during the limitations period, the hostile work environment claim is time-barred.  *See Stewart v. Jones Util. and Contracting Co. Inc.*, 806 F. App'x 738, 741–42 (11th Cir. 2020) (affirming grant of motion to dismiss hostile work environment claims because "a Title VII plaintiff cannot recover for acts that occurred before the filing period"); *Chambless v. Louisiana-Pac. Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007) (upholding dismissal of hostile work environment claim where "untimely acts [] comprise[d] that claim").

---

[11] Although the *Matthews* Court considered the validity of a constructive discharge claim in the context of a motion for summary judgment, the court's holding that, as a matter of law, a constructive discharge claim cannot survive where the facts do not give rise to a hostile work environment claim applies equally here.  As discussed in Section IV(E), *infra*, Plaintiff's hostile work environment claim is untimely.

Courts in this Circuit routinely dismiss hostile work environment claims where a plaintiff fails to allege an act falling within the limitations period. *See Moore v. San Carlos Park Fire Protection & Rescue*, 2018 U.S. Dist. LEXIS 138727, at *9–10 (M.D. Fla. Aug. 16, 2018), *aff'd* 808 F. App'x 789 (11th Cir. 2020) (granting motion to dismiss where, "[d]espite [plaintiff's] argument otherwise, her claims are not timely under the continuation theory.  This is because she has not identified a single act falling within the limitations period."); *Restrepo v. Int'l Vapor Grp., Inc.*, 2017 U.S. Dist. LEXIS 82146, at *11–12 (S.D. Fla. May 26, 2017) (granting motion to dismiss hostile work environment claim "[b]ecause the [complaint] fails to allege that any discriminatory acts that occurred within 300 . . . days of . . . the date Plaintiff filed her EEOC charge").  Here, Plaintiff fails to state a viable hostile work environment claim because she has not alleged a single act of sexual harassment within the applicable time period under Title VII or the FCRA.  *See supra* Section II.  Even using the longer, 365-day period afforded to her under state law, Plaintiff would need to allege an act of harassment that occurred after January 9, 2018.  She does not.  *See id.*  Based on the allegations in the Second Amended Complaint, Plaintiff experienced two incidents of alleged sexual harassment by third parties, both in 2017.  *See TAC* ¶¶ 69–70.  Therefore, because Plaintiff has not identified a single, timely act occurring within the limitations period, her hostile work environment claims are time-barred and should be dismissed.

### E. Plaintiff Fails To Allege Facts Sufficient To Support Her Intentional Infliction Of Emotional Distress Claim.

Plaintiff's allegations do not support a claim for IIED.  To establish IIED under Florida law, the conduct must be "so outrageous in character, and extreme in degree as to go beyond the bounds of decency and be deemed utterly intolerable in a civilized society." *Valdes v. GAB Robins N. Am.*, Inc., 924 So. 2d 862, 866 (Fla. 3d DCA 2006).  Sufficiently outrageous conduct is rarely found in the employment setting and "only when the plaintiff is able to show that he was the victim of relentless physical, as well as verbal harassment." *Carroll v. Neumann*, 204 F. Supp. 2d 1344 (S.D. Fla. 2002) (internal citations and quotations omitted); *see also Scelta v. Delicatessen Support Servs., Inc.*, 57 F. Supp. 2d 1327, 1357 (M.D. Fla. 1999) ("In the employment context, Florida law has a strong disfavor for claims of intentional infliction of emotional distress.").  Moreover, the alleged resulting emotional distress must be "of such intensity or duration that no ordinary person should be expected to endure it." *Henderson v. Hovnanian Enterprises, Inc.*, 884 F. Supp. 499, 503 (S.D. Fla. 1995).

17

Whether a plaintiff experienced this type of distress is a question of law for the court to resolve, not a question of fact for the jury. *Roberts v. Amtrust Bank,* 2014 U.S. Dist. LEXIS 176128, at *6 (S.D. Fla. Dec. 22, 2014).  Courts in this Circuit routinely grant motions to dismiss IIED claims where the alleged conduct does not meet the rigorous standard used by courts to assess such claims.  For example, in *Noah v. Assor*, 379 F. Supp. 3d 1284 (S.D. Fla. 2019), a plaintiff asserted harassment and IIED claims, alleging she was subjected to "harassing conduct, such as sexual propositions, multiple physical trespasses, stalking related behavior, sexually lewd comments, and repeated expressions of jealousy." *Id.* at 1291.  While the court denied the motion to dismiss the quid pro quo and hostile environment harassment claims, the court granted the motion to dismiss the IIED claim, stating:

> Here, there is no doubt the alleged sexually harassing conduct, if true, is more than inappropriate and offensive. But even when taking all Plaintiff's allegations as true and considering them in the light most favorable to Plaintiff, under Florida law, the conduct alleged does not rise to one of the "***extremely rare circumstances***" where intentional infliction of emotional distress claims are upheld. The touchstone of these cases is the presence of relentless physical, as well as verbal, harassment.
>
> \*        \*        \*
>
> The fact is that courts dismiss intentional infliction of emotional distress claims alleging offensive and unwelcome sexual advances—even when those advances are coupled with unwanted offensive physical touching.

*Id.* (citations omitted) (emphasis added).

Plaintiff's allegations do not give rise to one of the "extremely rare circumstances" where an IIED claim should be upheld.  At best, Plaintiff's allegations establish that she was physically touched by a third party on two occasions, and that CBS retaliated against her for complaining about this conduct.  Courts have held that far more egregious conduct does not meet the standard of "outrageous" conduct under Florida law.  *See Hare v. Citrus World Inc.¸* 39 F. Supp. 2d 1365, 1369-70 (M.D. Fla. 1999) (granting motion to dismiss IIED claim where plaintiffs alleged defendant "on several occasions" would make obscene comments, touch and grab their waist, and suggestively rub their stomach and shoulders); *Blount v. Sterling Healthcare Grp., Inc.*, 934 F. Supp. 1365, 1371 (S.D. Fla. 1996) (granting motion to dismiss IIED claim where plaintiff alleged that defendant made verbal offensive comments and also rubbed plaintiff's breasts with his arm, hugged her tightly, and massaged the back of her head); *Howry v. Nisus, Inc.*, 910 F. Supp. 576, 580-81 (M.D. Fla. 1995) (granting motion to dismiss IIED claim where plaintiff alleged the defendant physically touched the plaintiff and himself in a suggestive manner, used obscene

18

language, and commented on sex organs); *compare Stockett v. Tolin*, 791 F. Supp. 1536, 1556 (S.D. Fla. 1992) (finding that defendant's repeated and relentless grabbing/touching of plaintiff's private body parts, repeated kissing of plaintiff, physical attacks, and repeated verbal licentiousness amounted to outrageous behavior).   Thus, Plaintiff's IIED claim should be dismissed.

> ### F.     Plaintiff Fails to Allege a Joint Employer Relationship.

Although not clearly asserted, Plaintiff appears to bring CBS Broadcasting, Inc. and CBS Corporation into the fray as alleged joint employers of Plaintiff (even though she did not work for these entities).  *See* TAC ¶ 18 (referring to "Defendant" in the singular and noting that "Plaintiff began working for Defendant on or about February 21, 2011 . . . .").  Her bare bones, conclusory allegations fail to allege sufficient facts to allow for the inference of such a relationship, however.

To determine whether a defendant is a joint employer on the FLSA, the Eleventh Circuit looks at eight factors:

> (1) the nature and degree or control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the power to determine the pay rates or the methods of payment of the workers; (4) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; (5) preparation of payroll and the payment of wages; (6) ownership of facilities where work occurred; (7) performance of a specialty job integral to the business; and (8) investment in equipment and facilities.

*Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.*, 494 F. App'x 940, 943 (11th Cir. 2012) (quoting *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1176 (11th Cir. 2012)).

Here, Plaintiff fails to allege a single fact directed to any of the aforementioned factors. Instead, Plaintiff levels a single conclusory assertion, in a single paragraph of the TAC, that Defendants "jointly employed Plaintiff."   *See* TAC ¶ 5.   At no point does Plaintiff offer any explanation as to how CBS Broadcasting, Inc. or CBS Corporation acted as Plaintiff's employer (they were not).  In fact, Plaintiff does not even identify either CBS Broadcasting, Inc. or CBS Corporation in the Third Amended Complaint other than naming them in the pleading's preamble. *See* TAC, General Allegations, ¶¶ 1–17.  The individual Counts against the New Defendants (Counts IV and V) offer no clarity and instead parrot the boilerplate allegations of Count III.  *See supra* Section IV(A); *compare* TAC ¶¶ 106–115 (Count III against CBS TV) *with* ¶¶ 110–121 (Count IV against CBS Broadcasting, Inc.) *and* ¶¶ 114–127 (Count V against CBS Corporation). The dearth of allegations to support a joint employer relationship warrant the dismissal of Counts

IV and V.  *See Amponsah v. Directv, Inc.*, No. 1:14-CV-3314-ODE, 2015 U.S. Dist. LEXIS 177530, at \*14–15 (N.D. Ga. Apr. 16, 2015) (dismissing joint employer claims where complaint provided "very little detail" regarding the elements of the joint employment relationship).

> **G.     The Claims Should Be Dismissed With Prejudice.**

The claims discussed herein should be dismissed with prejudice.  In the Eleventh Circuit, "[t]hree attempts at proper pleading are enough."  *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1057 (11th Cir. 2015).  Indeed, "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile."  *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The Eleventh Circuit has found that amendment is futile when an amended complaint is still subject to dismissal as a matter of law.  *Hall*, 367 F.3d at 1263.

Plaintiff has now pled her claims *four* separate times, but she has not added any new factual allegations that can make her claims timely or otherwise sufficient.  Instead, she simply alters or removes facts to manipulate the allegations to avoid applicable limitations periods.  As to her IIED claims, she fails to add any new factual allegations—and she has had three opportunities to do so—that make the alleged conduct "outrageous," as required under the law.  As such, further amendment would be futile.  *See Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1163 (11th Cir. 2019) (affirming dismissal of claims with prejudice where district court "compared Plaintiffs' Complaint with their first amended complaint (which had been dismissed as a matter of law) and found the claims Plaintiffs asserted in their operative complaint 'told essentially the same story.'"); *Williams v. Wal-Mart Stores, Inc.*, 2019 U.S. Dist. LEXIS 176828, at \*25-26 (S.D. Fla. Oct. 10, 2019) (dismissing complaint with prejudice where plaintiff had "multiple opportunities to amend her complaint").  For these reasons, Plaintiff's claims should be dismissed with prejudice.

> **V.     CONCLUSION**

For all of the reasons set forth above, Defendants respectfully requests that this Court dismiss, with prejudice, Counts I, II, IV, V, VI, VII, VIII, IX, and X in their entirety, as well as the claim for a collective action in Count III, allow this case to proceed only on Plaintiff's individual claims under the EPA (Count III) and for negligent infliction of emotional distress (Count XI), and grant such other and further relief as the Court deems just and proper.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

Respectfully submitted this 21st day of October, 2020.

BAKER & MCKENZIE LLP
*Attorneys for CBS Television Stations, Inc.*
Sabadell Financial Center
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone: (305) 789-8900
Facsimile:  (305) 789-8953

By:  /s/ *William V. Roppolo*
William V. Roppolo, Esq.
Florida Bar No. 182850
william.roppolo@bakermckenzie.com

Benjamin C. Davis, Esq.
Florida Bar No. 110734
benjamin.davis@bakermckenzie.com

Blair J. Robinson (*Pro Hac Vice*)
Paul C. Evans (*Pro Hac Vice*)
BAKER & MCKENZIE LLP
452 Fifth Avenue
New York, NY 10018
Telephone: (212) 626-4100
Facsimile: (212) 310-1632
blair.robinson@bakermckenzie.com
paul.evans@bakermckenzie.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 21, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ *William V. Roppolo*
     William V. Roppolo, Esq.

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900

# SERVICE LIST

**SILVA HARAPETI,**

**v.**

**CBS TELEVISION STATIONS, INC.**

**CASE NO. 20-22995-CIV-Williams**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Peter M. Hoogerwoerd, Esq.
REMER & GEORGES-PIERRE, PLLC
44 West Flagler Street
Suite 2200
Miami, Florida 33130
pmh@rgpattorneys.com
Phone: (305) 416-5000
Facsimile: (305) 416-5005
*Attorneys for Plaintiff Silva Harapeti*

Baker & McKenzie LLP, 1111 Brickell Avenue, Suite 1700, Miami, Florida 33131 – (305) 789-8900