**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-22995-CIV-WILLIAMS

SILVA HARAPETI,

      Plaintiff,

vs.

CBS TELEVISION STATIONS INC.,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the Court on Defendants CBS Television Stations Inc., CBS Broadcasting, Inc. and CBS Corporation's Motion to Dismiss Plaintiff's Third Amended Complaint (ECF No. 43). This Motion was referred to the undersigned pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Kathleen M. Williams, United States District Judge for a report and recommendation (ECF No. 68). Having reviewed the Motion to Dismiss, Plaintiff's Response (ECF No. 50), Defendants' Reply (ECF No. 51) and being otherwise duly advised on the matter, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED, in part**.

## I.    BACKGROUND

This action was filed by Harapeti individually and on behalf of other similarly situated individuals against Defendants CBS Television Stations, Inc. ("CBS Television"), CBS Broadcasting, Inc. ("CBS Broadcasting") and CBS Corporation ("CBS Corporation") (collectively

"CBS" or "Defendants")[1] for Defendants' alleged violation of the Equal Pay Act 1936, 29 U.S.C.

§ 206, et seq. ("EPA"); unlawful discrimination and retaliation predicated on Plaintiff's sex

(gender) and age in violation of Title VII of the Civil Rights Act of 1964 as amended ("Title VII"),

the Age Discrimination in Employment Act ("ADEA"), and the Florida Civil Rights Act of 1992,

Florida Statutes, Chapter 760, et seq. ("FCRA"); and for intentional and negligent infliction of

emotional distress (ECF No. 40). While initially filed in state court, this matter was removed to

the Southern District of Florida on July 21, 2020 (ECF No. 1).

As stated in the Third Amended Complaint, Plaintiff was jointly employed by Defendants

as a freelance reporter and paid on a per-diem basis. Plaintiff alleges that each time she was hired,

she was assured that she would be considered for a full-time reporter position when an opening

became available (ECF No. 40 at ¶ 20). According to Plaintiff, despite various opportunities for

full-time positions becoming available, she was never offered one because of Defendants'

"systematic practice of giving full-time employment contracts, top news story assignments, and

increased salaries to both males and younger female employees" (*id.* at ¶ 23). In her Third

Amended Complaint, Plaintiff identifies several full-time positions that became available during

her employment that were offered to "younger, less experienced" females, despite "inquir[ing]

about the position[s] on multiple occasions" and despite assurances that she would be considered

when an opening became available (*id.* at ¶¶ 28-32). Plaintiff also alleges that "male employees

were given more resources and greater choice of story selection, along with other income

opportunities" (*id.* at ¶ 34). For example, Plaintiff states that she was told she "could not have her

own personal business and work for Defendant as a freelancer simultaneously," while male

employees "were never questioned regarding their own side businesses" (*id.* at ¶¶ 39-42). Plaintiff

---

[1] This action was originally brought against only CBS Television, but the complaint was amended on October 20, 2020, to include the other two Defendants.

further claims that "female freelance employees got paid at a lower rate than their male counterparts for equal work" and "Defendant has consistently hired men at considerably higher rates than women" (*id.* at ¶¶ 57-58).

In addition, Plaintiff alleges that she was intimidated and retaliated against for voicing complaints to management. She states that in May 2017, Defendants had a meeting with her "just to tell her not to report issues she was having at work to Human Resources, the General Manager, or to any of her superiors" (*id.* at ¶ 47). Plaintiff also describes being "assaulted, both verbally and physically, by individuals whom would physically impact her in the area she was placed to cover" and indicates that after reporting incidents where she had been assaulted, she was told by the Vice President of News, "this is not a whining session" and "[t]he fact is that people are shitty people and we have to deal with it. We all create our own perception and reality around what happens to us" (*id.* at ¶¶ 72-73). Plaintiff further claims that "Defendant failed to take any corrective action to Plaintiff's complaints about harassment and discrimination instead condoning and fostering an environment where sexual assault and abusive behavior was not only acceptable, but it was the norm" (*id.* at ¶ 47).  Further, Plaintiff claims Defendants retaliated against her, and "after years of continuously being subjected to a hostile work environment and continuously being passed over for full-time positions to younger female employees, having male counterparts continuously given preferential treatment and higher pay, and continuously enduring verbal and physical assaults while on the job with not a single corrective action taken, and after Plaintiff continuously complained about all of this, on or about March 16, 2018, Defendant constructively discharged Plaintiff" (*id.* at ¶ 82).

In her Third Amended Complaint, Plaintiff raises eleven counts: age discrimination in violation of the Age Discrimination in Employment Act (Count I); sex discrimination in violation

of Title VII of the Civil Rights Act of 1964 as amended (Count II); discrimination in compensation against Defendants CBS Television Stations, Inc., CBS Broadcasting Inc., and CBS Corporation under the Equal Pay Act of 1963, 29 U.S.C. § 206, *et seq.* (Counts III-V); retaliation in violation of Title VII (Count VI); age discrimination in violation of the Florida Civil Rights Act of 1992, Florida Statutes, Chapter 760, *et seq.* (Count VII); sex discrimination in violation of the FCRA (Count VIII); retaliation in violation of the FCRA (Count IX); intentional infliction of emotional distress (Count X); and negligent infliction of emotional distress (Count XI). In addition to bringing EPA claims on behalf of herself and other similarly situated, Plaintiff also sought conditional certification of a collective action under the Equal Pay Act of 1963 (ECF No. 38).

Defendants seek dismissal with prejudice of Counts I, II, IV, V, VI, VII, VIII, IX, and X, in their entirety, as well as the claim for a collective action in Count III. Relevant to the instant Motion, the undersigned has since issued a report and recommendation concluding Plaintiff's request for conditional certification of a collective action should be denied (ECF No. 63), which was adopted (ECF No. 64).

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court's consideration is limited to the allegations in the complaint. *See GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). All factual allegations are accepted as true and all reasonable inferences are drawn in the Plaintiff's favor. *See Speaker v. U.S. Dep't. of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998). Although a plaintiff need not provide "detailed factual

4

allegations," a complaint must provide "more than labels and conclusions." *Twombly*, 550 U.S. at

555. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* Rule 12(b)(6)

does not allow dismissal of a complaint because the court anticipates "actual proof of those facts

is improbable" but the "[f]actual allegations must be enough to raise a right to relief above the

speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289 (11th Cir. 2007) (quoting *Twombly*,

550 U.S. at 545).

### III.     ANALYSIS

Defendants make the following arguments in their motion to dismiss: (1) Plaintiff fails to

state an EPA collective action claim; (2) Plaintiff's Title VII and ADEA disparate treatment and

retaliation claims are time-barred and should be dismissed; (3) Plaintiff's FCRA disparate

treatment and retaliation claims should fail; (4) Plaintiff cannot establish a timely hostile work

environment claim under Title VII or the FCRA; (5) Plaintiff fails to allege facts sufficient to

support her intentional infliction of emotional distress claim; and (6) Plaintiff fails to allege a joint

employer relationship. Based on these arguments, Defendants seek dismissal with prejudice of

Counts I, II, IV, V, VI, VII, VIII, IX, and X, in their entirety, as well as the claim for a collective

action in Count III. Defendants do not seek dismissal of Plaintiff's individual claims under Count

III or claim for negligent infliction of emotional distress under Count XI.

In Response, Plaintiff avers that (1) she has established a *prima facie* case under the EPA;

(2) her collective action claims have been sufficiently pled; (3) her Federal Discrimination claims

are not time barred, and such an argument regarding status of limitations is an affirmative defense

and inappropriate for a Motion to Dismiss; (4) the discrimination against her was a continuing

action; and (5) her infliction of emotional distress claims are adequately pled.

### A.     EPA Collective Action

In Counts III, IV, and V, Plaintiff seeks—on behalf of herself and other similarly situated individuals—back-pay damages, an additional amount as liquidated damages equal to the amount of back pay awarded, costs, and reasonable attorney's fees for Defendants' alleged violations of the EPA. Defendants argue that "Plaintiff's attempt to expand this case beyond her individual claims should fail because Plaintiff has not pled any facts to support a broad, nationwide collective action" (ECF No. 43). In response, Plaintiff asserts that this argument is premature and that she has filed her motion for a conditional certification of the EPA collective action, "[t]hus Defendant's arguments are properly framed in response to that specific motion" (ECF No. 50). As addressed above, the undersigned issued a report and recommendation on Plaintiff's motion for conditional certification of collective action under the EPA, recommending that the motion be denied based on Plaintiff's failure to show the existence of other similarly situated employees who desired to opt-in (ECF No. 63). No objections were filed, and following a review of the report and recommendation, the record, and applicable case law, the Court affirmed and adopted the undersigned's findings, denying Plaintiff's motion (ECF No. 64). The deficiencies in Plaintiff's pleading with respective to a collective action similarly warrant dismissal, and it is recommended that Plaintiff's collective action claims under the EPA (Counts III-V) be dismissed.

### B.     Title VII and ADEA Claims

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e. The ADEA prohibits employment discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C § 623(a)(1).

Prior to filing suit for alleged violations of Title VII or the ADEA, a plaintiff must first exhaust her administrative remedies by filing a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *See E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002) (citing 42 U.S.C. § 2000e-5; *Wilderson v. Grinnell Corp.*, 270 F.2d 1314, 1317 (11th Cir. 2001)); *see also Sheffield v. United Parcel Serv., Inc.*, 403 F. App'x 452, 454 (11th Cir. 2010). "For a charge to be timely in a deferral state such as Florida, it must be filed within 300 days of the last discriminatory act." *Joe's Stone Crabs, Inc.*, 296 F.3d at 1271 (citing 42 U.S.C. § 2000e-5(e)(1)). "[O]nly those claims arising within 300 days prior to the filing of the EEOC's discrimination charge are actionable." *Id.* (citations omitted). Upon exhaustion of administrative remedies, actions under Title VII and the ADEA must be filed "within 90 days of the claimant's receipt of a right-to-sue letter from the EEOC." *Williams v. Georgia Dep't of Def. Nat. Guard Headquarters*, 147 F. App'x 134, 136 (11th Cir. 2005) (internal citation omitted); *see also Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir. 2000) ("Title VII and ADEA actions may not be brought more than 90 days after a complainant has adequate notice that the EEOC has dismissed the Charge.").

First, Defendants aver that Plaintiff's Title VII and ADEA claims are untimely because Plaintiff received notice of the right to sue more than 90 days before filing her initial complaint on May 26, 2020. Defendants rely on statements contained in Plaintiff's prior three versions of her complaint that Plaintiff received a Notice of Right to Sue on or about February 25, 2020 (ECF Nos. 1-1 at 5 ¶ 10 and 27 ¶ 10; 16 at ¶ 14). If true, this would mean the Complaint was filed 91 days after receipt of a right-to-sue letter from the EEOC and would be subject to dismissal. *See Norris v. Fla. Dep't of Health & Rehab. Servs.*, 730 F.2d 682, 682 (11th Cir. 1984) (granting summary judgement in favor of defendant  because the complaint was filed 91 days after plaintiff

received her right to sue from the EEOC); *L. v. Hercules, Inc.*, 713 F.2d 691, 692 (11th Cir. 1983) (same); *Brown v. Consol. Freightway*, 152 F.R.D. 656, 658 (N.D. Ga. 1993) ("It is the equally well established authority of this circuit that federal complaints filed even one day after the expiration of this 90 day period are untimely and, accordingly, subject to dismissal . . .").

However, the Third Amended Complaint does not include a statement that Plaintiff received a Notice of Right to Sue on or about February 25, 2020. Instead, it is alleged that "[o]n or about February 25th, 2020, the EEOC issued a Notice of Determination . . . which was not mailed until February 26, 2020" (ECF No. 40 at ¶ 14). Neither a copy of this Notice, nor any evidence as to when it was received, is attached to the Complaint. Thus, the Court does not have the benefit of evidence to determine when the Notice was actually issued and received, as the courts in *Norris*, *Hercules, Inc.*, and *Brown* did when they dismissed plaintiff's claims as untimely on summary judgement.

Defendants aver that the Court should look to the prior pleadings because this amendment is a "transparent attempt . . . to avoid a dispositive defense" (ECF No. 43 at 13) (citing *Fernandez v. Sch. Bd. of Miami-Dade Cty.*, 201 F. Supp. 3d 1353, 1361 n.1 (S.D. Fla. 2016)). Notwithstanding the revision in pleading, Plaintiff's prior versions of the complaint similarly modified the February 25, 2020 receipt date with "on or about" (ECF Nos. 1-1 at 5 ¶ 10 and 27 ¶ 10; 16 at ¶ 14). This does not rise to one of those "rare circumstances" where a court should consider prior pleadings. *Fernandez*, 201 F. Supp. 3d at 1361 n.1. Because the discrepancy between the allegations of the Third Amended Complaint and the previous complaints may yet be resolved in Plaintiff's favor with evidence not before the Court at this posture, the argument is more appropriate for summary judgment. Thus, the Court recommends the Defendant's Motion to Dismiss be denied on this ground. *See Schere v. Sch. Bd. of Miami-Dade Cty., Fla.*, No. 06-22653-CIV, 2007 WL 9703569,

at *1 (S.D. Fla. May 8, 2007) (refusing to dismiss Title VII claims where it was not clear when plaintiff received the EEOC's right to sue letter, explaining that dismissal "is only appropriate where the time bar is apparent from the face of the complaint").

Defendants next aver that Plaintiff's Title VII and ADEA claims are untimely because she failed to comply with the 300-day deadline to file her charge of discrimination. It is undisputed that Plaintiff filed her charge of discrimination with the EEOC on January 9, 2019 (ECF No. 40 at ¶ 11). As the Third Amended Complaint explains, the EEOC was shut down due to a lapse in appropriations from December 22, 2018 to January 26, 2019, and the EEOC tolled the filing deadline for charges of discrimination during the government shutdown through February 12, 2019. However, Defendants argue that only deadlines for *open* charges were tolled, and ask that the Court take judicial notice of certain pages from the EEOC website in which the EEOC discusses the impact of the lapse in appropriations referenced by Plaintiff and states its contingency plans in the event of lapsed appropriations. Plaintiff neither disputes the accuracy of the EEOC website, nor does she dispute that the Court should take judicial notice. Thus, it is recommended that the Court take Judicial notice of the EEOC website because it is in the public record, is "capable of accurate and ready determination," and "cannot reasonably be questioned." *Patel v. Specialized Loan Servicing LLC*, 183 F. Supp. 3d 1238, 1241 (S.D. Fla. 2016), *aff'd*, 904 F.3d 1314 (11th Cir. 2018).

Even having taken judicial notice of the website, it is not apparent from the face of the Third Amended Complaint that Plaintiff's claims are untimely. Defendants aver that the Plaintiff's failure to promote, discrimination, and retaliation claims all rely on factual allegations that occurred between 2011 and January 2018. However, the Third Amended Complaint states that Plaintiff was not constructively discharged until March 16, 2018. The Third Amended Complaint

further alleges that she suffered from discrimination, being passed over for full-time positions and having male counterparts continuously given preferential treatment and higher pay *throughout* her employment (*see e.g.* ECF No. 40 at ¶¶ 22, 27, 58, 61, 27) (emphasis added). Taking the allegations within the Third Amended Complaint as true, Plaintiff continued to be paid less that her male and younger female counterparts through her last day of employment. Courts have previously found that each paycheck for a lesser amount than those similarly situated is an actionable wrong, and thus Plaintiff has alleged acts occurring within 300 days of her EEOC charge. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002) (citing *Bazemore v. Friday*, 478 U.S. 385 (1986) (*per curiam*)) ("although the salary discrimination began prior to the date that the act was actionable under Title VII, "[e]ach week's paycheck that deliver[ed] less to a black than to a similarly situated white is a wrong actionable under Title VII"). Furthermore, those factual allegations from January 2018 are actionable if they occurred after January 8th, as are those allegations which are said to have occurred after January of 2018, such as not getting assigned to cover the Parkland High School shooting in February 2018 in retaliation for lodging complaints (ECF No. 40 ¶ at 78).

Defendants further proffer that Plaintiff's initial and amended complaint both alleged that she put in her two-weeks' notice on or about March 2, 2018 (ECF No. 1-1 at 4 ¶ 83, 13 ¶ 83), which if true, is the date from which the limitations period began to run. *See Green v. Brennan*, 136 S. Ct. 1769, 1782 (2016) ("If an employee gives 'two weeks' notice' . . . the limitations period begins to run on the day he tells his employer, not his last day at work."). Based on this March 2, 2018 date, Plaintiff's EEOC filing would have occurred 313 days after Plaintiff gave her two-weeks' notice. However, neither the Second nor Third Amended Complaint states that Plaintiff gave her two-weeks' notice on March 2, 2018. Rather, it is claimed that "on or about March 16,

2018, Defendant constructively discharged Plaintiff" (ECF Nos. 16 ¶ 82; 40 at ¶ 82). If this were

the case, and Plaintiff did not put in her two weeks' notice, then her January 9, 2019 EEOC filing

is timely. Defendants again ask the Court to look back to the prior pleadings, but the undersigned

does not find that the Third Amended Complaint "directly contradicts" the prior complaints, nor

does the court find there to be "rare circumstances" that would warrant consideration of the prior

pleadings. *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, No. 16-20212-CIV, 2017 WL

4621159, at *3 (S.D. Fla. Aug. 28, 2017) (citing *Fernandez*, 201 F. Supp. 3d at 1361, n.1) (refusing

to disregard changes to an amended complaint where the versions of the complaints did not directly

contradict one another). As such, the Court recommends the Defendants' Motion to Dismiss be

denied on this ground. To the extent that there is evidence that Plaintiff did indeed give two weeks'

notice on March 2, 2018, Defendants may again raise this argument on summary judgment.

### C.    FCRA Claims

Defendants argue that Plaintiff's FCRA Desperate Treatment and Retaliation claims fail

for the same reasons as her Title VII and ADEA claims—they are untimely. "As a prerequisite to

bringing a civil action based upon an alleged violation of the FCRA, the claimant is required to

file a complaint with the [Florida Commission on Human Relations or the EEOC] within 365 days

of the alleged violation." *Woodham v. Blue Cross & Blue Shield of Fla., Inc.*, 829 So. 2d 891, 894

(Fla. 2002) (citing § 760.11(1), Fla. Stat).[2] Because Plaintiff filed her charge with the EEOC on

January 9, 2019, Defendants aver that any act occurring prior to January 9, 2018 is time barred.

Again, Defendants highlight discrete instances alleged within the Third Amended Complaint,

ignoring that these are just examples given by Plaintiff to demonstrate the alleged hostile work

environment that continued through March 2018. If Plaintiff is able to show that a hostile work

---

[2] A complaint filed with the EEOC can act as a dual filing with the Florida Commission on Human Relations, pursuant to the two commissions' workshare agreement. *Woodham*, 829 So. 2d at 894.

environment existed, than "[i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (holding that a hostile work environment claim is composed of a series of distinct acts that, together "constitute one unlawful employment practice"; and because of the collective nature of the cause of action, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability"). Whether the trier of fact ultimately determines that a hostile work environment existed, or determines that Plaintiff only suffered from discrete acts,[3] Plaintiff has alleged sufficient wrongs occurring after January 8, 2018 to survive a motion to dismiss.

Defendants attack these post-January 8, 2018 acts as being too conclusory to support a claim for relief. The Court disagrees. For example, the Third Amended Complaint alleges that in January 2018, a younger female reporter was hired and paid $33,000.00 more than Plaintiff (ECF No. 20 at ¶ 53); that Plaintiff was paid less than her male counterparts throughout her employment, including specifically identified male co-works who were alleged to do substantially similar work that required the same skill, effort, and responsibility (*id*. at ¶¶ 62-64); and that in February 2018, Plaintiff was not assigned to cover the Parkland High School shooting in retaliation for her lodging a complaint with management (*id*. at ¶ 78).  The Court finds these allegations, in addition to claims that Plaintiff received pay checks that compensated her less than her male and younger female counterparts through March 2018 as addressed above, sufficient to survive Defendant's Motion to Dismiss on this basis.

---

[3] Courts have previously held that whether a plaintiff is subject to a hostile work environment is a question of fact and thus inappropriate to determine on a motion to dismiss. *See Johnson v. Scotty's, Inc*., 119 F. Supp. 2d 1276, 1288 (M.D. Fla. 2000).

Defendants further contend that Plaintiff's "FCRA constructive discharge claim cannot be sustained as a matter of law because the entirety of her claim is based on two specific incidents of harassment, which occurred in September and November of 2017" (ECF No. 43 at 17). However, this assertion is too conclusory to support dismissal. Plaintiff's Third Amended Complaint incorporates into Plaintiff's FCRA claims numerous allegations of discrimination and retaliation, many of which are unrelated to the two incidents of harassment. Because it is not apparent from the face of the Complaint that all allegations of discrimination and retaliation occurred more than 365 days before Plaintiff filed her charge on January 9, 2018, the undersigned recommends that dismissal be denied on this ground. *See Schere*, 2007 WL 9703569, at *1.

### D.      Intentional Infliction of Emotional Distress Claim

Defendants claim that Plaintiff's allegations do not support a claim for Intentional Infliction of Emotional Distress. The Third Amended Complaint, as Plaintiff explains in response, contains allegations of two instances of assault by third parties while on the job. In September 2017, Plaintiff alleges that she was "harassed and groped by an individual" while covering Hurricane Irma (ECF No. 40 at ¶ 69). Plaintiff claims to have reported the harassment to management but was told in response "not to put drunks on television" (*id*.). In November 2017, Plaintiff alleges she was "verbally, physically, and sexually assaulted by a fan" while covering a college football game (*id*. at ¶ 70). Plaintiff avers that she was forced to report live after the incident, despite protests about the dangerous situation, and was further sent to cover yet another game just one month later despite her complaints (*id*. at ¶¶ 70-72).

To state a valid claim for intentional infliction of emotional distress under Florida law, the plaintiff must allege that: "(1) the wrongdoer's conduct was intentional or reckless . . . ; (2) the conduct was outrageous . . . ; (3) the conduct caused emotional distress; and (4) the emotional

distress was severe." *Casado v. Miami-Dade Cty.*, 340 F. Supp. 3d 1320, 1332 (S.D. Fla. 2018) (citing *Williams v. City of Minneola*, 619 So.2d 983, 986 (Fla. 5th DCA 1993)). "Whether conduct is sufficiently 'outrageous' to state a claim for [intentional infliction of emotional distress] is a question of law for the Court to decide." *Garcia v. Carnival Corp.*, 838 F.Supp.2d 1334, 1339 (S.D. Fla. 2012) (citation omitted).

"While there is no exhaustive or concrete list of what constitutes outrageous conduct, Florida common law has evolved an extremely high standard." *Id.* (citation omitted). Generally, liability for intentional infliction is found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. (citing *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 279 (Fla. 1985)). This conduct necessarily includes "relentless physical, as well as verbal, harassment." *Carroll v. Neumann*, 204 F. Supp. 2d 1344, 1350 (S.D. Fla. 2002) (citation omitted). For example, in *Garcia*, the court found allegations that "crew members kicked and punched [the plaintiff], threw her to the ground multiple times, handcuffed her in a 'harmful manner,' dragged her across the floor while she was handcuffed, and then confined her to her cabin . . . and preventing her from otherwise leaving her cabin until the following day" did not meet the extremely high standard for intentional infliction of emotional distress. 838 F. Supp. 2d at 1339. Similarly, in *Noah v. Assor*, 379 F. Supp. 3d 1284, 1300 (S.D. Fla. 2019), the court dismissed plaintiff's intentional infliction of emotional distress claim, but maintained her sexual harassment based sex discrimination claims, noting that while "there is no doubt the alleged sexually harassing conduct, if true, is more than inappropriate and offensive . . . the conduct alleged does not rise to one of the extremely rare circumstances where intentional infliction of emotional distress claims are upheld." *Id*. (internal citations omitted). In dismissing

14

the claim, the *Noah* court found it critical that plaintiff did "not allege [d]efendant physically touched or harmed her (inappropriately or otherwise), or threatened to touch or harm her." *Id.*

Here too, Plaintiff does not allege that Defendants, or anyone under Defendants' control, physically touched or harmed her. Again, the Third Amended Complaint contains two allegations of physical harm that were perpetrated by unidentified third parties. Nor does the Third Amended Complaint contain allegations of verbal harassment that would be considered outrageous or extreme. The only verbal harassment alleged was that, in response to her complaints regarding the incidents of physical harassment, she was told "this is not a whining session," that these things "just happen to her," that "people are shitty people and we have to deal with it . . ." and was asked whether she was refusing to do her job (ECF No. 40 at ¶¶ 70, 73, 74). Because Plaintiff does not allege relentless physical harassment by Defendants, or outrageous and relentless verbal harassment, the undersigned finds that Plaintiff's allegations do not meet the "extremely high standard" to state an intentional infliction of emotional distress claim under Florida law. *Noah*, 379 F. Supp. 3d at 1300; *Casado*, 340 F.Supp.3d at 1320. Thus, the undersigned recommends that Count X for Intentional Infliction of Emotional Distress be dismissed.

### E.    Joint Employer Relationship

Lastly, Defendants argue that the Third Amended Complaint lacks sufficient facts to allow for the inference that Plaintiff was jointly employed by Defendants.  Based on this deficiency, Defendants seek dismissal of Counts IV and V. While the Court has already recommended that these counts be dismissed on other grounds, dismissal based on the allegations of a joint employer relationship is inappropriate at this stage.

The inquiry into joint employment is "flexible and fact-intensive." *Aguilar v. United Floor Crew, Inc.*, No. 14-CIV-61605, 2014 WL 6751663, at *4 (S.D. Fla. Dec. 1, 2014). Courts consider

several factors in determining whether a joint employment relationship exists: "(1) the nature and degree of the putative employer's control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the right, directly or indirectly, to hire, fire or modify the worker's employment conditions; (4) the power to determine the worker's pay rates or methods of payment; (5) the preparation of payroll and payment of worker's wages; (6) the ownership of the facilities where the work occurs; (7) whether the worker performed a line job integral to the end product; and (8) the relative investment in equipment and facilities." *Id.* (citing *Quezada v. Sante Shipping Lines, Inc.*, 2013 WL 1334516, at *7 (S.D. Fla. Mar.29, 2013)). Thus, "[w]here a claim is plausibly pled, such an inquiry is ill-suited for consideration on a motion to dismiss." *Aguilar*, 2014 WL 6751663, at *4 (collecting cases).

However, Defendants also raise the issue that "Plaintiff does not even identify either CBS Broadcasting, Inc. or CBS Corporation in the Third Amended Complaint other than naming them in the pleading's preamble" and throughout the Third Amended Complaint, Plaintiff refers to Defendant in the singular (ECF No. 42 at 19). For example, Counts VI-IX only refers to a singular "Defendant," without specifying which Defendant is being referred to. As pled, it is impossible for the Defendants to determine which claim is being brought against which Defendant. As such, the undersigned recommends that Plaintiff's remaining claims be dismissed without prejudice, and that leave to amend be granted so that Plaintiff may specifically identify the Defendants against which each claim is being brought.

## IV.    CONCLUSION

For the forgoing reason, the undersigned respectfully **RECOMMENDS** that Defendants' Motion to Dismiss (ECF No. 43) be **GRANTED, in part**; that Counts IV, V and X be dismissed with prejudice; that Plaintiff's collective action claim under Count III be dismissed with prejudice;

16

that Plaintiff's remaining counts be dismissed without prejudice; and that leave to amend be granted so that Plaintiff may provide a more definite statement as to which of the Defendants each of the remaining claim is being brought against.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Kathleen M. Williams, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida this 2nd day of July, 2021.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE

17