UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 20-CV-22995-KMW

SILVA HARAPETI,

    Plaintiff,

vs.

CBS TELEVISION STATIONS INC., *a Foreign Profit Corporation*, *et al.*,

    Defendants.

_____/

**DEFENDANTS' STATEMENT OF MATERIAL FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

### Index of Exhibits to Defendants' Statement of Material Facts

| Exhibit | Document Name |
|---|---|
| A | Declaration of Carl Larson |
| B | Harapeti Personnel Documents |
| C | June 22, 2021 Deposition of Silva Harapeti |
| D | July 12, 2021 Deposition of Silva Harapeti |
| E | Hank Tester LinkedIn Profile |
| F | David Sutta LinkedIn Profile |
| G | David Sutta Welcome Email dated March 30, 2007 |
| H | Ted Schouten LinkedIn Profile |
| I | Carey Codd LinkedIn Profile |
| J | Ryan Fisher Employment Application |
| K | Josh Folk Welcome Email dated Nov. 9, 2009 |
| L | Tiani Jones Personal Information Form |
| M | Declaration of Tiani Jones, Case No. 20-cv-20961 at (DE 29-1) |
| N | Amber Diaz Employment Application |
| O | Declaration of Lisa Cilli |
| P | Declaration of Silva Harapeti, Case No. 20-cv-20961 (DE 174) |
| Q | Evidentiary Hearing (Oct. 14, 2020) Case No. 20-cv-20961 at (DE 76) |

### Additional Documents Referenced

| DE | Document Name |
|---|---|
| 1 | Plaintiff's Original Complaint |
| 91 | Plaintiff's Corrected Fourth Amended Complaint |
| 52-1 | Declaration of Joel Goldberg |
| 52-4 | Declaration of Elizabeth Roldan |

*Each of the above-referenced Exhibits has been filed as a separately marked exhibit to Defendants' Statement of Material Facts. Documents already on the Court's docket are referred to in Defendants' Statement of Material Facts by their ECF filing number.*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules for the Southern District of Florida, Defendants CBS Television Stations Inc., CBS Broadcasting, Inc., and CBS Corporation (collectively, "Defendants" or "CBS"), by and through undersigned counsel, hereby file this Statement of Material Facts in support of their separately filed Motion for Summary Judgment.

### *Plaintiff's Employment with WFOR*

1. Defendant CBS Television Stations Inc. operates WFOR-TV in Miami, Florida ("WFOR"). Declaration of Carl Larson ("Larson Decl."), attached hereto as **Exhibit A**, at ¶ 3.

2. Plaintiff Silva Harapeti ("Plaintiff" or "Harapeti") was born February 25, 1975. *See* Harapeti Personnel Documents, attached as **Exhibit B**, at CBS-Harapeti-00000045.

3. Plaintiff graduated from the University of Southern California with a Bachelor's Degree in communications. *See* June 22, 2021 Deposition Transcript of Silva Harapeti ("Pl. Depo."), attached as **Exhibit C**, at 11:11–16. Plaintiff received her first job as a television producer in or around 2002 and began reporting in or around 2003 or 2004. *See id.* at 11:25–13:8.

4. Plaintiff worked as a television reporter and/or producer for several television stations throughout the United States from 2002 forward, before getting hired as a freelance (or "per diem") reporter at WFOR in Miami, Florida. *See* **Ex. C**, Pl. Depo. at 39:2–11; **Ex. B**, Plaintiff's Personnel Documents, at CBS-Harapeti-00000044–CBS-Harapeti-00000045 (reflecting hire as a "reporter" with an effective date of 2/21/2011).

5. From approximately 2011 to 2013, Plaintiff worked at WFOR as a freelance ("per diem") reporter. *See* **Ex. C**, Pl. Depo. at 39:2–11; **Ex. B**, Plaintiff's Personnel Documents, at CBS-Harapeti-00000044–CBS-Harapeti-00000045 (reflecting hire as a "reporter" with an effective date of 2/21/2011), CBS-Harapeti-00000040 (reflecting termination effective 9/26/2011); CBS-Harapeti-00000029 (reflecting re-hire as a per diem "reporter" on 1/18/2012), CBS-Harapeti-0000023 (reflecting termination date of 8/31/2013).

6. Plaintiff was re-hired at WFOR on or about July 20, 2015 as a freelance producer. *See id.* at CBS-Harapeti-0000007; *see also* **Ex. C**, Pl. Depo. at 37:13–38:22.

7. During this period, Plaintiff was classified as a "freelance" or "per diem" employee, and received $210 for each day worked. **Ex. B**, Plaintiff's Personnel Documents, at CBS-Harapeti-0000008. This day rate was based on an annualized salary of $54,600.00. *See id.* at CBS-Harapeti-0000007.

8. Plaintiff worked as a producer throughout 2015; however, she began taking on the responsibilities of a reporter in or around 2016. *See* **Ex. C**, Pl. Depo. at 37:13–40:19.

9. Plaintiff requested the opportunity to take on reporter responsibilities from one of her superiors, Elizabeth Roldan ("Ms. Roldan"), because Plaintiff was "looking for an opportunity to get on air." *See* **Ex. C**, Pl. Depo. at 47:18–49:1 (noting that Plaintiff "had been asking to be put on the air as a reporter in general . . . because that's what [Plaintiff] [did] in the past").

10. A reporter or a producer's pay is based on a variety of factors, including experience, seniority, budgetary concerns at the time of hire, and which show they are assigned to. *See* **Ex. C**, Pl. Depo. at 54:4–22, 55:13–56:13 (noting that "experience," "specific knowledge in a specific area," "contact lists," and "specific skill[s]" are some factors that might impact a reporter's pay), 177:9–11; July 12, 2021 Deposition of Silva Harapeti ("July 12th Pl. Depo."), attached as **Exhibit D**, at 51:3–7 (noting that, in general in Miami, "[e]xperience, how much you know about the market, how long you've been there [at the station] *obviously* impacts the pay" (emphasis added)).

11. Additional factors impacting pay include: whether the individual is a full-time staff employee or a non-staff, freelance, part-time, and/or per diem employee; pay scale in that market; whether the individual has negotiated a Personal Services Agreement; whether the individual is represented by a talent agent; and the individual's tenure at CBS. *See* Declaration of Joel Goldberg (DE 52-1) at ¶ 15.

### *Plaintiff's Gender Discrimination Claims*

12. Plaintiff alleges that "Defendant paid male freelance employees at a higher rate than Plaintiff." *See* Plaintiff's Corrected Fourth Amended Complaint (DE 91) ("Compl.") at ¶¶ 59–63; **Ex. C**, Pl. Depo. at 165:18–25.

13. Plaintiff identified Hank Tester ("Tester") as a male per diem reporter who was paid more than the female per diem reporters. *See* **Ex. C**, Pl. Depo. at 165:18–166:23 ("I believe Hank [Tester] is the only per diem that I – while I was there[.]").

14. Plaintiff does not know what Tester was paid. *Id.* at 166:5–15.

15. Plaintiff testified that Tester "has more experience than [her]" and that his experience was "possibly" a reason his pay was higher. *Id.* at 166:24–167:15.

16. Tester has worked in television since 1969. *See* Hank Tester LinkedIn Profile, attached hereto as **Exhibit E**. From 1979 to 1992, Tester owned and operated television stations in Nevada and Arizona, while also serving various roles at those television stations including news

director, assignment editor, editorial writer, and on-air reporter. *See id.* Tester has worked as a reporter in Miami since 1992. *See id.*

17. Plaintiff also alleged that three additional male freelance reporters were paid more than her—David Sutta ("Sutta"), Ted Schouten ("Schouten"), and Carey Codd ("Codd"). *See* Compl. (DE 91) at ¶ 63.

18. Plaintiff testified at deposition that Sutta, Schouten, and Codd were full-time reporters. **Ex. C**, Pl. Depo. at 167:25–168:3 (Sutta), 168:16–169:9 (Schouten), 170:9–23 (Codd); *see also* **Ex. A**, Larson Decl., at ¶¶ 7–9 (noting that in 2018, Sutta, Schouten, and Codd were full-time staff reporters).

19. Plaintiff does not know what Sutta's pay was, but testified that he was paid more than Plaintiff because Plaintiff saw "a posting for a position similar to his." *Id.* at 167:16–24.

20. Plaintiff testified that Sutta was already working at WFOR prior to Plaintiff's first stint of employment in 2011. *Id.* at 168:4–6.

21. Plaintiff does not know whether Sutta had more experience than her. *Id.* at 168:7–13.

22. Sutta first began working at WFOR as a reporter at WFOR in 2007. *See* **Ex. A**, Larson Decl., at ¶ 7.

23. Sutta has worked in television since 2001. *See* David Sutta LinkedIn Profile, attached hereto as **Exhibit F**. Prior to joining WFOR in 2007, Sutta worked at WBBH in Fort Myers, Florida, where he worked for 5 years as their lead investigative and crime reporter. *See* David Sutta Welcome Email dated March 30, 2007, attached hereto as **Exhibit G**.

24. Plaintiff testified that she "believes" Schouten was paid more than her. *See* **Ex. C**, Pl. Depo. at 168:16–169:9.

25. Plaintiff did not know what Schouten was paid. *Id.*

26. Plaintiff testified that Schouten had been at WFOR for 10 to 15 years. *Id.* at 169:10–12.

27. Plaintiff does not know what Schouten's experience was before he joined WFOR. *Id.* at 168:13–170:6.

28. Schouten joined WFOR as a reporter in 1998. *See* **Ex. A**, Larson Decl., at ¶ 8.

29. Schouten has worked in television as a reporter since 1989. *See* Ted Schouten LinkedIn Profile, attached hereto as **Exhibit H**.

30. Plaintiff does not know what Codd was paid and testified that she could "guess" that it was more than hers. *See* **Ex. C**, Pl. Depo. at 170:9–23 ("I don't know [his pay] specifically but if I have to guess I'd say [it was more].").

31. Plaintiff does not know what Codd's level of experience was. *Id.*

32. Codd joined WFOR as a reporter in 2005. *See* **Ex. A**, Larson Decl., at ¶ 9.

33. Codd has worked in television as a reporter since 1997. *See* Carey Codd LinkedIn Profile, attached hereto as **Exhibit I**. Codd has a Bachelor's Degree in communications, as well as a Master's Degree in broadcast journalism from the University of Miami. *See id.*

34. Plaintiff also identified Ebenezer Mends ("Mends"). *See* Compl. (DE 91) at ¶¶ 65–66.

35. Mends is not a reporter, he is a videographer. *See* **Ex. C**, Pl. Depo. at 170:24–171:11. Videographers, unlike reporters and producers, get paid hourly. *See id.*

36. Plaintiff testified that certain reporters were paid more because of their experience. *See* **Ex. C**, Pl. Depo. at 173:2–9.

37. Plaintiff also identified Ryan Fisher ("Fisher") as another per diem producer who Plaintiff believes was paid more. *See* **Ex. C**, Pl. Depo. at 174:1–175:10.

38. Plaintiff does not know what Fisher was paid. *Id.*

39. Plaintiff does not know what Fisher's experience is. *See id.*

40. Fisher has been working as a television producer since 2001. *See* Ryan Fisher Employment Application, attached hereto as **Exhibit J**.

41. Plaintiff identified Josh Folk ("Folk"). *See* **Ex. C**, Pl. Depo. at 174:1–175:10.

42. Folk was a full-time contracted staff employee and resigned as of June 10, 2017. *See id.*; *see also* **Ex. A**, Larson Decl., at ¶ 10.

43. Plaintiff does not know what Folk was paid. **Ex. C**, Pl. Depo. at 174:1–175:10.

44. Plaintiff does not know what Folk's experience was. *Id.*

45. Plaintiff testified that Folk had been at WFOR longer than her. *See id.*; *see also* **Ex. A**, Larson Decl., at ¶ 10 (noting that Folk has been at WFOR since 2009).

46. Folk worked at WFOR as a Senior Producer. **Ex. A**, Larson Decl., at ¶ 10.

47. Prior to joining WFOR as a Senior Producer, Folk worked at WBBH in Fort Myers, Florida as an Executive Producer. *See* Josh Folk Welcome Email dated Nov. 9, 2009, attached hereto as **Exhibit K**.

48.     An Executive Producer is responsible for the high-level management of the particular show or broadcast that they are responsible for.  *See* Declaration of Elizabeth Roldan (DE 52-4) at ¶¶ 10–11; *see also* Declaration of Joel Goldberg (DE 52-1) at ¶ 12.

49.     Producers report to the Executive Producers, and are responsible for single broadcasts or segments.  *See* Declaration of Elizabeth Roldan (DE 52-4) at ¶¶ 12–15; *see also* Declaration of Joel Goldberg (DE 52-1) at ¶ 12.

### *Plaintiff's Age Discrimination Claims*

50.     Plaintiff alleges that CBS paid her younger female freelance counterparts "considerably more than Plaintiff."  *See* Compl. (DE 91) at ¶ 55.

51.     Plaintiff identified Tiani Jones ("Jones") as a younger female freelance reporter who was allegedly paid more than Plaintiff.  *See* Compl. (DE 91) at ¶ 45.

52.     Jones was born April 16, 1976.  *See* Tiani Jones Personal Information Form, attached hereto as **Exhibit L**.

53.     However, Plaintiff does not know what Jones' pay was relative to hers or whether Jones was paid more than Plaintiff.  *See* **Ex. C**, Pl. Depo. at 156:3–14.

54.     Jones testified that she was paid a day rate of $200 per day.  *See* Declaration of Tiani Jones, Case No. 20-cv-20961 at (DE 29-1), attached as **Exhibit M**, at ¶ 5.

55.     Jones left WFOR in July of 2017.  *See* **Ex. M**, Consent to Join into Lawsuit, Case No. 20-cv-20961 at (DE 29-1).

56.     Plaintiff identified Rielle Creighton ("Creighton") as a younger female freelance reporter who was allegedly paid more than Plaintiff.  *See* Compl. (DE 91) at ¶ 52.

57.     Plaintiff does not know what Creighton was paid or whether Creighton was paid more than Plaintiff.  *See* **Ex. C**, Pl. Depo. at 160:13–161:1.

58.     Creighton was born July 25, 1981.  **Ex. A**, Larson Decl., at ¶ 4.

59.     Plaintiff identified Amber Diaz ("Diaz") as a younger female freelance reporter who was allegedly paid more than Plaintiff.  *See* Compl. (DE 91) at ¶ 53.

60.     Plaintiff testified that Diaz was paid $325/$350 per day.  *See* **Ex. C**, Pl. Depo. 161:2–22.

61.     Diaz has a Bachelor's Degree in journalism from the University of Connecticut, and a Master's Degree in broadcast journalism from Syracuse University.  *See* Amber Diaz Employment Application, attached hereto as **Exhibit N**.

62. Plaintiff also identified Lauren Pastrana ("Pastrana") and Oralia Ortega ("Ortega") as two other individuals who were younger than Plaintiff and were paid more. See **Ex. C**, Pl. Depo. at 162:17–22.

63. Both Pastrana and Ortega were full time, contracted reporters. See *id.* at 16:25–17:19 (testifying that both Pastrana and Ortega were hired as full time reporters during Plaintiff's first stint of employment from 2011 to 2013); *see also* **Ex. A**, Larson Decl., at ¶¶ 5–6 (noting that Pastrana was a full-time reporter from 2012 to 2015, and Ortega as of May 9, 2016).

64. Pastrana was a full-time reporter from 2012 to 2015, but was promoted to an anchor position in September 2015. **Ex. A**, Larson Decl., at ¶ 5.

65. When asked whether these individuals—Jones, Creighton, Diaz, Pastrana, and Ortega—were paid more because they were younger than Plaintiff, Plaintiff testified that it was "a possibility" and that this was based on her "opinion." See **Ex. C**, Pl. Depo. at 162:23–163:3.

### *Purported Retaliation Occurring After January 9, 2018*

66. Plaintiff testified that on January 4, 2018 she had a meeting with WFOR's News Director, Ms. Roldan, and complained to Ms. Roldan about being placed in dangerous situations while working as a reporter out in the field. See **Ex. C**, Pl. Depo. at 202:1–205:3.

67. Plaintiff complained to Ms. Roldan about two specific instances where Plaintiff testified that she was assaulted by members of the public: once while covering Hurricane Irma[1] in early September of 2017, and another time while covering a University of Miami football game in November of 2017. See **Ex. C**, Pl. Depo. at 177:12–183:14, 187:22–23, 188:7–197:5.

68. Plaintiff testified that in response to her complaints about security while working in the field, Ms. Roldan told her "this is not a whining session." *Id.* at 202:9–203:11.

69. Plaintiff testified that Ms. Roldan's response was "discriminatory" because "if any of the other male reporters had walked into [Ms. Roldan's] office and had made some kind of safety concern she would have never told them to stop whining." *Id.*

70. After this January 4, 2018 conversation, Plaintiff testified that she was retaliated against by being "withheld from covering stories." See **Ex. C**, Pl. Depo. at 212:25–214:7.

---

[1] Hurricane Irma made landfall on September 10, 2017 in the Florida Keys. *See* National Oceanic and Atmospheric Administration, National Hurricane Center Tropical Cyclone Report for Hurricane Irma (available at https://www.nhc.noaa.gov/data/tcr/AL112017_Irma.pdf).

71. Plaintiff claims to have not been assigned to cover the Parkland High School shooting on February 14, 2018. *See id.* at 213:7–17.

72. Plaintiff was assigned to cover the Parkland High School shooting, and reported on the shooting on February 14, 2018, the day of the shooting, as well as on subsequent days, including February 15th, 16th, 18th, and March 9th. *See* Declaration of Lisa Cilli, attached hereto as **Exhibit O**, at ¶ 4(a)–(e), and accompanying Screenshots of Harapeti Live Reports on the Parkland Shooting.[2]

73. Plaintiff testified that she covered the Parkland hooting. *See* **Ex. D**, July 12th Pl. Depo. at 66:15–25 ("I covered nationally-related stories, *Parkland*, hurricanes, the Orlando shooting, front and center, always on top of the newscast . . . ." (emphasis added)).

74. Plaintiff also admitted in a declaration that she covered the Parkland shooting, but claims that she was not assigned to cover the shooting on February 14, 2018 until later in the day at "around 5:00 P.M." *See* Declaration of Silva Harapeti, Case No. 20-cv-20961 (DE 174), attached here as **Exhibit P**, at ¶¶ 8–9.

75. Plaintiff could not identify any other instances of retaliation or discrimination in 2018. *See* **Ex. C**, Pl. Depo. at 215:9–20.

### *Plaintiff's Resignation*

76. In February of 2018, Plaintiff asked not to be scheduled on any future shifts. *See* **Ex. C**, Pl. Depo. at 141:17–142:9; 146:7–149:25; *see also* **Ex. D**, July 12th Pl. Depo. at 33:4–8.

77. Plaintiff agreed to continue working for another several weeks after asking not to be scheduled, and continued working through March 17, 2018. *See* **Ex. C**, Pl. Depo. at 149:5–25; *see also* **Ex. B**, Plaintiff's Personnel Documents, at CBS-Harapeti-0000001 (reflecting effective termination date of March 17, 2018).

### *Alleged Joint Employers*

78. ViacomCBS and its corporate affiliate entities own and operate 29 local television stations in various markets throughout the United States. *See* Declaration of Joel Goldberg (DE 52-1) at ¶ 5. These stations operate under the "CBS Television Stations" ("CBS/CTS") business unit within ViacomCBS. *Id.*

---

[2] Complete videos of Plaintiff's live reports regarding the Parkland High School Shooting on February 14th, 15th, 16th, 18th, and March 9th are available upon request.

79. In turn, the 29 local stations are owned and operated by separate legal entities. *See* Declaration of Joel Goldberg (DE 52-1) at ¶ 5.

80. Defendant CBS Broadcasting Inc. owns and directly operates a number of CBS-affiliated television stations throughout the United States, including WCBS (New York), KCBS (Los Angeles), WBBM (Chicago), KPIX (San Francisco), KYW (Philadelphia), KDKA (Pittsburgh), WWJ (Detroit), WCCO (Minneapolis) and KCCW (Walker, Minnesota). *See* Declaration of Joel Goldberg (DE 52-1) at ¶ 6.

81. Defendant CBS Broadcasting Inc. does not own or operate WFOR in any respect. *See* Declaration of Joel Goldberg (DE 52-1) at ¶ 6.

82. Defendant CBS Corporation no longer exists—it ceased to exist in December of 2019, when it merged with Viacom to create ViacomCBS. *See* Transcript of Evidentiary Hearing, Case No. 20-cv-20961 (Oct. 14, 2020), attached hereto as **Exhibit Q**, at 13:13–14:1.

83. Although ViacomCBS—and its predecessor entity, CBS Corporation—operate the 29 local television stations under the CBS/CTS Group, this operation is only with respect to high-level guidance, including negotiating labor agreements and programming agreements. *See* **Ex. Q**, Evidentiary Hearing Transcript at 7:20–9:17.

Respectfully submitted this 20th day of October, 2021.

BAKER & MCKENZIE LLP
*Attorneys for CBS Television Stations, Inc.*
Sabadell Financial Center
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone: (305) 789-8900
Facsimile:  (305) 789-8953

By:  /s/ *William V. Roppolo*
William V. Roppolo, Esq.
Florida Bar No. 182850
william.roppolo@bakermckenzie.com

Benjamin C. Davis, Esq.
Florida Bar No. 110734
benjamin.davis@bakermckenzie.com

– and –

Blair J. Robinson (*Pro Hac Vice*)
Paul C. Evans (*Pro Hac Vice*)
BAKER & MCKENZIE LLP
452 Fifth Avenue
New York, NY 10018
Telephone: (212) 626-4100
Facsimile: (212) 310-1632
blair.robinson@bakermckenzie.com
paul.evans@bakermckenzie.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 20, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ *Benjamin C. Davis*
Benjamin C. Davis, Esq.

# SERVICE LIST

## SILVA HARAPETI,

v.

## CBS TELEVISION STATIONS, INC., *et al.*,

## CASE NO. 20-22995-CIV-Williams

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Peter M. Hoogerwoerd, Esq.
REMER & GEORGES-PIERRE, PLLC
44 West Flagler Street
Suite 2200
Miami, Florida 33130
pmh@rgpattorneys.com
Phone: (305) 416-5000
Facsimile: (305) 416-5005
*Attorneys for Plaintiff Silva Harapeti*