**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-CV-22995-WILLIAMS/LOUIS

SILVA HARAPETI,

      Plaintiff,

v.

CBS TELEVISION STATIONS, INC.,
a Foreign Profit Corporation, *et al*.,

      Defendants.

_____/

**<u>REPORT AND RECOMMENDATION</u>**

      This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 95).   This matter was referred to the undersigned United States Magistrate Judge for a Report and Recommendation by  the Honorable Kathleen M. Williams, United States District Judge (ECF No. 136).  Plaintiff filed a response in opposition (ECF No. 115), and Defendants filed a Reply (ECF No. 119).  Upon consideration of the briefings, the pertinent parts of the record, and being otherwise fully advised in the premises, the undersigned  recommends **GRANTING** Defendants' Motion for Summary  Judgment.

**I.**        **BACKGROUND**

      This action was filed by Plaintiff Silva Harapeti against Defendants CBS Television Stations Inc. ("CBS Television"), CBS Broadcasting, Inc. ("CBS Broadcasting") and CBS Corporation ("CBS Corporation") for unlawful discrimination predicated on Plaintiff's sex (gender) and age in violation of Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Florida Civil Rights Act of 1992, Florida

Statutes, Chapter 760, *et seq*. ("FCRA"), for Defendants' retaliation against Plaintiff, and for Defendants' negligent infliction of emotional distress ("NIED") against Plaintiff (ECF No. 91 (Fourth Amended Complaint)).

Plaintiff was born in 1975. After graduating from the University of Southern California with a bachelor's degree in communications, Plaintiff began working in 2002 as a producer, and began reporting in 2003 or 2004 (ECF No. 94, Def. SOF, at ¶¶ 2–3). She worked throughout the United States as a television reporter and/or producer for several television stations before being hired as a freelance (or "per diem") reporter at WFOR-TV ("WFOR") in Miami, Florida, where she worked from approximately 2011 until 2013 (*id.* at ¶¶ 4–5). CBS Television operates WFOR (*id.* at ¶ 1). CBS Broadcasting Inc. does not own or operate WFOR (*id.* at ¶ 81). CBS Corporation no longer exists as it merged in 2019 with ViacomCBS, which operates stations, including WFOR, at some level (*id*. at ¶¶ 81, 83).

WFOR re-hired Plaintiff as a freelance producer on or about July 20, 2015, and she began taking on the responsibility of a reporter in or around 2016 (*id.* at ¶ 6, 8). Looking for an opportunity to get on air, Plaintiff requested to take on reporter responsibilities from her supervisor, Elizabeth Roldan (*id*. at ¶ 9).

A reporter or a producer's pay is based on a variety of factors, including experience, seniority, budgetary concerns at the time of hire, and which show they are assigned to (*id.* at ¶ 10). Whether an employee is classified as full-time or per diem is a factor that impacts that employee's pay (*id*. at ¶ 11). There were no differences in the job descriptions for full-time and freelance reporters (ECF No. 114, Pl. SOF at ¶ 84). Yet Plaintiff claims that the pay disparity between those classified as "full-time" and those classified as "per diem" "created two classes of employees" –one group that enjoyed benefits such as vacation and sick leave, and another group

who did not have such benefits (*id.* at ¶ 90).  The per diem employees in Miami consisted mostly of women or persons of color (*id.* at ¶ 95).  For example, Plaintiff identifies three male reporters—David Sutta, Ted Schouten, and Carey Codd—who were full-time employees paid more than she was. All three were employed with WFOR before Plaintiff was hired, since 2007 (Sutta), 1998 (Schouten), and 2005 (Codd) (Def. SOF at ¶¶ 22, 28, 32).

As a "freelance" employee, Plaintiff was paid $210 for each day worked, based on an annualized salary of $54,600 (*id.* at ¶ 7).  Plaintiff testified that even among other per diem reporters, she was paid less because of her age.  For example, Amber Diaz is allegedly a younger[1] woman who Plaintiff identified as earning $325/350 per day as a freelance reporter (*id.* at ¶ 60). Plaintiff also contends that her male counterpart, Hank Tester, was paid more as a per diem reporter than she was, though there is no record evidence of what he was in fact paid.  Tester, it is not meaningfully disputed, promotes himself as having experience as a reporter in Miami since 1992 (*id.* at ¶ 16).[2]  Similarly, Plaintiff identifies Tiani Jones as a younger woman who was paid "significantly more" than Plaintiff when she was hired in 2016; Ms. Jones however testified that she was paid $200 per day—less than Plaintiff (*id.* at ¶ 54).  Finally, Plaintiff alleged that Rielle Creighton was hired as a freelance reporter in 2017 and paid significantly more than Plaintiff; however, Plaintiff testified that she does not know how much Creighton was paid or even whether it was more than Plaintiff's rate of pay.  There is no record evidence of what Creighton was paid (*id.* at ¶ 57).

---

[1] Diaz's age is not part of the record.

[2] Plaintiff's Response to Defendants' Material Statement of Facts lists "denied" for this fact.  Under Rule 56.1(b)(2)(C) of the Local Rules, to the extent Plaintiff disputed any of Defendants' material facts, Plaintiff was required to provide evidentiary citations limited to evidence supporting that particular factual dispute.  Plaintiff failed to do so, merely stating "denied" without elaboration or citation to evidence that might have controverted the asserted fact. This was insufficient to dispute those facts for which Defendants provided supporting evidence.  *See Dockery v. N. Shore Med. Ctr.*, 909 F. Supp. 1550, 1553 (S.D. Fla. 1995).

Plaintiff alleges that in 2011, she inquired about a full-time position when one became available, and that the position was filled with a younger, less experienced woman. Plaintiff alleges that twice more, in 2011 and 2012, she inquired about full-time positions when available but each spot was filled by a younger woman.  Again, when she was rehired as a freelance producer in 2015, Plaintiff contends she was told no full-time positions were available, yet Defendants hired a younger woman as a full-time reporter.  Plaintiff contends two of the women who were hired as full-time reporters—Lauren Pastrana and Oralia Ortega—are younger than she is.  It is Plaintiff's opinion that they are both paid more than Plaintiff because they are younger than her, *see* (Def. SOF ¶ at 62–63); neither of their salaries are part of the record.

In 2016, Plaintiff alleges that she was warned that her pursuit of a business unrelated to her work with WFOR was interfering with and may cause her to be terminated from her freelance position.  She contends a similarly situated male colleague, David Sutta, was permitted to conduct a photography company without recourse from WFOR.  Plaintiff did not advance evidence either of the alleged warning from her supervisors or of Mr. Sutta's activities in support of her opposition.

On January 4, 2018, Plaintiff met with Roldan, regarding two instances in which Plaintiff claims to have been assaulted by members of the public: once while covering Hurricane Irma in September 2017 and the other while covering a University of Miami football game in November 2017 (*id.* at ¶¶ 66–67).  Roldan told Plaintiff that their meeting was "not a whining session," a comment Plaintiff claims was discriminatory because if any males were to express a safety concern, Roldan would never have told them to stop whining (*id.* at ¶¶ 68–69).  Plaintiff maintains that she was retaliated against after this meeting by being "withheld from covering stories" (*id.* at ¶ 70).  Plaintiff specifically claims that she was not assigned to cover the school shooting at

Parkland High School ("Parkland Shooting") on February 14, 2018 (*id.* at ¶ 71).  Defendants advance evidence that Plaintiff *was* assigned to cover the Parkland Shooting, although not until much later in the day, and also reported on multiple days that followed (*id.* at ¶ 72).  Plaintiff admitted in her declaration that she was assigned to cover the story later in the day at around 5:00 PM (*id.* at ¶ 74).  Plaintiff has not identified any other instances of retaliation or discrimination (*id.* at ¶ 75).

Plaintiff's last day with WFOR was March 17, 2018 (*id.* at ¶ 77).  On January 9, 2019, Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Florida Commission on Human Relations.[3]  On or about February 25, 2020, the EEOC issued a Notice of Right to Sue.  Plaintiff timely instituted suit by filing her first Complaint with the Court.

Defendants moved to dismiss the Complaint, which I recommended denying (ECF No. 73).  In the Order adopting that Report and Recommendation, this Court observed that Plaintiff's claims are limited to those predicated on acts that occurred no more than 300 days prior to filing the EEOC complaint, to the extent those claims are predicated on Title VII; and 365 days prior to filing the EEOC complaint, to the extent those claims are predicated on Florida law (*see* ECF No. 78).  As a practical matter, the only events alleged within that time frame relate to Defendants' alleged discriminatory pay practices based on her gender; Defendants' disparate pay based on her age; and Defendants' alleged retaliatory decision to hold Plaintiff back from covering the breaking story of the Parkland shooting.

Before the Court now is Defendants' Motion for Summary Judgment on Plaintiff's

---

[3] A person seeking to file a lawsuit under Title VII, the FCRA, or the ADEA must first file a charge with the EEOC alleging a violation and then obtain authorization from the EEOC.  *Lewis v. Asplundh Tree Expert Co.*, 402 F. App'x 454, 456 (11th Cir. 2010); *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004).

Corrected Fourth Amended Complaint.  Because the evidence advanced by Plaintiff in opposition to the motion falls short of establishing a prima facie case on any of her claims challenged on the Motion, the undersigned recommends that Defendants' Motion for Summary Judgment is due to be granted.

## II.      LEGAL STANDARD

### A.      Summary Judgment

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must identify an absence of evidence to support the nonmoving party's case.  *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must support her assertion that a genuine material fact remains in dispute by citing to specific parts of the record.  *Sutton v. Royal Caribbean Cruises Ltd.*, 285 F. Supp. 3d 1349, 1351 (S.D. Fla. 2018) ("In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, answers to interrogatories, and admissions that a specific fact exist demonstrating a genuine issue for trial."), *aff'd*, 774 F. App'x 508 (11th Cir. 2019).  A fact or issue is material for purposes of summary judgment only if it might affect the outcome of the suit under the governing law.  *Webb v. Carnival Corp.*, 360 F. Supp. 3d

1339, 1343 (S.D. Fla. 2017).  Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Id.* at 1344 (citing *Celotex Corp.*, 477 U.S. at 322).

In considering a motion for summary judgment, the Court must evaluate the evidence and make all inferences in the light most favorable to the nonmoving party.  *Sutton*, 285 F. Supp. at 1351 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87).  However, the nonmoving party may not merely point to a scintilla of evidence that creates a metaphysical doubt about an issue; instead, the evidence must be sufficient to allow a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co*., 475 U.S. at 586-87.  Axiomatically, evidence is required; conclusory and unsubstantiated averments will not do, *Leigh v. Warner Bros., Inc*., 212 F.3d 1210, 1217 (11th Cir. 2000), and citations to specific record evidence are necessary, *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116-17 (11th Cir. 1993).

### B.        Title VII and the Florida Civil Rights Act

Title VII prohibits discrimination in employment decisions on the basis of "race, color, religion, sex or national origin." *See* 42 U.S.C. § 2000e-2(a)(1).[4]  A plaintiff may prevail on her Title VII claim by proving that discrimination was a "motivating factor" in the employment decision, *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012), which the plaintiff may accomplish by offering either direct or circumstantial evidence.  *See Gray v. Deloitte LLP*, 849 F. App'x 843, 844 (11th Cir. 2021) (citing *Dixon v. The Hallmark Cos*., 627 F.3d 849, 854 (11th Cir. 2010)).  Circumstantial evidence suggests rather than proves discrimination, often requiring one

---

[4] The FCRA is patterned after Title VII, and thus the same legal framework applies to FCRA and Title VII claims. *See Hicks-Washington v. Hous. Auth. of City of Fort Lauderdale*, 803 F. App'x 295, 300 (11th Cir.), *cert. denied*, 141 S. Ct. 366 (2020).

or more inferences to reach the conclusion that the employer was motivated by discriminatory animus. *Gray*, 849 F. App'x at 845. Therefore, remarks unrelated to the decision-making process are considered circumstantial, rather than direct evidence. *Id.* at 844.

Absent direct evidence, the court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Gray*, 849 F. App'x at 844. *McDonnell Douglas* requires a plaintiff to make out a prima facie case. *Id.* at 845 (citation omitted); *see also Knight v. Baptist Hosp. of Miami*, *Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (additionally listing the requirement that the plaintiff demonstrates that she is qualified for the job he held). Upon establishing a prima facie case, the burden of production shifts to the employer to articulate a legitimate reason for the adverse action. *Gray*, 849 F. App'x at 845. If the employer can rebut the presumption, the plaintiff must then prove that the reason offered by the employer is pretextual. *Id.*; *see also Lee v. GTE Fla., Inc*., 226 F.3d 1249, 1253 (11th Cir. 2000).

### C.      Age Discrimination in Employment Act[5]

The ADEA prohibits employers from discharging an employee, who is 40 years of age or older, on the basis of her age. *See* 29 U.S.C. §§ 623(a)(1), 631(a). To establish an ADEA claim, plaintiff bears the burden of persuasion to prove that age was the "but-for" cause of the employer's adverse action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). In this way, the ADEA differs from Title VII, which requires only that a plaintiff demonstrate that the employer's bias was "a motivating factor" in the adverse decision. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1335 (11th Cir. 2013). While the motivating factor test, analogous to proximate causation in tort law, requires simply "some direct relation" between the proscribed animus and the adverse decision, under the

---

[5] Age discrimination claims brought under the FCRA are analyzed under the same framework as the ADEA. *Rainey v. UPS*, 816 F. App'x 397, 400 (11th Cir. 2020).

"but-for" requirement of the ADEA the animus must have determinatively influenced the employer's adverse decision.  *Id.*  (citations omitted).

The ADEA, therefore, imposes a higher bar for plaintiffs.  *Sims*, 704 F.3d at 1336. Relatedly, the burden-shifting framework does not apply here, and the plaintiff retains the burden even where she introduces evidence that age was "one motivating factor" in the employer's decision. *See Gross*, 557 U.S. at 180 (adding that this is true even in the context of alleged "mixed motivation" claims where plaintiff may also allege that the adverse actions were motivated by, for example, sex or national origin in violation of Title VII).

## III.     DISCUSSION

Defendants move for summary judgment on Plaintiff's claims of unlawful discrimination predicated on Plaintiff's gender and age in violation of Title VII, the ADEA, and the FCRA; Defendants' retaliation against Plaintiff; and Defendants' NIED against Plaintiff. Each claim is addressed below.

### A.     Age and Gender Discrimination Claims under Title VII, the ADEA, and the FCRA

Defendants' Motion for Summary Judgment applies the same arguments and analytical framework on Plaintiff's gender and age discrimination claims under Title VII, the ADEA, and the FCRA.  Accordingly, the Court considers Defendants' Motion on these claims collectively.

#### 1.  Comparator Analysis

To prevail on her discrimination claims, Plaintiff must first prove that Defendants' employment decisions were motivated by her age or gender.  Plaintiff relies on circumstantial evidence, so the Court will use the familiar framework established in *McDonnell Douglas*.  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004) ("In evaluating [Title VII] disparate

treatment claims supported by circumstantial evidence, we use the framework established by the Supreme Court in [*McDonnell Douglas*.]").  Defendants contend that Plaintiff has failed to make out a prima facie case; other than her ability to demonstrate that she belongs to a protected class, Defendants challenge her ability to adduce competent evidence that she received lower wages than similarly situated comparators outside her protected class, or that she was qualified to receive the higher wage.

Defendants challenge Plaintiff's comparators on the basis that they were not similarly situated to her. Defendants contend that Plaintiff has not produced evidence that, during the relevant period, a single similarly situated male or younger female freelance reporter or producer received higher wages than Plaintiff.  Defendants contend that reporters who held a full-time position are inadequate comparators because they contend it is a different position, not comparable to Plaintiff's rate of pay.  Defendants' argument reveals a basic misunderstanding of Plaintiff's claims.

Plaintiff claims that throughout her employment, she remained classified as "freelance" and was passed over for full-time positions even after being assured by Defendants that she would be considered for a full-time position when an opening became available.  Various opportunities arose during Plaintiff's period of employment and Defendants did not offer Plaintiff a full-time position.  Thus, Plaintiff insists that Defendants failed to promote her to the full-time position she sought and the evidence demonstrates a systematic practice by Defendants of giving full-time employment contracts, top news story assignments, and increased salaries to males and younger females.[6]

To establish a prima facie case of discrimination in a promotional decision, a plaintiff must prove: (1) she belonged to a protected class, (2) she was qualified for and applied for the position,

---

[6] Plaintiff also references employees who complained of racial disparities and discrimination in her argument (ECF No. 115 at 2), however, Plaintiff's claims are limited to gender-based and age discrimination.

(3) despite her qualifications, she was rejected, and (4) the position was filled with an individual outside the protected class.  *Lee*, 226 F.3d at 1253.  There is no dispute that Plaintiff, a female over the age of 40, belongs to a protected class; Plaintiff's description of the types of duties she performed as a freelance employee, as well as Roldan's deposition testimony (ECF No. 110-1 at 49:7-50:24), establish her qualifications for full-time employment; Plaintiff adduced evidence that she inquired about full-time positions on multiple occasions, starting in 2011 and again in 2012, 2015, and 2017; Plaintiff remained freelance throughout her time with CBS; and Plaintiff produced deposition testimony that other individuals outside of her protected class were hired as full-time reporters during the course of her employment.  However, Plaintiff has not identified an event within the actionable time period, in 2018, of an opportunity to ascend to the full-time position that Defendants filled with a male or younger female.

Plaintiff acknowledges that "some" of her examples occurred outside the applicable statute of limitations but urges that they should be considered as relevant to show a pattern of discrimination throughout the entirety of her employment. Without disputing the possible relevance of prior incidents, the problem here is that Plaintiff has not identified a single incident *within* the applicable statute of limitations of her being passed over for a full-time position.  To the extent her discrimination claims are premised on a failure to promote theory, her failure to adduce any such evidence forecloses her success on that theory.

To the extent Plaintiff's claims are more generally predicated on Defendants' discriminatory practice of paying her less than her male and younger female colleagues, Plaintiff urges the Court to focus on how her comparators may be similar and not dissimilar to Plaintiff.  Plaintiff quotes *Coleman v. Donahoe*, a case from the Seventh Circuit, asserting that comparators are "'usually a question for the factfinder,' and summary judgment is appropriate only when 'no reasonable fact-

finder could find that plaintiffs have met their burden on the issue.'"  667 F.3d 835, 846-47 (7th Cir. 2012) (quoting *Srail v. Village of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009)).  As such, Plaintiff maintains that summary judgment for Defendants is inappropriate and that the jury must be permitted to render a decision on the issue.  However, the Eleventh Circuit has found that the appropriate test is actually the one that sufficiently enables courts to decide the sufficiency of plaintiff's evidence at summary judgment.  *See Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1226 (11th Cir. 2019).

In *Lewis*, the Eleventh Circuit answered "[t]he obvious question: Just how 'similarly situated' must a plaintiff and her comparator(s) be?"  *Id.* at 1217.  In cases like this one, "a plaintiff must show that she and her comparators are 'similarly situated in all material respects.'"  *Id.* at 1224.  "[A] plaintiff and her comparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'"  *Id.* at 1228 (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 231 (2015)).  Specifically, the Eleventh Circuit stated the following principles:

> (1) a plaintiff does not have to prove that she and her comparators are identical save for their race or gender; and (2) it is not necessary that a plaintiff and her comparators have precisely the same [job] title[s] or functions.  However, ordinarily, a valid comparator: (a) will have engaged in the same basic conduct (or misconduct) as the plaintiff; (b) will have been subject to the same employment policy, guideline, or rule as the plaintiff; (c) will have been under the jurisdiction of the same supervisor as the plaintiff, but not invariably so; and (d) will share the plaintiff's employment or disciplinary history.

*Johnson v. Miami-Dade Cty*, 948 F.3d 1318, 1327 n.7 (11th Cir. 2020) (citing *Lewis*, 918 F.3d at 1227–28) (citations and quotations omitted).  "[I]f a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present."  *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1277 (11th Cir. 2008) (emphasis and citations omitted).

Plaintiff identifies eight potential younger female comparators who she alleges are similarly

situated: Kara Kostanich, Maggie Newland, Summer Knowles, Lauren Pastrana, Oralia Ortega, Rielle Creighton, Amber Diaz, and Tiani Jones. Fatal to Plaintiff's position on summary judgment, she advances no record evidence either that these women were younger than her nor that they were promoted over her, nor what they were paid. The unsupported factual proffer in her Response (ECF No. 115 at 11) will not carry her burden on summary judgment. The mere allegation of factual disputes found in Plaintiff's Response may not be taken into account by a Court in determining issues of fact to be resolved in a motion for summary judgment. *See Helmich v. Kennedy*, 796 F.2d 1441, 1443 (11th Cir. 1986) ("Statements of fact in a party's brief, not in proper affidavit form, cannot be considered in determining if a genuine issue of material fact exists.").

Defendants aver that Plaintiff does not point to any record evidence that her male comparators had higher compensation rates than Plaintiff. Plaintiff contends in her Response that she was paid a lower rate than her male team members, who she claims were similarly situated. Plaintiff's responsive statement of facts, however, lacks any substantiation for her argument and cites to no record evidence. Plaintiff does not support her theory with evidence that any of these comparators were in fact paid more than she was,[7] relying vaguely on the fact that these individuals were paid as full-time employees. Giving Plaintiff the benefit of every permissible inference—and without expressly finding that such an inference here would be permissible—she still fails to adduce any evidence *at all* from which the Court could assess whether any of the comparators a similarly situated to her in all material respects.

Defendants advance evidence that Sutta, Schouten, and Codd have greater experience with WFOR (and generally) than does Plaintiff. Sutta began working at WFOR in 2007, Schouten in

---

[7] Plaintiff alleges that Sutta, "who had a full-time position with Defendants, was allowed to run his own personal photography company, while simultaneously working for Defendants" (ECF No. 115 at 12). In contrast, Plaintiff alleges that she was told by her supervisors that she could not have her own business and work for Defendants as a freelancer simultaneously. These facts are not alleged in or supported by Plaintiff's Statement of Facts.

1998, and Codd in 2005. *See Crawford v. Carroll*, 529 F.3d 961, 975 (11th Cir. 2008) (finding an employee not a proper comparator where they worked for the employer "several years longer" than plaintiff); *Davis v. Dunn Constr. Co., Inc.*, 872 F. Supp. 2d 1291, 1310 (N.D. Ala. 2012) (noting that "courts look to the amount of years an individual has worked for the employer," and finding individual was not a proper comparator where they had more experience and seniority). Mends, a videographer, is neither a reporter nor a producer and instead works in a separate and distinct role from Plaintiff. *See Earle v. Birmingham Bd. of Educ.*, 843 F. App'x 164, 166 (11th Cir. 2021) (noting that similarly situated employees will have the same responsibilities as the plaintiff). As such, these comparators are not similarly situated in all material aspects as the Eleventh Circuit contemplated in *Lewis*.

Tester, a male freelance reporter, is likewise not similarly situated to Plaintiff. Tester has worked in television since 1969 (ECF No. 94-5). Tester also owned and operated television stations in Nevada and Arizona, while serving various roles at those television stations including news director, assignment editor, editorial writer, and on-air reporter. *See id.* Tester has worked as a reporter in Miami since 1992. Plaintiff admitted in her testimony that Tester "has more experience than [her]" and that his experience was "possibly" a reason his pay was higher (ECF No. 94-3 at 166:24–167:15). Thus, Tester is not similarly situated to Plaintiff in all material aspects and is not a proper comparator either. *See Dyett v. N. Broward Hosp. Dist.*, No. 03-60804 CIV, 2004 WL 5320812, at *7 (S.D. Fla. Mar. 17, 2004) (finding that seniority and work experience are factors that distinguish employees). Accordingly, the undersigned recommends that summary judgment is warranted on Plaintiff's discrimination claims as she has failed to make a prima facie case.

## 2. Convincing Mosaic

Plaintiff alternatively travels on proving Defendants' discrimination by establishing a

14

convincing mosaic of circumstantial evidence. "[E]stablishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case. Accordingly, the plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "A plaintiff can still survive summary judgment if she 'presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Moultrie v. Ga. Dep't of Corr.*, 703 F. App'x 900, 907 (11th Cir. 2017) (citing *Smith*, 644 F.3d at 1328).

"A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) (internal citations omitted). Plaintiff offers to prove only the second factor, that is, evidence to show systematically better treatment of similarly situated employees.

Defendants characterize Plaintiff's attempt to construct a convincing mosaic as essentially "me too" evidence, where Plaintiff is utilizing evidence of discrimination and retaliation suffered by others in support of her claims. The Court scrutinizes the relevance of "me too" evidence to determine "how closely related the evidence is to the plaintiff's circumstances." *Sprint v. Mendelsohn*, 552 U.S. 379, 388 (2008).

Plaintiff advances the deposition of Joel Goldberg, and a news article, both of which describe discriminatory practices of and allegations against two CBS executives: Peter Dunn and David Friend (ECF No. 109 at 9:20-13:18, 51:9-53:4; 113-1). Plaintiff also provides the deposition

of Tiani Jones, who testified about instances of discrimination and retaliation at WFOR in Miami (ECF No. 108 at 54:6-56:3, 60:5-14, 63:16-64:17, 73:15-76:1, 76:9-15).  Viewing this evidence in the light most favorable to Plaintiff, it still falls short of demonstrating a convincing mosaic of circumstantial evidence of Defendants' discrimination.  Neither of the CBS executives, Dunn nor Friend, were involved in the day-to-day management of WFOR's employees.  Plaintiff's news article references allegations of "sexism, racism, and homophobia," at a news station in Philadelphia, not Miami.  The executives were also not involved in any decision concerning Plaintiff's employment.  It is further unclear whether the allegations against them involved age or gender-based discrimination or retaliation.

Jones testified regarding her own allegations of *racial* discrimination.  Plaintiff's claims involve alleged gender-based and age discrimination, thus any evidence of Jones' allegations involving race does not support Plaintiff's position.  Plaintiff cannot avoid summary judgment by relying on the convincing mosaic standard either.  Accordingly, the undersigned respectfully recommends the Court grant summary judgment on Plaintiff's discrimination claims under Title VII, the ADEA, and the FCRA.

### B.    Retaliation under Title VII and the FCRA

Plaintiff's retaliation claim under Title VII is limited to those events occurring after March 15, 2018 (ECF No. 78).  Notably, Plaintiff's final day of employment with WFOR was just two days later on March 17, 2018 (ECF No. 94-2 at 2).  Plaintiff has not identified any retaliatory conduct occurring after March 15, 2018.  As such, the undersigned recommends the Court grant Plaintiff's retaliation claim under Title VII.

For the FCRA, Plaintiff's retaliation claim is limited to events occurring after January 9, 2018 (ECF No. 78).  Defendants maintain that the single allegedly retaliatory act occurring within

the FCRA limitations period–Plaintiff not being immediately assigned to the Parkland Shooting–is insufficient to sustain Plaintiff's FCRA retaliation claim.  Under the *McDonnell Douglas* burden-shifting framework, Plaintiff must show that: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) the adverse action is causally related to the protected expression.  *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1291 (11th Cir. 2002).

For the first element, Plaintiff engaged in statutorily protected conduct by complaining to management regarding incidents from September and November of 2017 where members of the public allegedly groped her.  Plaintiff lodged her complaint because Defendants sent her, a woman, to an unsafe environment.

Nevertheless, Plaintiff fails to meet the second and third prong.  Plaintiff has not advanced evidence to demonstrate that she suffered a materially adverse action.  A "materially adverse action" in the context of a retaliation claim means that the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Jarvis v. Siemens Med. Sols. USA, Inc.*, 460 F. App'x 851, 858 (11th Cir. 2012) (internal citations and quotations omitted).  Plaintiff insists that Defendants retaliated against her by initially assigning her to an entirely different story than the Parkland Shooting while every other reporter, videographer, and producer was mobilized to Parkland High School on February 14, 2018 (ECF No 94-16 at ¶ 8) ("Finally around 5:00 pm, Executive Producer Jorge Gonzales, in charge for the 11pm newscast told me and my videographer to 'drive toward Parkland High School.' This meant that being sent out to the story that late in the day would mean that I would sit in traffic for hours and go nowhere.").  The Eleventh Circuit has "determined that an adverse employment action includes termination, failure to hire, or demotion"; however, "[a]n employer's conduct falling short of those actions must, in some substantial way, alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or

17

her of employment opportunities, or adversely affect his or her status as an employee." *Blue v. Dunn Constr. Co.*, 453 F. App'x 881, 884 (11th Cir. 2011) (internal citations omitted).

This alleged adverse employment action here does not constitute an adverse employment decision sufficient to support an FCRA retaliation claim.  Although Plaintiff contends she was "humiliated, ridiculed and made an example out of before my peers in the newsroom for several hours" (ECF No. 94-16 at ¶ 8), she fails to explain, much less prove, that this event substantially altered her employment.  *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001) ("[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action.").  Plaintiff has offered no evidence that not being immediately assigned to the Parkland Shooting altered her compensation, terms, conditions, or privileges of employment, deprived her of opportunities, or adversely affected her status as an employee.  *See also Harapeti v. CBS Television Stations, Inc.*, No. 20-CV-20961, 2022 WL 1274049, at *8 (S.D. Fla. Mar. 1, 2022), *report and recommendation adopted*, No. 20-20961-CIV, 2022 WL 1024775 (S.D. Fla. Apr. 6, 2022) (finding Plaintiff "offered no evidence that her allocation to the weekend shift or not being immediately assigned to the Parkland Shooting altered her compensation, terms, conditions, or privileges of employment or affected her status as an employee.")

Finally, Plaintiff has not advanced evidence from which to establish a causal connection between her complaints of discrimination and not being immediately assigned to cover the Parkland Shooting.  *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (requiring the showing of a causal relation between the protected activity and the adverse action in order to establish a prima facie case of retaliation).  Noting Roldan's apparent commentary during their meeting about it not being a "whining session," and construing all other evidence in the light most favorable to Plaintiff, there is still a lack of connection between Plaintiff's complaint regarding

dangerous situations in the field to the alleged gender-based or age discrimination against her. Because Plaintiff has not presented sufficient evidence for a reasonable jury to conclude that she has satisfied the elements of her prima facie case of retaliation, the undersigned recommends the Court grant summary judgment in favor of Defendants with respect to Plaintiff's retaliation claim under the FCRA.

### C.    Negligent Infliction of Emotional Distress

Plaintiff also claims that she suffered emotional distress as a result of the physical and verbal abuse she endured by members of the public during the two incidents in 2017, due to Defendants' negligence.  Plaintiff alleges that Defendants negligently sent her to cover Hurricane Irma in Miami Beach and to cover a University of Miami football game, despite the danger of being a female reporter in large public gatherings.

Defendants move for summary judgment on Plaintiff's NIED claim because there is no evidence that Plaintiff alerted her supervisors to the potential danger of these reporting situations, nor did Plaintiff request security.  Furthermore, Defendants contend that Plaintiff cannot meet the elements of an NIED claim, specifically that she did not sustain any physical injuries in accordance with Florida law.

Plaintiff responds that she voiced complaints regarding her safety as a female in large public gatherings and that her NIED claims should go to the jury.  On reply, Defendants contend that Plaintiff has failed to meaningfully respond to the two arguments raised in their Motion, having relegated her response to their challenge in a single footnote that simply prays that the Court allow the claim to be decided by the jury.  Moreover, Defendants highlight how Plaintiff does not dispute that Florida law requires that Plaintiff suffer physical injuries and how Plaintiff did not suffer physical injuries as a result of these incidents.

Under Florida law, in order to recover on an NIED claim, Plaintiff must show that she suffered emotional distress caused by a physical impact, which manifested itself into some physical injury resulting from another's negligence.  *See Reynolds v. State Farm Mut. Auto. Ins. Co.,* 611 So. 2d 1294, 1296 (Fla. 4th DCA 1992), *rev. denied,* 623 So. 2d 494 (Fla. 1993).  Because a claim for emotional distress is intrinsically speculative and difficult to determine, the requirements of physical impact and physical injury are essential to succeed on a cause of action for NIED.  *See Landry v. Fla. Power & Light Corp.,* 799 F. Supp. 94, 96 (S.D. Fla. 1992) (stating that physical injury is a predicate to recovery for NIED and psychological trauma alone is not sufficient).

Plaintiff has not offered evidence any demonstrating a physical injury resulting from the two incidents.  Even in the single footnote dedicated to responding to Defendants' Motion for Summary Judgment on this claim, Plaintiff fails to cite to any evidence that could be presented to the jury on this claim. Rather, her citation refers generally to her own declaration filed in support of her opposition, which provides no description of the events alleged to give rise to the claim or any injury resulting therefrom.  Plaintiff has not adduced competent evidence sufficient to create a material dispute of fact on this claim. Therefore, the undersigned respectfully recommends summary judgment be granted in favor of Defendants on Plaintiff's NIED claim.

### D.    Constructive Discharge

Plaintiff asserts in her Fourth Amended Complaint that she was constructively discharged by virtue of her hostile work environment.[8]  Defendants moved for summary judgment on this claim as well, on the basis that any claim for constructive discharge was foreclosed by the Court's Order on their Motion to Dismiss. Plaintiff did not address their argument in her Response. While her

---

[8] "[A]fter years of continuously being subjected to a hostile work environment . . . on or about March 16, 2018, Defendant constructively discharged Plaintiff." (Fourth Amended Complaint at ¶ 82).

failure to respond affords the Court sufficient basis to grant Defendants' Motion on this claim, it is warranted on the merits.

In the Court's Order adopting the undersigned's Report and Recommendation on Defendants' Motion to Dismiss, the Court noted that Plaintiff did not allege a hostile work environment claim "either independently or as part of another claim" and denied Plaintiff "leave to assert such a claim" (ECF No. 78 at 2 n.2).  Without a hostile work environment claim, there can be no constructive discharge claim.  *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 149 (2004) (finding that the "[c]reation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case.").  Plaintiff's claim for constructive discharge has been foreclosed and I recommend that, to the extent the operative complaint purports to assert such a claim, Defendants' Motion for Summary Judgment be granted.

### E.    Joint Employer Relationship

Plaintiff worked for WFOR in Miami, a station owned-and-operated by Defendant CBS Television.  Defendants CBS Broadcasting and CBS Corporation do not own nor operate WFOR. Plaintiff nevertheless alleges that she worked for "Defendants," consisting of CBS Television, CBS Broadcasting, and CBS Corporation, and that Defendants jointly employed her through their respective corporate officers and agents.

Defendants contend that Plaintiff did not work for CBS Broadcasting and CBS Corporation and that she has failed to elicit facts sufficient to find a joint employer relationship.  Plaintiff does not respond to Defendants' argument and the Court treats this as a concession.  *See Melendez v. Town of Bay Harbor Islands*, No. 14-22383-CIV, 2014 WL 6682535, at *7 (S.D. Fla. Nov. 25, 2014) (quoting *Glass v. Lahood,* 786 F. Supp. 2d 189, 210 (D.D.C. 2011) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant,

a court may treat those arguments that the plaintiff failed to address as conceded.").

"Courts consider several factors in determining whether a joint employment relationship exists: '(1) the nature and degree of the putative employer's control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the right, directly or indirectly, to hire, fire or modify the worker's employment conditions; (4) the power to determine the worker's pay rates or methods of payment; (5) the preparation of payroll and payment of worker's wages; (6) the ownership of the facilities where the work occurs; (7) whether the worker performed a line job integral to the end product; and (8) the relative investment in equipment and facilities.'" *Harapeti v. CBS Television Stations Inc.*, No. 20-22995-CIV, 2021 WL 3888126, at *7 (S.D. Fla. July 2, 2021), *report and recommendation adopted*, No. 20-22995-CIV, 2021 WL 3887542 (S.D. Fla. Aug. 31, 2021) (quoting *Aguilar v. United Floor Crew, Inc.*, No. 14-CIV-61605, 2014 WL 6751663, at *4 (S.D. Fla. Dec. 1, 2014)).

Plaintiff worked for Defendant CBS Television in Miami and there is no evidence that any entity other than Defendant CBS Television was involved in the conduct forming the basis of her claims.  Accordingly, Defendant CBS Corporation and Defendant CBS Broadcasting did not "jointly employ" Plaintiff and the undersigned respectfully recommends the Court grant summary judgment on Plaintiff's claims brought against Defendant CBS Corporation and Defendant CBS Broadcasting.

## IV.    RECOMMENDATION

Based on the foregoing, it is the Recommendation of the undersigned that Defendants' Motion be **GRANTED**.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Kathleen M. Williams, United States District Court Judge for the Southern

District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

       **RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida this on this 29th day of July, 2022.

_____

LAUREN FLEISCHER LOUIS
UNITED STATES MAGISTRATE JUDGE